**GENOVA, BURNS & VERNOIA**
Francis J. Vernoia (FV8880)
354 Eisenhower Parkway
Eisenhower Plaza II
Livingston, New Jersey  07039
(973) 533-0777

**SCHOENGOLD SPORN LAITMAN
& LOMETTI, P.C.**
Samuel P. Sporn
Ashley Kim
19 Fulton Street, Suite 406
New York, New York 10038
(212) 964-0046

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-----------------------------)
JOHN M. DEWEY, PATRICK       )
DEMARTINO, PATRICIA ROMEO,   )
On Behalf of Themselves and  )
All Others Similarly Situated,)     CIVIL ACTION NO.
                             )
          Plaintiffs,        )
                             )              CLASS ACTION COMPLAINT
     vs.                     )
                             )
VOLKSWAGEN OF AMERICA, INC.  )      JURY TRIAL DEMANDED
and VOLKSWAGEN OF AMERICA,   )
INC. d/b/a AUDI OF AMERICA,  )
INC.                         )
                             )
          Defendants.        )
-----------------------------)
```

Plaintiffs John M. Dewey, Patrick DeMartino and Patricia Romeo (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys, Schoengold Sporn Laitman & Lometti, P.C., for their class action complaint against defendants Volkswagen of America Inc., Volkswagen of

America, Inc. d/b/a Audi of America, Inc.("Defendants" or "Volkswagen"), allege as follows, upon knowledge as to themselves and upon information and belief based upon review and analysis of the owner's manual, maintenance booklet, marketing brochures, and consultations with experts, information readily available on the Internet, and other facts as set forth herein.

## NATURE OF THE ACTION AND BACKGROUND

This action alleges violations of the Section 56 of the Consumer Fraud Act of New Jersey (N.J.S.A. 56:8-1, *et seq.*), ("CFA"), Sections 2-313 (express warranty), 2-314 (implied warranty of merchantability) of the New Jersey Uniform Commercial Code ("UCC"), common law fraud, negligent misrepresentation and unjust enrichment in connection with Defendants' design, manufacturing, marketing, sale and distribution of defectively designed vehicles despite their knowledge of the problems. The action is brought by Plaintiffs individually and on behalf of all those persons who currently own or lease, or who has owned or leased, any Volkswagen Passat or Jetta (model years 1998 through and including 2006) or Audi (model years 1997 through and including 2006) (the "Class Vehicles").

1.   The Class Vehicles suffer from two distinct and serious latent design defects.  The first is a defect in design of the pollen filter gasket area ("Pollen Filter Defect").  The

second is a defect in design of the sunroof drain ("Sunroof Drain Defect"). Both defects cause, *inter alia*, serious flooding in the body of the car which significantly impairs the safety, usability and the value as well as causing damages to the of the Class Vehicles. Despite their longstanding knowledge of the problems, Defendants failed to warn and disclose to the consumers that the vehicles were predisposed to flooding that would lead to serious and dangerous damage to the major electrical components which caused the motor to either non-function or malfunction. Furthermore, Plaintiffs' use and enjoyment of their vehicles were impaired due to Defendants' failure to warn of the design defects and Defendants' failure to properly and adequately set forth proper maintenance guidelines.

More specifically, the design defects are as follows:

### **Pollen Filter Defect**

2.   The drain hole in the lowest part in the center of the cowl area (the "plenum drain") -- which is located on the right side in plenum chamber that also houses the battery, Engine Control Module (the "ECM") and the pollen filter gasket -- is too small and gets easily clogged with debris and fails to drain properly. As a result, after some rainfall, a pool of water develops in the cowl area and the water has no place but the pollen filter to back up into. Rather than deflect water, the defectively designed pollen filter sealed with a *porous* foam

like material lets gallons of water seep right in, past the foam padding and carpeting, causing a flood in the interior of the vehicle.

### Sunroof Drain Defect

3.   The drain holes on the sunroof tray (the "sunroof drain") are connected to the drain tubes that run through the A and C pillars, which support the roof on either side of the windshield.   However, the drain holes are small and prone to clogging from accumulation of dust, leaves, and other ordinary environmental debris.   When the water does not properly drain out of the tube, the water backs up into the sunroof tray and overflows into the car from the driver's (right) side of the "A" pillar which houses the drain.

### Damages from Design Defects

4.   The defectively designed pollen filter and the sunroof drain led to irreparable damage to major electrical components in the Class Vehicles.   The Transmission Control Module (the "TCM") is located in a sump or footwell on the front or right passenger side under the carpeting and matting and gets submerged in water and becomes susceptible to corrosion and breakdown when the pollen filter leaks.   Similarly, the Climate Control Module (the "CCM"), located under the driver's seat is damaged when the sunroof drain leaks.   The soaked interior

becomes extremely difficult to dry properly and is often prone to hazardous mold and odor, even after several detailed cleaning. Further, damage to the electrical components creates a serious safety concern to both the class vehicle occupants and the public. In fact, Volkswagen recognized this and admits in its owner's manual [*i.e*, 2002 Passat "*Tips and Advice – operating your vehicle the right way*"] that "[t]he engine compartment of any motor vehicle is a potentially hazardous area."

     5.   Volkswagen knew of the Pollen Filter Defect and the Sunroof Drain Defect that were present in every Class Vehicle and likely to manifest at some future time, along with the attendant dangerous problems, from many sources, including, but not limited to its technicians, dealers, and consumers, but they took no action to adequately warn or remedy the defects, but instead concealed, suppressed and failed to disclose that the flooding was caused by the design defects. Despite its awareness of the defects and their attendant problems evidenced by, among others, its issuance of the Technical Service Bulleting and redesign of the pollen filter seal, Volkswagen continues to fail to warn, or even mention, anything about the Pollen Filter Defect or the Sunroof Drain Defect through its agents or in the owner's manual or any of the marketing materials.

6.    Unfortunately for Plaintiffs and many members of the Class, they have or will have learned -- only after a period of time of driving their Class Vehicles -- that their vehicles cannot withstand rain and are highly prone to a series of continued problems associated with Volkswagen's defective pollen filter and sunroof drain only after gallons of water have flooded their cars, causing thousands of dollars in damages and depriving them of operating use.   Smaller, initial leaks -- while still causing the same damages to the vehicles and their owners (*i.e.*, hazardous mold) -- often can go undetected for years.    And while the damages are caused by Volkswagen's defectively designed pollen filter and sunroof drains with lack of any proper maintenance directives, and numerous class vehicle owners and/or lessees have requested that Volkswagen remedy and/or address the design defects and the resultant flooding problems at no expense, Defendants, by and through their agents, have failed and/or refused to do so, claiming the water leak was from an outside foreign influence, and thus not covered under warranty.   Even if Defendants were to cover the damages under warranty, many Plaintiffs and other members of the Class would never have discovered the latent design defects until after the expiration of the limited new vehicle warranty.

7.    Defendants have represented and continue to represent that they manufacture and/or sell safe and dependable

automobiles with safety as their first concern: "Plenty of thought and expertise go into making your Volkswagen a joy to drive. We want you to be safe, happy and comfortable with your life on the road." *See* http://www.vw.com/.

8. Defendants have also strongly touted their "expert" and "inside" knowledge of the Class Vehicles: "Our engineers spend thousands of hours making sure that all the components in the vehicle system work together in an optimal way."

9. Based on these representations, upon which Plaintiffs relied, including those contained in the "Owner's Literature," maintenance books, and other marketing materials, Plaintiffs and other members of the Class leased and/or owned a Class Vehicle, believing that their automobiles would be safe and reliable.

10. Class Vehicles pose significant safety risks due to the design defects and incorrect maintenance directives.

11. To date, Volkswagen has failed to warn or inform its consumers of the known design defects, fraudulently concealed these defects and made misrepresentations to the damage and detriment of Plaintiffs and the other Class members.

12. As a result of Defendants' omissions and/or misrepresentations, owners and/or lessees of Class Vehicles have suffered ascertainable loss of money and/or property and/or loss in value.

## JURISDICTION AND VENUE

13.   The claims asserted herein arise under and pursuant to alleged violations of Section 56 of the Consumer Fraud Act of New Jersey (N.J.S.A. 56:8-1), ("CFA"), Sections 2-313, 2-314 of the New Jersey Uniform Commercial Code ("UCC"), common law breaches of fraud, unjust enrichment and negligent misrepresentation.   The action is brought by Plaintiffs individually and on behalf of all those persons who currently own or lease, or who has owned or leased, any Volkswagen Passat or Jetta (model years 1998 through and including 2006) or Audi (model years 1997 through and including 2006) (the "Class Vehicles").

14.   This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332, diversity jurisdiction pursuant to 28 U.S.C. §1332(d)(2) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.   Plaintiffs and many other Class members are citizens of states different than that of one or more Defendants, and the matter in controversy exceeds the sum of $5,000,000, exclusive of interests and costs.

15.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants transact business in this District, are subject to personal jurisdiction in this District, and therefore are deemed to reside in this District, within this

8

State.   Many  of  the  acts  and  transactions  alleged  herein,
including  the  dissemination  of  materially  false  and  misleading
material  including,  *inter  alia*,  Owner's  Manual,  maintenance
books,  other  marketing  materials,  and  contract  negotiation,
occurred  in  this  District.   Additionally,  Defendants  distribute
and  inject  vehicles  within  the  stream  of  commerce  into  this
district.   Defendants,  directly  and  through  their  agents
regularly  transact  business  and  otherwise  derive  substantial
revenue  in  New  Jersey  and  the  United  States.

16.  This  Court  is  appropriate  for  the  litigation  of  the
claims  of  all  members  of  the  Class  because  Defendants  conduct
substantial  and  continuous  business  in  this  State  and  New  Jersey
is  Defendants'  chosen  state  of  incorporation.   Defendants
conduct  business  activities  relevant  to  this  action  and  no  other
state's  governmental  policies  or  interests  with  the  litigation
outweigh  those  of  this  State.

## PARTIES

17.  Plaintiff  John  M.  Dewey  ("Dewey")  is  a  resident  of
Maryland  and  owns  a  2002  Volkswagen  Passat  sedan.

18.  In  July  of  2002,  Plaintiff  Dewey's  class  vehicle
suffered  serious  and  expense  damage,  including  but  not  limited
to,  major  electrical  components,  as  a  result  of  the  design
defects.   Specifically,  the  rear  passenger  side  floorboard  area
was  flooded  with  water  after  a  heavy  rainstorm,  causing  the

vehicle to go into "limp mode" and fail to start.  After the vehicle was towed to the dealership, Plaintiff Dewey was told that the flooding and the ruining of the TCM was from "clogged sunroof drains" but that he should also "get the pollen filter and housing replaced and sealed to insure no further water leaks."

19. As a result of Defendants' omissions and/or misrepresentations related to the design defects, Plaintiff Dewey has sustained damages including, but not limited to, replacement of the TCM, pollen filter and housing gasket, carpeting, as well as cleaning and finding alternative means of transportation due to loss of use of the car.

20. Plaintiff Patrick DeMartino (DeMartino") is a resident of New Jersey.  Mr. DeMartino owns a 1999 Volkswagen New Passat GLX.

21. In 2006, Plaintiff DeMartino's vehicle suffered serious and expense damage, including, but not limited to, a major electrical component, as a result of the design defects. Specifically, the TCM was flooded in the rear passenger side.

22. As a result of Defendants' omissions and/or misrepresentations related to the design defects, Plaintiff DeMartino has sustained damages including, but not limited to, replacement of the TCM, pollen filter and housing gasket,

carpeting, as well as cleaning and finding alternative means of transportation due to loss of use of the car.

23. Plaintiff Patricia Romeo ("Ms. Romeo") is a resident of New York and owns a 2003 Volkswagen Passat.

24. In February of 2005, Plaintiff Romeo's vehicle suffered serious and expense damage, including, but not limited to, a major electrical component, as a result of the design defects. Specifically, there was a water leak in the front passenger footwell. As a result, approximately two gallons of water accumulation under the front passenger's side carpet were removed and a water deflector was installed and pollen filter was replaced. There has continuously been a heavy musty odor in the vehicle, especially after rain.

25. As a result of Defendants' omissions and/or misrepresentations related to the design defects, Plaintiff Romeo has sustained damages including, but not limited to, replacement of the TCM, pollen filter and housing gasket, carpeting, as well as cleaning and finding alternative means of transportation due to loss of use of the car.

26. Defendant Volkswagen of America, Inc. ("VWoA") is a New Jersey corporation with its principal place business at 3800 Hamlin Road, Auburn Hills, MI 48326 and, for purposes of 28 U.S.C. '1441(b), is a citizen of New Jersey. Defendant VWoA is a subsidiary of Volkswagen, A.G. ("VWAG"), a German corporation

headquartered in Wolfsburg, Germany.  At all relevant times,
Defendant VWoA imported, distributed and sold motor vehicles
including Passat and Jetta, model years 1998 through and
including 2006.

27. Defendant Volkswagen of America, Inc. d/b/a Audi of
America, Inc.  ("Audi") is a New Jersey corporation with its
principal place business at 3800 Hamlin Road, Auburn Hills, MI
48326 and, for purposes of 28 U.S.C. '1441(b), is a citizen of
New Jersey.  Defendant Audi is a division within Defendant VWoA
and is wholly-owned by Volkswagen Beteiligungs Gesellschaft
m.b.H., a German limited liability company wholly-owned by VWAG.
At all relevant times, Defendant Audi  imported, distributed and
sold Audi motor vehicles, model years 1997 through and including
2006.

28. VWAG owns 99.01% of AUDI AG ("AUDI AG"), a German
corporation, which designed and/or manufactured the Class
Vehicles.  The design features in the Class Vehicles are
substantially similar.

29. Defendants VWOA and Audi are collectively referred to
herein as "Volkswagen" or "Defendants."

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

30. Plaintiffs bring this action as a class action
pursuant to Federal Rules of Civil Procedure 23(b)(3) on behalf
of themselves and all members of the proposed class defined as

follows:  all those persons who currently own or lease, or who has owned or leased, any Volkswagen Passat or Jetta (model years 1998 through and including 2006) or Audi (model years 1997 through and including 2006) (the "Class Vehicles").  Excluded from the Class are claims for personal injury by members of the Class.  Also excluded from the Class are Defendants, their parents, subsidiaries, affiliates, agents and representatives, including their registered dealers and their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.  The members of the proposed Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds of thousands of Class Vehicles have been sold and leased in the United States.  Class members may be identified through discovery from records maintained by Defendants.

32. Plaintiffs' claims are typical of the claims of the Class, as all Class members were and are similarly affected by Volkswagen's wrongful conduct in violations of the CFA, UCC and common laws that are complained of herein.  Plaintiffs and each

of the Class members leased and/or owned Class Vehicles, which are subject to the flooding and resultant problems as a result of the design defects in the pollen filter and the sunroof drain. Defendants knowingly concealed, suppressed, and/or fraudulently misrepresented/omitted the design defects, with the intent that Plaintiffs and other Class members rely thereon. Plaintiffs and the other Class members have sustained substantial damages, resulting from Defendants' omissions and/or misrepresentations related to the design defects.

33. Plaintiffs will fairly and adequately represent and protect the interests of the other Class members and have retained counsel competent and experienced in class action and consumer fraud litigation. Plaintiffs and their counsel are aware of no conflicts of interest between Plaintiffs and the other members of the Class.

34. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a) whether the Class Vehicles were designed with defects in the pollen filter and the sunroof drain;

(b) whether the Class Vehicles are predisposed to flooding, as a result of the design defects;

(c) whether the Class Vehicles sustained damage directly or indirectly from the design defects;

(d) whether the design defects and/or inadequate maintenance recommendations cause significant safety risks;

(e) whether Defendants knowingly failed to disclose and warn of the design defects with the intent that others rely upon such concealment, suppression or omission;

(f) whether Defendants misrepresented the cause of the flooding problems in Class Vehicles;

(g) whether Defendants used or employed unconscionable commercial practices in connection with the sale or lease of Class Vehicles;

(h) whether Plaintiffs and members of the Class are entitled to entry of final injunctive relief compelling Defendants to recall, inspect and, as necessary, effectively repair and/or replace the design defects and the resultant problems from flooding in Class Vehicles;

(i) whether Plaintiffs and members of the Class are entitled to entry of final injunctive relief compelling Defendants to fully and adequately inform consumers of the design defects and/or inadequate maintenance recommendations;

(j) whether Plaintiffs and members of the Class are entitled to actual damages representing the ascertainable loss of money and/or property and/or value that have been and/or will

be suffered by Plaintiffs and members of the Class as a result of the design defects;

(k) whether Defendants breached their implied warranties in that the Class Vehicles were defectively designed with respect to the pollen filter and the sunroof drain;

(l) whether Defendants breached their implied warranties in that the Class Vehicles were accompanied by an owner's manual that incorporated inadequate maintenance specifications;

(m) whether Defendants breached their express warranties in that the Class Vehicles were defectively designed with respect to the pollen filter and the sunroof drain;

(n) whether Defendants breached their express warranties in that the Class Vehicles were accompanied by an owner's manual that incorporated inadequate maintenance specifications;

(o) whether Defendants intentionally or negligently misrepresented material facts concerning the design defects in the Class Vehicles;

(p) whether Defendants were unjustly enriched by their misrepresentations, fraud and breaches of warranty;

(q) whether Class members are entitled to monetary damages and injunctive relief;

(r) whether the Court should establish a constructive trust funded by the benefits conferred upon the Defendants by their wrongful and unlawful conduct;

(s) whether the CFA, the UCC and the common laws were violated by Volkswagen's conduct as alleged herein;

(t) whether statements made by Volkswagen to Plaintiffs and the Class members in its documents (*i.e.*, owner's manuals, maintenance books, marketing brochures and materials) were materially false and misleading in that: the pollen filter and sunroof drain were defective by design;

(u) whether Defendants had a duty to disclose material facts concerning the serious problems that would inevitably result from its inherently defective design in the pollen filter and sunroof drain to their consumers;

(v) whether Defendants should be enjoined from engaging in such practices with respect to the Class Vehicles with defective pollen filter and sunroof drain, known by them to cause serious problems;

(w) whether Defendants should have a maintenance directive on checking the drains in the pollen filter and sunroof drain areas for clogs as part of its recommended scheduled maintenance service;

(x) to what extent the Class has sustained damages; and

(y) to what extent Defendants should be held to account for its wrongful conduct.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Given the common design defects present in all Class Vehicles, and the uniform misrepresentations and omissions not disclosed to the Class, Plaintiffs are not aware of any difficulties in managing the action as a class action

36. The prosecution of separate actions can create a risk of inconsistent or varying adjudications with respect to individual members of the Class which could establish incompatible standards of conduct for Defendants. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.

## FACTUAL ALLEGATIONS

37. Volkswagen is the manufacturer of Audi, Jetta and Passat cars. As a result, there is frequent overlap in the design features of these different vehicles. The Audi vehicles, beginning with model year 1997, and Jetta and Passat vehicles, beginning with model year 1998, all have a number of common design features including, the pollen filter plenum drain and

the sunroof drain.   Both of these designs were fundamentally flawed and predisposed the vehicles to flooding and a series of other related problems.   Moreover, these vehicles also have in common the placement of two major electrical components, the ECM and the TCM, in the front seating area, unprotected from flooding.

**A.   Pollen Filter Defect**

**1.   Description of Pollen Filter Defect**

38.   The pollen filter -- also known as cabin air filter, passenger compartment filter, or dust filter -- functions to clean and filter out the outside impurities (*i.e.*, pollen, exhaust soot, bacteria, insecticides and mold spore) that are sucked into the car like a vacuum.   In all Volkswagen vehicles, the pollen filter is located under the hood on the right/passenger side of the cabin, under the vehicle.

39.   The drain hole in the lowest part in the center of the cowl area -- which is located on the right side in the plenum chamber that also houses the battery, ECM and the pollen filter gasket -- is too small and gets clogged with debris over time and fails to drain properly, causing the water to back up through the pollen filter that is sealed by a *porous* foam like material.   As a result, after some rainfall, a pool of water develops in the cowl area and the water has no place but the pollen filter to back up into.   Rather than deflect water, the

19

defectively designed pollen filter lets water to seep right in, past the foam padding and carpeting, causing a flood. This is further exacerbated by the fact that the TCM is placed on the passenger side of the footwell and gets submerged in water and becomes susceptible to corrosion and breakdown.

### 2.   Damages Resulting from the Pollen Filter Design Flaw

40. As a result of the flooding problems from the defectively designed pollen filter, Plaintiffs and the Class have or will suffer significant damages, including irreparable damage to a major electrical component known as the TCM, replacement of the pollen filter and housing gasket, carpeting, as well as finding alternative means of transportation due to loss of use of the car. Furthermore, the soaked interior becomes extremely difficult to dry properly and is often prone to the hazardous mold and odor, even after several detailed cleanings. In addition, the resultant damage to the TCM can cause the engine to shut off, creating a serious safety concern to both the class vehicle occupants and the public.

41. Unfortunately for Plaintiffs and Class, they have or will have learned -- usually after several years of driving their Class Vehicles -- that their vehicles are not protected from the elements and are highly prone to a series of problems associated with Volkswagen's defective pollen filter and improper maintenance directives only after gallons of water have

flooded the interior of their cars, causing thousands of dollars in actual damages alone.  Smaller, initial leaks -- while still causing damages to the vehicles and their owners (*i.e.*, hazardous mold) -- often can go undetected for years.  And while the damages are caused by Volkswagen's defectively designed pollen filter.  Even if Defendants covered the damages under warranty, many Plaintiffs and other members of the Class would not discover this latent design defect until after the expiration of the limited new vehicle warranty.

### 3.   Defendants' Knowledge of the Pollen Filter Defect

42.  Defendants were well aware of the pollen filter design flaw which predisposed the Class Vehicles to flooding and its related ensuing problems from many sources, including, but not limited to its technicians, dealers, and consumers, they took no action to adequately warn or remedy the defect, but instead concealed, suppressed and failed to disclose that the flooding was caused by the design defect in the pollen filter.  For example, in a Technical Service Bulletin ("TSB") issued in 2004, Volkswagen notifies its technicians that "[v]ehicle footwell carpet is wet after heavy rain.  May be caused by water entering interior due to damaged Pollen filter housing seal or debris plenum drain" and recommends removing the pollen filter housing and inspecting "for evidence of water ingress" and "water seal for damage and proper positioning."  The TSB further mentions

checking and removing any debris in the "plenum drain (under battery) and area near drain," and removing "any debris from plenum and ensure drain under battery for plenum is open." Despite its knowledge of the plenum drain's predisposition to getting clogged and causing floods, Volkswagen informs its agents that cleaning of the plenum is not mandatory: "Debris in plenum drain is considered outside influence and cleaning is not covered under the New Vehicle Limited Warranty."  In addition, Volkswagen *redesigned* the pollen filter seal from the defective porous rubber foam like material to airtight seal in 2005, but failed and/or neglected to warn of and cure the existing Pollen Filter Defect.  Volkswagen's knowledge of the pollen filter defect is further evidenced by the fact that the customers are often told by Volkswagen technicians/mechanics that the flooding was caused by the leak in the sunroof drain, but that as a precaution, the pollen filer seal has also been replaced.

43.   To the detriment of its consumers, Volkswagen failed to and continues to fail to warn, or even mention, anything about the pollen filter in the owner's manual or any of the maintenance books to prevent the flooding and the resulting damages.

44.   Defendants have fraudulently concealed the pollen filter design defect and continue to make misrepresentations to the damage and detriment of Plaintiffs and the other Class

members.    As   a   result   of   Defendants'   omissions   and/or
misrepresentations, owners and/or lessees of Class Vehicles have
suffered substantial damages.

     **B.**    **Sunroof Drain Defect**

         **1.**   **Description of Sunroof Defect**

    45.   The sunroof opens to the air to allow the sun to shine
directly into the vehicle.   The sunroof tray catches any water
(*i.e*, rain or car washes) and its drain tubes carry the water
safely away so that so that it doesn't enter the car.   The
sunroof tray has 4 drain holes in it -- one in each corner,
*i.e.*, front left, front right, rear left and rear right --
connected to the drain tubes that run through the A and C
pillars.   The drain holes are small and prone to clogging from
accumulation of dust, leaves, and other ordinary environmental
debris.   Moreover, the rear drain holes are covered by the
sunroof and are not easily visible.   When the water does not
properly drain out of the tube, the water backs up into the
sunroof tray and overflows into the car from the left/ driver's
side "A" pillar which houses the drain.

    46.   This is further exacerbated by the fact that a major
electrical component known as the CCM is located in the cabin
under  the  driver's  seat  without  any  insulation  from  the
flooding.

### 2.    Damages from the Sunroof Drain Defect

47.  As  a  result  of  the  flooding  problems  from  the
defectively  designed  sunroof  drain,  Plaintiffs  and  the  Class
have  or  will  suffer  significant  damages,  including  irreparable
damage  to  a  major  electrical  component  known  as  the  CCM  and
carpeting  as  well  as  finding  alternative  means  of  transportation
due  to  loss  of  use  of  the  car.   Furthermore,  the  soaked  interior
becomes  extremely  difficult  to  dry  properly  and  is  often  prone
to  the  hazardous  mold  and  odor,  even  after  several  detailed
cleanings.   In  addition,  the  resultant  damage  to  the  CCM  can
cause  the  engine  to  shut  off,  creating  a  serious  safety  concern
to  both  the  class  vehicle  occupants  and  the  public.

48.  Unfortunately  for  Plaintiffs  and  Class,  they  have  or
will  have  learned  --  usually  after  several  years  of  driving
their  Class  Vehicles  --  that  their  vehicles  are  not  protected
from  the  elements  and  are  highly  prone  to  a  series  of  problems
associated  with  Volkswagen's  defective  sunroof  drain  and
improper  maintenance  directives  only  after  gallons  of  water  have
flooded  the  interior  of  their  cars,  causing  thousands  of  dollars
in  actual  damages  alone.   Even  if  Defendants  covered  the  damages
under  warranty,  many  Plaintiffs  and  other  members  of  the  Class
would  not  discover  this  latent  design  defect  until  after  the
expiration  of  the  limited  new  vehicle  warranty.

### 3.   Defendants' Knowledge, Recklessness or Negligence In Connection With Sunroof Drain Defect.

49.  Defendants were well aware of the sunroof drain design flaw which predisposed the Class Vehicles to flooding and its related ensuing problems from many sources, including, but not limited to its technicians, dealers, and consumers, they took no action to adequately warn or remedy the Sunroof Drain Defect, but instead concealed, suppressed and failed to disclose that the flooding was caused by the design defect in the sunroof drain.   Despite its knowledge of the sunroof drain's predisposition to getting clogged and causing floods, Volkswagen informed its agents that cleaning of the plenum is not mandatory: "Debris in plenum drain is considered outside influence and cleaning is not covered under the New Vehicle Limited Warranty."  Volkswagen's knowledge of the sunroof drain defect is further evidenced by the fact that the customers are often told by Volkswagen agents, including technicians and mechanics, that the flooding was caused by the leak in the sunroof drain and that cuts have been made into the tubes for drainage.

50.  To the detriment of its consumers, Volkswagen failed to and continues to fail to warn, or even mention, anything about the Sunroof Drain Defect in the owner's manual or any of the maintenance or marketing materials to prevent flooding and

the resulting damages.  Moreover, sunroof drains, especially the rear drain holes, are covered by the sunroof and are not easily visible.

51. Defendants have fraudulently concealed the Sunroof Drain Defect and continue to make misrepresentations to the damage and detriment of Plaintiffs and other Class members.  As a result of Defendants' omissions and/or misrepresentations, owners and/or lessees of Class Vehicles have suffered or will suffer substantial damages.

**Volkswagen's Misrepresentations and Omissions**

52. This class action arises from Volkswagen's deceptive and unlawful conduct in designing, manufacturing, distributing and selling defectively designed vehicles without adequate warnings or maintenance recommendations.  Specifically, Plaintiffs bring this action individually and on behalf of all those persons who currently own or lease, or who has owned or leased, any Volkswagen Passat or Jetta (model years 1998 through and including 2006) or Audi (model years 1997 through and including 2006) (the "Class Vehicles").  Each of the Class members purchased or leased a Volkswagen automobile without any knowledge of the described inherent design defects.  As a result of Volkswagen's defective design and inadequate warnings, countless consumers have suffered and will suffer from water damages and other associated problems.

26

53.  Volkswagen has represented and continues to represent that they manufacture and sell safe and dependable automobiles with safety as their first concern: "Plenty of thought and expertise go into making your Volkswagen a joy to drive. We want you to be safe, happy and comfortable with your life on the road." *See* http://www.vw.com/.

54.  Volkswagen has also strongly touted their "expert" and "inside" knowledge of the their vehicles that was unique to them: "Our engineers spend thousands of hours making sure that all the components in the vehicle system work together in an optimal way." *Id.*

55.  The owner's manual, *i.e*, 2002 Passat "*Tips and Advice – operating your vehicle the right way,*" specifically states and touts: "Your vehicle has been designed to help keep maintenance requirements to a minimum . . . . We strongly urge you to give your authorized VOLKSWAGEN dealer the opportunity to perform all scheduled maintenance and necessary repairs.  Your dealer has the facilities, original parts and trained specialists to keep your vehicle running properly"

56.  The statements set forth in the preceding paragraphs were materially false and misleading since they clearly conveyed that the Class Vehicles were safe and reliable and well maintained by expert technicians who knew the cars inside out.

57. Plaintiffs and the other Class members have no knowledge of these defects and their resulting damages until some time into the ownership or lease, when there are gallons of water in the car from the pollen filter and/or the sunroof drain leaks.

58. In fact, Volkswagen tout and recommend that the "best protection against environmental influences is frequent *washing* and waxing . . . . Under certain circumstances, **weekly washing** may be necessary." (emphasis supplied). *See, e.g.*, 2002 Passat booklet on "*Tips and Advice – operating your vehicle the right way.*"

59. This language falsely conveys that the Class Vehicles are safe and able to withstand water.

60. As stated above, at no time did Defendants notify or attempt to remedy the Pollen Filter and Sunroof Drain Defects known to them.

61. Volkswagen did not fully and truthfully disclose to its customers the true nature of the inherent design defects, which were not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and or purchase the Class Vehicles with the said design defects and all of the resultant problems, which permitted Defendants to amass enormous ill-gotten profits.

28

62.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other Class members. As described herein, Volkswagen made or caused to be made a series of materially false or misleading statements about the Class Vehicles, including lease, purchase and maintenance.   These material misstatements and omissions had the cause and effect of inducing cautious consumers into leasing and/or purchasing the Class Vehicles while Volkswagen neglected to warn and remedy the inherent design defects known to them, thus causing the damages complained of herein.

**Volkswagen's Fraudulent Concealment**

63.   Volkswagen wrongfully and actively concealed from Plaintiffs and other Class members the true nature of the Class Vehicles, specifically concerning the pollen filter and sunroof drains and a series of their attendant problems.   Defendants' misrepresentations -- to its consumers on the websites, marketing brochures, and via its dealers -- that the Class Vehicles were safe and reliable precluded Plaintiffs and other Class members from discovering the nature of the fraud.   These representations were reasonably relied upon by Plaintiffs and the other Class members to their detriment.

64.   As alleged herein, Plaintiffs have zealously pursued the uncovering of Volkswagen's fraud with due diligence as soon as they learned of the design defects and Volkswagen has not cured the defects or the damages.

## FIRST CLAIM

### Violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56: 8-1 et seq.)

65.   Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

66.   The New Jersey Consumer Fraud Act (N.J.S.A. 56: 8-1) states:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

67.   As set forth at paragraphs 52- 61 *supra*, false representations made by Defendants to Plaintiffs and the other Class members concerning their Class Vehicles were prepared and disseminated from New Jersey, including but not limited to all

30

of the statements made in the owner's manual, maintenance books, websites and other public statements.

68. Plaintiffs' vehicles, like all Class Vehicles, are subject to flooding as a result of the design defects.

69. The flooding problem in Class Vehicles emanates from the Pollen Filter Defect and/or the Sunroof Drain Defect, common to all Class Vehicles.

70. Defendants have known for years about these design defects.

71. Defendants made the above-described misrepresentations, concealment and omissions of material facts concerning the design defects with full knowledge or recklessness that they were false and misleading and with the intent that their consumers would rely upon such concealment, suppression and omission.

72. During all relevant times, Volkswagen engaged in the following conduct:

a. concealing, suppressing and making fraudulent and/or negligent misrepresentations concerning the design defects in the Class Vehicles, as herein before alleged.

b. failing to adequately and properly inform and warn Plaintiffs and other Class members of the design defects; and

c. failing to repair, replace, or reimburse Plaintiffs and Class members for damages incurred due to said design defects.

73. Defendants' actions, as described above, constitute unfair and deceptive and/or fraudulent business practices in violation of the CFA. As a result of Defendants' actions, Plaintiffs and other Class members have been injured and damaged in an amount to be determined at trial.

## SECOND CLAIM

## Breach of Express Warranty Under the New Jersey Uniform Commercial Code

74. Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

75. The Express Warranty provision of the New Jersey Statute 12A:2-313 provides:

> (a)   Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the        basis of the bargain creates an express warranty that the goods shall conform to the description.

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

76. Plaintiffs and the Class members leased and/or purchased a Class Vehicle from Defendants.

77. In connection with the lease or sale, Volkswagen, through its authorized dealers and marketing materials, expressly warranted to the general public, owners and lessees of Class Vehicles that the vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used -- that they were safe and reliable. Volkswagen is a merchant with respect to passenger motor vehicles.

78. Volkswagen breached this express warranty in that the Class Vehicles were defectively designed. More specifically, there are serious latent design defects in the pollen filter gasket area and the sunroof drain that significantly impair the safety and the value of the automobiles by causing water to enter and flood the vehicles. Defendants further breached their express warranties in that the Class Vehicles were accompanied by an owner's manual that incorporated incorrect and incomplete maintenance specifications. The Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of the design defects and owner's manual that incorrectly set forth maintenance specifications.

79.  As a result of Volkswagen's breach of warranties upon which Plaintiffs reasonably relied, Plaintiffs and the Class members have sustained financial injury resulting from the breach by Defendants.

80.  Plaintiffs and Class members could not have reasonably discovered the design defects of the Class Vehicles. Defendants' breach of their express warranties was the direct and proximate cause of the Class members' financial harm.

81.  Volkswagen's breach also caused the incidental and consequential damages to Plaintiffs and the Class.  Further, Volkswagen failed to warn of the defects and the associated problems. Defendants' conduct was willful, wanton, and reckless. Based on the intentionally dishonest nature of Volkswagen's conduct, which was directed at the Class and at the public generally, it should be held liable to the Class for actual damages as well as punitive damages in an amount to be determined at trial.

### THIRD CLAIM

### Breach of Implied Warranty Under the New Jersey Uniform Commercial Code

82.  Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

83. The Implied Warranty provision 12A:2-314 (implied warranty of merchantability) of the New Jersey Statute provides:

(1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used;

and

(d) run, within the variations permitted by kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade.

84. Volkswagen was, at all relevant times, a merchant with respect to the sale and distribution of Volkswagen passenger motor vehicles. Defendants impliedly warranted to the general public, owners and lessees of the Class Vehicles that the vehicles were merchantable and fit for the ordinary purposes for which the vehicles are used.

85. Plaintiffs and the Class leased and/or purchased a Class Vehicle from Volkswagen.

86. A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant action, pursuant to U.C.C. section 2-314.

87. Plaintiffs and other Class members never contemplated that their cars would be unable to withstand water (*i.e.*, rain or carwash) and eventually become flooded and be subject to the series of associated problems. Plaintiffs relied on implied warranties of merchantability made by Defendants concerning the Class Vehicles and sustained substantial damage resulting from the breach of those warranties by the Defendants. Plaintiffs could not have reasonably discovered the design defects of the Class Vehicles. Defendants' breach of their implied warranties of merchantability was the direct and proximate cause of Plaintiffs' and the Class members' damages.

88. Defendants breached the implied warranty of merchantability in that the Class Vehicles were not in

merchantable condition when sold or at any time thereafter, and were not fit for the ordinary purpose for which such goods are used, in that there were serious latent design defects in the pollen filter gasket area and the sunroof drain that significantly impair the safety and the value of the automobiles by causing water to enter and flood the vehicles. The Class Vehicles were defectively designed. Defendants further breached their implied warranties in that the Class Vehicles were accompanied by an owner's manual that incorporated incorrect and incomplete maintenance and service specifications. The Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of the design defects.

89. As a result of Volkswagen's breach of implied warranty of merchantability, Plaintiffs and other Class members have suffered substantial damages, including the difference between the value of the cars accepted and the value they would have had if they had been as warranted.

90. Volkswagen's breach also caused incidental and consequential damages to Plaintiffs and the Class. Plaintiffs and the Class are entitled to equitable, declaratory and injunctive relief and such other relief as the Court deems proper against Volkswagen, wherein Defendants would be required by this Court's order to create a fund available to remedy the

defective pollen filter and sunroof drain in the Class Vehicles and to bear the cost of notice to the Class Members, as approved by the Court, of the availability of funds to remedy these defects.

## FOURTH CLAIM

### Common Law Fraud

91.  Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

92.  The above described conduct and actions constitute common law fraud by way of misrepresentations, concealment and omissions of material facts made by Volkswagen in the sale and servicing of the Class Vehicles which are the subject of this action.

93.  Volkswagen, upon information and belief, made the above-described misrepresentations, concealment and omissions of material facts concerning its sales and maintenance service practices with full knowledge that they were false and misleading or with reckless disregard of the truth.

94.  Defendants intended that the Plaintiffs and the other members of the Class rely upon the above-described misrepresentations, concealment and omissions.

95.  Defendants' misrepresentations, concealments and omissions concerning the safety and reliability of the cars and their expert knowledge of the cars were material in Plaintiffs'

and the other Class member's decision to lease and/or purchase their cars from Volkswagen.

96.   The Plaintiffs and other Class members justifiably relied upon such misrepresentations, concealment and omissions to their damage and detriment.

97.   Plaintiffs and the Class suffered the damage described in this complaint as a proximate result thereof.

98.   Defendants' conduct was willful, wanton, and reckless. Based on the intentionally dishonest nature of Defendants' conduct, which was directed at the Class and at the public generally, Defendants should also be held liable to the Class for punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

### Unjust Enrichment

99.   Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

100. As a result of Volkswagen's materially false and misleading statements and failure to disclose the truth concerning the design defects in the pollen filter and sunroof drains, Volkswagen has profited and benefited from the lease and sale of the Class Vehicles.   Defendants breached their implied and express warranties in that the Class Vehicles were defectively designed.   Defendants further breached their express and implied warranties in that the Class Vehicles were

accompanied by an owner's manual that incorporated inadequate maintenance recommendations.

101. By paying out of their own pockets the cost to repair the damages caused by the defectively designed pollen filter and sunroof drain, the Plaintiffs and the Class have conferred a substantial monetary benefit upon Volkswagen, thereby unjustly increasing its wealth.

102. In addition, to the extent that any member of the Class purchased Volkswagen branded replacement parts and were serviced by Volkswagen dealerships, Volkswagen realized a direct benefit through such sale.

103. Volkswagen has benefited and been unjustly enriched by the above alleged conduct. Volkswagen has sold, and continues to sell, the Class Vehicles in their defective state, thereby reaping benefits and profits from consumers.

104. Defendants should be required to disgorge this unjust enrichment.

## SIXTH CLAIM

### Negligent Misrepresentation

105. Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

106. At all times relevant hereto, Volkswagen had a duty to manufacture and distribute safe and reliable cars, and had a

further duty to disclose to Plaintiffs and other consumers any defects or nonconformities.

107. At all times relevant hereto, Volkswagen breached the aforesaid duty of disclosure by representing, either affirmatively or by omission, that the aforesaid design defects did not exist, when in fact, the vehicles had the defects as set forth above. Defendants negligently misrepresented to Plaintiffs and the Class members the characteristics of the Class Vehicles with respect to the pollen filter and sunroof drain. Defendants negligently misrepresented information in the Class Vehicles' owner's manuals and other marketing materials that incorporated inadequate disclosure and maintenance recommendations.

108. Defendants' representations of their expertise and the safety of the automobiles were all material in Plaintiffs and other members of the Class decision to "purchase" or "lease" their vehicles by and through Volkswagen.

109. Plaintiffs and the Class justifiably relied on Defendants' misrepresentations in leasing or purchasing the vehicles.

110. The damages sustained by Plaintiffs and other members of the Class were a direct and foreseeable result of Volkswagen's afore-described negligence and misrepresentations.

111. As a result of Defendants' actions, Plaintiffs and other Class members have been damaged and injured in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiffs as Lead Plaintiffs and Plaintiffs' counsel as Lead Counsel, and certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory and punitive damages in favor of Plaintiffs and the other Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, including violation of the CFA, in an amount to be determined at trial, including interest thereon;

(c) Requiring Defendants to account for and/or pay in damages to Plaintiffs and the Class the amounts by which Volkswagen was unjustly enriched due to its wrongful conduct;

(d) Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including

counsel fees and expert fees, as well as incidental (costs of parts and repairs to the cars expended by the class) and consequential (loss of use and/or expenditures for substitute transportation; and lost wages) damages;

(e) Awarding injunctive relief by ordering Volkswagen to issue corrective actions including notification, recall, inspection and, as necessary, repair and/or replacement of the defective and damaged parts in the Class Vehicles and imposing a constructive trust upon monies obtained by Volkswagen as a result of the alleged wrongful conduct;

(f) Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

**GENOVA, BURNS & VERNOIA**

By:  ___/s/Francis J. Vernoia_____
     Francis J. Vernoia (8880)
     354 Eisenhower Parkway
     Eisenhower Plaza II
     Livingston, New Jersey 07039
     (973) 533-0777

43

**SCHOENGOLD SPORN LAITMAN
& LOMETTI P.C.**
Samuel P. Sporn (SS-4444)
Ashley Kim (AK-0105)
19 Fulton Street, Suite 406
New York, NY 10038
(212) 964-0046

Dated:   May 11, 2007

## CERTIFICATION, L. CIV. R. 11.2

I hereby certify that to the best of my knowledge the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

___/s/Francis J. Vernoia_____
Francis J. Vernoia

Dated:  May 11, 2007