**GENOVA, BURNS & VERNOIA**
Francis J. Vernoia (FV8880)
354 Eisenhower Parkway
Eisenhower Plaza II
Livingston, New Jersey  07039
(973) 533-0777

**SCHOENGOLD SPORN LAITMAN**
**& LOMETTI, P.C.**
Samuel P. Sporn
Ashley Kim
19 Fulton Street, Suite 406
New York, New York 10038
(212) 964-0046

Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

```
----------------------------)
JOHN M. DEWEY, PATRICK      )
DEMARTINO, PATRICIA ROMEO,  )
On Behalf of Themselves and )
All Others Similarly Situated,)   CIVIL ACTION NO. 07-2249 (FSH)
                            )
        Plaintiffs,         )
                            )   FIRST AMENDED CLASS
                            )   ACTION COMPLAINT
                            )
        vs.                 )
                            )
VOLKSWAGEN AG, VOLKSWAGEN   )
BETEILIGUNGS GESELLSCHAFT   )   JURY TRIAL DEMANDED
M.B.H., VOLKSWAGEN OF       )
AMERICA,INC., AUDI AG,      )
VOLKSWAGEN OF AMERICA, INC. )
d/b/a AUDI OF AMERICA,      )
INC., and VOLKSWAGEN DE     )
MÉXICO, S. A. DE C. V.,     )
                            )
                            )
        Defendants.         )
----------------------------)
```

Plaintiffs John M. Dewey, Patrick DeMartino and Patricia

Romeo (collectively, "Plaintiffs"), on behalf of themselves and

all others similarly situated, by their attorneys, Genova, Burns & Vernoia and Schoengold Sporn Laitman & Lometti, P.C., for their class action complaint against defendants Volkswagen AG ("VWAG"), Volkswagen Beteiligungs Gesellschaft m.b.H. ("VWBG"), Volkswagen of America Inc. ("VWoA"), Audi AG ("Audi AG"), Volkswagen of America, Inc. d/b/a Audi of America, Inc. ("Audi") and Volkswagen de Mexico, S.A. De C. V.("VWM")(collectively, "Defendants" or "Volkswagen"), allege as follows, upon knowledge as to themselves and upon information and belief based upon review and analysis of, among others, the owner's manual, maintenance booklet, marketing brochures, and consultations with experts, information readily available on the Internet, and other facts as set forth herein.

## NATURE OF THE ACTION AND BACKGROUND

This action alleges violations of the Section 56 of the Consumer Fraud Act of New Jersey (N.J.S.A. 56:8-1, *et seq.*), ("CFA"), Sections 2-313 (express warranty), 2-314 (implied warranty of merchantability) of the New Jersey Uniform Commercial Code ("UCC"), common law fraud, negligent misrepresentation, breach of duty of good faith and fair dealing, and unjust enrichment in connection with, *inter alia*, Defendants' design, manufacturing, marketing, sale and distribution of defectively designed vehicles despite their knowledge of the problems. The action is brought by Plaintiffs

individually and on behalf of all those persons who currently own or lease, or who has owned or leased, any Volkswagen vehicles with the alleged design defects that cause flooding, including Passat and Jetta (model years 1998 through and including 2006) and Audi (model years 1997 through and including 2006) (the "Class Vehicles").

1.    The Class Vehicles suffer from two distinct and serious latent design defects.  The first is a defect in design of the pollen filter gasket area ("Pollen Filter Defect").  The second is a defect in design of the sunroof drain ("Sunroof Drain Defect"). Both defects cause, *inter alia*, serious flooding in the body of the vehicle which significantly impairs the safety, usability and the value as well as other damages to the of the Class Vehicles.  Despite their longstanding knowledge of the problems, Defendants failed to warn and disclose to the consumers that the vehicles were predisposed to flooding that would lead to serious and dangerous damage to the major electrical components which caused the motor to either non-function or malfunction. Furthermore, Plaintiffs' use and enjoyment of their vehicles were impaired due to Defendants' failure to warn of the design defects and Defendants' failure to properly and adequately set forth proper maintenance guidelines.

More specifically, the design defects are as follows:

**Pollen Filter Defect**

2.    The drain hole in the lowest part in the center of the cowl area (the "plenum drain") -- which is located on the right side in the plenum chamber that also houses the battery, Engine Control Module (the "ECM") and the pollen filter gasket -- is too small and gets easily clogged with debris and fails to drain properly.   As a result, after some rainfall, a pool of water develops in the cowl area and the water has no place but the pollen filter to back up into.   Rather than deflect water, the defectively designed pollen filter sealed with a *porous* foam like material lets gallons of water to seep right in, past the foam padding and carpeting, causing a flood in the interior of the vehicle.

**Sunroof Drain Defect**

3.    The drain holes on the sunroof tray (the "sunroof drain") are connected to the drain tubes that run through the A and C pillars, which support the roof on either side of the windshield.   However, the drain holes are small and prone to clogging from accumulation of dust, leaves, and other ordinary environmental debris.   When the water does not properly drain out of the tube, the water backs up into the sunroof tray and overflows into the vehicle from the driver's (right) side of the "A" pillar which houses the drain.

4

## Damages from Design Defects

4.    The defectively designed pollen filter and the sunroof drain lead to irreparable damage to major electrical components in the Class Vehicles.  The Transmission Control Module (the "TCM") is located in a sump or footwell on the front or right passenger side under the carpeting and matting and gets submerged in water and becomes susceptible to corrosion and breakdown when the pollen filter leaks.  Similarly, the Climate Control Module (the "CCM"), located under the driver's seat, is damaged when the sunroof drain leaks.  The soaked interior becomes extremely difficult to dry properly and is often prone to hazardous mold and odor, even after several detailed cleanings.  Further, damage to the electrical components creates a serious safety concern to both the Class Vehicle occupants and the public.  In fact, Volkswagen recognized this and admits in its owner's manual [*i.e*, 2002 Passat "*Tips and Advice – operating your vehicle the right way*"] that "[t]he engine compartment of any motor vehicle is a potentially hazardous area."

5.    Volkswagen knew of the Pollen Filter Defect and the Sunroof Drain Defect that were present in every Class Vehicle and likely to manifest at some future time, along with the attendant dangerous problems, from many sources, including, but not limited to its technicians, dealers, and consumers, but they

took no action to adequately warn or remedy the defects, but instead concealed, suppressed and failed to disclose that the flooding was caused by the design defects. Despite its awareness of the defects and their attendant problems evidenced by, among others, its issuance of the Technical Service Bulletin and redesign of the pollen filter seal, Volkswagen continues to fail to warn, or even mention, anything about the flood causing Pollen Filter Defect or the Sunroof Drain Defect through its agents or in the owner's manual or any of the marketing materials.

6. Unfortunately for Plaintiffs and many members of the Class, they have or will have learned -- only after a period of time of driving their Class Vehicles -- that their vehicles cannot withstand rain or water and are highly prone to a series of continued problems associated with Volkswagen's defective pollen filter and sunroof drain only after gallons of water have flooded their vehicles, causing thousands of dollars in damages and depriving them of operating use. Smaller, initial leaks -- while still causing the same damages to the vehicles and their owners (*i.e.*, hazardous mold) -- often can go undetected for years. And while the damages are caused by Volkswagen's defectively designed pollen filter and sunroof drains with lack of any proper maintenance directives, and numerous Class Vehicle owners and/or lessees have requested that Volkswagen remedy

and/or address the design defects and the resultant flooding problems at no expense, Defendants, by and through their agents, have failed and/or refused to do so, claiming the water leak was from an outside foreign influence, and thus not covered under warranty. Even if Defendants were to cover the damages under warranty, many Plaintiffs and other members of the Class would not have discovered the latent design defects until after the expiration of the limited new vehicle warranty.

7.   Defendants have represented and continue to represent that they manufacture and/or sell safe and dependable automobiles with safety as their first concern: "Plenty of thought and expertise go into making your Volkswagen a joy to drive. We want you to be safe, happy and comfortable with your life on the road." *See* http://www.vw.com/.

8.   Defendants have also strongly touted their "expert" and "inside" knowledge of the Class Vehicles: "Our engineers spend thousands of hours making sure that all the components in the vehicle system work together in an optimal way."

9.   Based on these representations, upon which Plaintiffs relied, including those contained in the "Owner's Literature," maintenance books, and other marketing materials, Plaintiffs and other members of the Class leased and/or owned a Class Vehicle, believing that their automobiles would be safe and reliable.

10.  Class Vehicles pose significant safety risks due to the design defects and incorrect maintenance directives.

11.  To date, Volkswagen has failed to warn or inform its consumers of the known design defects, fraudulently concealed these defects and made misrepresentations to the damage and detriment of Plaintiffs and the other Class members.

12.  As a result of Defendants' omissions and/or misrepresentations, owners and/or lessees of Class Vehicles have suffered ascertainable loss of money and/or property and/or loss in value.

## JURISDICTION AND VENUE

13.  The claims asserted herein arise under and pursuant to alleged violations of Section 56 of the Consumer Fraud Act of New Jersey (N.J.S.A. 56:8-1, *et seq.*) ("CFA"), Sections 2-313 (express warranty), 2-314 (implied warranty of merchantability) of the New Jersey Uniform Commercial Code ("UCC"), common law fraud, negligent misrepresentation, breach of duty of good faith and fair dealing and unjust enrichment.  The action is brought by Plaintiffs individually and on behalf of all those persons who currently own or lease, or who has owned or leased, any Volkswagen vehicles with the alleged design defects that cause flooding including Passat and Jetta (model years 1998 through

8

and including 2006) and Audi (model years 1997 through and including 2006) (the "Class Vehicles").

14.   This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332, diversity jurisdiction pursuant to 28 U.S.C. §1332(d)(2) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.   Plaintiffs and many other Class members are citizens of states different than that of one or more Defendants, and the matter in controversy exceeds the sum of $5,000,000, exclusive of interests and costs.

15.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants transact business in this District, are subject to personal jurisdiction in this District, and therefore are deemed to reside in this District, within this State.   Many of the acts and transactions alleged herein, including the dissemination of materially false and misleading materials including, *inter alia*, owner's manual, maintenance books, other marketing materials, and contract negotiation, occurred in this District.   Additionally, Defendants distribute and inject vehicles within the stream of commerce into this district.   Defendants, directly and through their agents regularly transact business and otherwise derive substantial revenue in New Jersey and the United States.

9

16.  This Court is appropriate for the litigation of the claims of all members of the Class because Defendants conduct substantial and continuous business in this State and New Jersey is Defendants' chosen state of incorporation.  Defendants conduct business activities relevant to this action and no other state's governmental policies or interests with the litigation outweigh those of this State.

**PARTIES**

17.  Plaintiff John M. Dewey ("Dewey") is a resident of Maryland and owns a 2002 Volkswagen Passat sedan.

18.  In July of 2006, Plaintiff Dewey's vehicle suffered serious and expense damage, including but not limited to, major electrical components, as a result of the design defects. Specifically, the rear passenger side floorboard area was flooded with water after a heavy rainstorm, causing the vehicle to go into "limp mode" and fail to start.  After the vehicle was towed to the dealership, Plaintiff Dewey was told that the flooding and the ruining of the TCM was from "clogged sunroof drains" but that he should also "get the pollen filter and housing replaced and sealed to insure no further water leaks."

19.  As a result of Defendants' omissions and/or misrepresentations related to the design defects, Plaintiff Dewey has sustained damages including, but not limited to, replacement of the TCM, pollen filter and housing gasket,

carpeting, as well as cleaning and finding alternative means of transportation due to loss of use of the vehicle.

20. Plaintiff Patrick DeMartino ("DeMartino") is a resident of New Jersey. Mr. DeMartino owns a 1999 Volkswagen New Passat GLX.

21. In 2006, Plaintiff DeMartino's vehicle suffered serious and expense damage, including, but not limited to, a major electrical component, as a result of the design defects. Specifically, the TCM was flooded in the rear passenger side.

22. As a result of Defendants' omissions and/or misrepresentations related to the design defects, Plaintiff DeMartino has sustained damages including, but not limited to, replacement of the TCM, pollen filter and housing gasket, carpeting, as well as cleaning and finding alternative means of transportation due to loss of use of the vehicle.

23. Plaintiff Patricia Romeo ("Ms. Romeo") is a resident of New York and owns a 2003 Volkswagen Passat.

24. In February of 2005, Plaintiff Romeo's vehicle suffered serious and expense damage, including, but not limited to, a major electrical component, as a result of the design defects. Specifically, there was a water leak in the front passenger footwell. As a result, approximately two gallons of water accumulation under the front passenger's side carpet were removed and a water deflector was installed and the pollen

11

filter was replaced. There has continuously been a heavy musty odor in the vehicle, especially after rain.

25. As a result of Defendants' omissions and/or misrepresentations related to the design defects, Plaintiff Romeo has sustained damages including, but not limited to, replacement of the TCM, pollen filter and housing gasket, carpeting, as well as cleaning and finding alternative means of transportation due to loss of use of the vehicle.

26. Defendant Volkswagen AG ("VWAG") is a foreign corporation headquartered at Berliner Ring 2 38440 Wolfsburg, Federal Republic of Germany. VWAG engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling and distributing motor vehicles, including the Class Vehicles, in the United States. VWAG also drafted and printed the owner's manual that accompanied the Class Vehicles. Through its wholly owned subsidiaries and/or agents, VWAG markets its products in a continuous manner in the United States, including the State of New Jersey. VWAG is the parent of, controls and communicates with the other Defendants, including VWoA and Audi AG concerning virtually all aspects of the Class Vehicles distributed in the United States. VWAG maintains a Detroit Office and a VWAG Investor Relations office at 3800 Hamlin Road, Auburn Hills, MI 48326 and has filed forms with the SEC, including Form F-6, the Registration Statement

Under the Securities Act of 1933. Defendant VWAG is and at all relevant times doing business in a continuous manner through a chain of distribution and dealers throughout the United States, including within the District of New Jersey in the State of New Jersey by selling, advertising, promoting and distributing Volkswagen and Audi motor vehicles. Service of process on this defendant is proper by serving it via its wholly owned subsidiary and agent, VWoA at 3800 Hamlin Road, Auburn Hills, MI 48326, its offices as represented in the SEC filings, annual reports and website at http://www.volkswagenag.com/vwag/vwcorp/content/en/investor_rela tions/contact_details_ir.html. or c/o Corporation Trust Company at 820 Bear Tavern Road, West Trenton, New Jersey 08628.

27.   Defendant Volkswagen Beteiligungs Gesellschaft m.b.H. ("VWBG") is a German limited liability company wholly-owned by VWAG and is headquartered at Berliner Ring 2 38440 Wolfsburg, Federal Republic of Germany.  It is believed that VWBG engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling and distributing motor vehicles, including the Class Vehicles, in the United States. VWBG also participated in the drafting and printing of the owner's manual that accompanied the Class Vehicles. Service of process on this defendant is proper by serving it via its wholly owned subsidiary and agent, VWoA at 3800 Hamlin Road, Auburn

Hills, MI   48326, or c/o Corporation Trust Company at Bear Tavern Road, West Trenton, New Jersey 08628.

28.   Defendant Volkswagen of America, Inc. ("VWoA") is a New Jersey corporation with its principal place of business at 3800 Hamlin Road, Auburn Hills, MI   48326 and, for purposes of 28 U.S.C. §1441(b), is a citizen of New Jersey.   Defendant VWoA was and/or is a wholly owned subsidiary of VWAG and/or VWBG.   At all relevant times, Defendant VWoA imported, distributed, sold and/or serviced Volkswagen and Audi vehicles, including Class Vehicles such as Passat and Jetta, model years 1998 through and including 2006.

29.   Defendant Audi AG ("Audi AG") is a foreign corporation located at Auto-Union-Str. 2 D-85045 Ingolstadt, Deutschland. Audi AG engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling and distributing motor vehicles, including the Class Vehicles, in the United States, including the state of New Jersey. Audi AG also drafted and printed the owner's manual that accompanied the Class Vehicles.   Through its subsidiary, Audi AG advertises, promotes and markets its products in a continuous manner in the United States of America, including the State of New Jersey. Defendant Audi AG liaisons, coordinates and communicates with the other Defendants including VWAG, VWoA and Audi concerning virtually all aspects of its products distributed in the United

States, including the State of New Jersey. Defendant Audi AG maintains an office at 3800 Hamlin Road, Auburn Hills, MI 48326. Service of process on this defendant is proper by serving it via its subsidiary and agent, Audi, at 3800 Hamlin Road, Auburn Hills, MI 48326.

30. Defendant Audi of America, Inc. or Volkswagen of America, Inc. d/b/a Audi of America, Inc. ("Audi") is a New Jersey corporation with its principal place of business at 3800 Hamlin Road, Auburn Hills, MI  48326 and, for purposes of 28 U.S.C. §§1441(b), is a citizen of New Jersey. Defendant Audi is a division within Defendant VWoA and was and/or is wholly owned by VWAG and/or VWBG, which was and/or is wholly owned by VWAG. At all relevant times, Defendant Audi imported, distributed and sold Audi motor vehicles, model years 1997 through and including 2006.

31. Defendant Volkswagen de Mexico, S.A. De C. V. ("VWM") was and/or is a subsidiary of VWAG and is located at Autopista México - Puebla, Km. 116 San Lorenzo Almecatla Cuautlancingo, Puebla C.P. 72008 Mexico. At all relevant times, Defendant VWM manufactured Class Vehicles including the Jetta. Defendant VWM manufactures two thirds of Volkswagen vehicles sold in the United States. Service of process on this defendant is proper by serving it via its parent, VWAG, at 3800 Hamlin Road, Auburn Hills, MI 48326.

32.  Defendants VWAG, VWBG, VWoA, Audi AG, Audi and VWM are collectively referred to herein as "Volkswagen" or "Defendants." The design features in the Class Vehicles are substantially similar.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

33.  Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3) on behalf of themselves and all members of the proposed class defined as follows: all those persons who currently own or lease, or who has owned or leased, any Volkswagen vehicles with the alleged design defects that cause flooding, including Passat and Jetta (model years 1998 through and including 2006) and Audi (model years 1997 through and including 2006) (the "Class Vehicles"). Excluded from the Class are claims for personal injury by members of the Class.  Also excluded from the Class are Defendants, their parents, subsidiaries, affiliates, agents and representatives, including their registered dealers and their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.  The members of the proposed Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can

only be ascertained through appropriate discovery, Plaintiffs believe that hundreds of thousands of Class Vehicles have been sold and leased in the United States, including in the State of New Jersey. Class members may be identified through discovery from records maintained by Defendants.

35. Plaintiffs' claims are typical of the claims of the Class, as all Class members were and are similarly affected by Volkswagen's wrongful conduct in violations of the CFA, UCC and common laws that are complained of herein. Plaintiffs and each of the Class members lease or leased and/or own or owned Class Vehicles, which are subject to flooding and the resultant problems as a result of the design defects in the pollen filter and the sunroof drain. Defendants knowingly concealed, suppressed, and/or fraudulently misrepresented/omitted the design defects, with the intent that Plaintiffs and other Class members rely thereon. Plaintiffs and the other Class members have sustained substantial damages, resulting from Defendants' omissions and/or misrepresentations related to the design defects.

36. Plaintiffs will fairly and adequately represent and protect the interests of the other Class members and have retained counsel competent and experienced in class action and consumer fraud litigation. Plaintiffs and their counsel are

17

aware of no conflicts of interest between Plaintiffs and the other members of the Class.

37. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a) whether the Class Vehicles were designed with defects in the pollen filter and the sunroof drain;

(b) whether the Class Vehicles are predisposed to flooding, as a result of the design defects;

(c) whether the Class Vehicles sustained damage directly or indirectly from the design defects;

(d) whether the design defects and/or inadequate maintenance recommendations cause significant safety risks;

(e) whether Defendants knowingly failed to disclose and warn of the design defects with the intent that others rely upon such concealment, suppression or omission;

(f) whether Defendants misrepresented the cause of the flooding problems in the Class Vehicles;

(g) whether Defendants used or employed unconscionable commercial practices in connection with the sale or lease of Class Vehicles;

(h) whether Plaintiffs and members of the Class are entitled to entry of final injunctive relief compelling

Defendants to recall, inspect and, as necessary, effectively repair and/or replace the design defects and remedy the resultant problems from flooding in Class Vehicles;

(i) whether Plaintiffs and members of the Class are entitled to entry of final injunctive relief compelling Defendants to fully and adequately inform consumers of the design defects and/or inadequate maintenance recommendations;

(j) whether Plaintiffs and members of the Class are entitled to actual damages representing the ascertainable loss of money and/or property and/or value that have been and/or will be suffered by Plaintiffs and members of the Class as a result of the design defects;

(k) whether Defendants breached their implied warranties in that the Class Vehicles were defectively designed with respect to the pollen filter and the sunroof drain;

(l) whether Defendants breached their implied warranties in that the Class Vehicles were accompanied by an owner's manual that incorporated inadequate maintenance specifications;

(m) whether Defendants breached their express warranties in that the Class Vehicles were defectively designed with respect to the pollen filter and the sunroof drain;

(n) whether Defendants breached their express warranties in that the Class Vehicles were accompanied by an

19

owner's   manual   that   incorporated   inadequate   maintenance
specifications;

(o)   whether   Defendants   intentionally   or   negligently
misrepresented  material  facts  concerning  the  design  defects  in
the Class Vehicles;

(p)   whether   Defendants   were   unjustly   enriched   by
their misrepresentations, fraud and breaches of warranty;

(q)   whether   Class   members   are   entitled   to   monetary
damages and injunctive relief;

(r)   whether   the  Court  should  establish  a  constructive
trust  funded  by  the  benefits  conferred  upon  the  Defendants  by
their wrongful and unlawful conduct;

(s)   whether  the  CFA,  the  UCC  and  the  common  laws  were
violated by Volkswagen's conduct as alleged herein;

(t)   whether   statements   made   by   Volkswagen   to
Plaintiffs  and  the  Class  members  in  its  documents  (*i.e.*,  owner's
manuals,  maintenance  books,  marketing  brochures  and  materials)
were  materially  false  and  misleading  in  that:   the  pollen  filter
and sunroof drain were defective by design;

(u)   whether   Defendants   had   a   duty   to   disclose
material   facts   concerning   the   serious   problems   that   would
inevitably  result  from  its  inherently  defective  design  in  the
pollen filter and sunroof drain to their consumers;

(v) whether Defendants should be enjoined from engaging in such practices with respect to the Class Vehicles with defective pollen filter and sunroof drain, known by them to cause serious flooding problems;

(w) whether Defendants should have a maintenance directive on checking the drains in the pollen filter and sunroof drain areas for clogs as part of their recommended scheduled maintenance service;

(x) to what extent the Class has sustained damages; and

(y) to what extent Defendants should be held to account for their wrongful conduct.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Given the common design defects present in all Class Vehicles, and the uniform misrepresentations and omissions not disclosed to the Class, Plaintiffs are not aware of any difficulties in managing the action as a class action.

39. The prosecution of separate actions can create a risk of inconsistent or varying adjudications with respect to individual members of the Class which could establish incompatible standards of conduct for Defendants. Furthermore, as the damages suffered by individual Class members may be

relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.

## FACTUAL ALLEGATIONS

40. Volkswagen is the manufacturer of Class Vehicles, including Audi, Jetta and Passat vehicles. As a result, there is frequent overlap in the design features of these different vehicles. For example, the Audi vehicles, beginning with model year 1997, and Jetta and Passat vehicles, beginning with model year 1998, all have a number of common design features including, the pollen filter plenum drain and the sunroof drain. Both of these designs were fundamentally flawed and predisposed the vehicles to flooding and a series of other related problems. Moreover, these vehicles also have in common the placement of two major electrical components, the ECM and the TCM, in the front seating area, unprotected from flooding.

### A.   Pollen Filter Defect

#### 1.   Description of Pollen Filter Defect

41. The pollen filter -- also known as cabin air filter, passenger compartment filter, or dust filter -- functions to clean and filter out the outside impurities (*i.e.*, pollen, exhaust soot, bacteria, insecticides and mold spore) that are sucked into the vehicle like a vacuum. In all Class Vehicles,

the pollen filter is located under the hood on the right/passenger side of the cabin, under the vehicle.

42.   The drain hole in the lowest part in the center of the cowl area -- which is located on the right side in the plenum chamber that also houses the battery, ECM and the pollen filter gasket -- is too small and gets clogged with debris over time and fails to drain properly, causing the water to back up through the pollen filter that is sealed by a *porous* foam like material.   As a result, after some rainfall, a pool of water develops in the cowl area and the water has no place but the pollen filter to back up into.   Rather than deflect water, the defectively designed pollen filter lets water to seep right in, past the foam padding and carpeting, causing a flood.   This is further exacerbated by the fact that the TCM is placed on the passenger side of the footwell and gets submerged in water and becomes susceptible to corrosion and breakdown.

## 2.   Damages Resulting from the Pollen Filter Design Flaw

43.   As a result of the flooding problems from the defectively designed pollen filter, Plaintiffs and the Class have or will suffer significant damages, including irreparable damage to a major electrical component known as the TCM, replacement of the pollen filter and housing gasket, carpeting, as well as finding alternative means of transportation due to loss of use of the vehicle.   Furthermore, the soaked interior

becomes extremely difficult to dry properly and is often prone to the hazardous mold and odor, even after several detailed cleanings.  In addition, the resultant damage to the TCM can cause the engine to shut off, creating a serious safety concern to both the Class Vehicle occupants and the public.

44.  Unfortunately for Plaintiffs and Class, they have or will have learned -- usually after several years of driving their Class Vehicles -- that their vehicles are not protected from the elements and are highly prone to a series of problems associated with Volkswagen's defective pollen filter and improper maintenance directives only after gallons of water have flooded the interior of their vehicles, causing thousands of dollars in actual damages alone.  Smaller, initial leaks -- while still causing damages to the vehicles and their owners (*i.e.*, hazardous mold) -- often can go undetected for years. Even if Defendants covered the damages under warranty, many Plaintiffs and other members of the Class would not discover this latent design defect until after the expiration of the limited new vehicle warranty.

### 3.   Defendants' Knowledge of the Pollen Filter Defect

45.  Defendants were well aware of the pollen filter design flaw which predisposed the Class Vehicles to flooding and the related ensuing problems from many sources, including, but not limited to Volkswagen technicians, dealers, and consumers.

Defendants took no action to adequately warn or remedy the defect, but instead concealed, suppressed and failed to disclose that the flooding was caused by the design defect in the pollen filter. For example, in a Technical Service Bulletin ("TSB") issued in 2004, Volkswagen notifies its technicians that "[v]ehicle footwell carpet is wet after heavy rain. May be caused by water entering interior due to damaged Pollen filter housing seal or debris plenum drain" and recommends removing the pollen filter housing and inspecting "for evidence of water ingress" and "water seal for damage and proper positioning." The TSB further mentions checking and removing any debris in the "plenum drain (under battery) and area near drain," and removing "any debris from plenum and ensure drain under battery for plenum is open." Despite its knowledge of the plenum drain's predisposition to getting clogged and causing floods, Volkswagen informs its agents that cleaning of the plenum is not mandatory: "Debris in plenum drain is considered outside influence and cleaning is not covered under the New Vehicle Limited Warranty." In addition, Volkswagen *redesigned* the pollen filter seal from the defective porous rubber foam like material to airtight seal in 2005, but failed and/or neglected to warn of and cure the existing Pollen Filter Defect. Volkswagen's knowledge of the pollen filter defect is further evidenced by the fact that the customers are often told by Volkswagen technicians/mechanics

25

that the flooding was caused by the leak in the sunroof drain, but that as a precaution, the pollen filer seal has also been replaced.

46. To the detriment of its consumers, Volkswagen failed to and continues to fail to warn, or even mention, anything about the pollen filter in the owner's manual or any of the maintenance books to prevent the flooding and the resulting damages.

47. Defendants have fraudulently concealed the pollen filter design defect and continue to make misrepresentations to the damage and detriment of Plaintiffs and the other Class members. As a result of Defendants' omissions and/or misrepresentations, owners and/or lessees of Class Vehicles have suffered substantial damages.

**B.    Sunroof Drain Defect**

    **1.    Description of Sunroof Defect**

48. The sunroof opens to the air to allow the sun to shine directly into the vehicle. The sunroof tray catches any water (*i.e*, rain or car washes) and its drain tubes carry the water safely away so that so that it doesn't enter the vehicle. The sunroof tray has 4 drain holes -- one in each corner, *i.e.*, front left, front right, rear left and rear right -- connected to the drain tubes that run through the A and C pillars. The drain holes are small and prone to clogging from accumulation of

dust, leaves, and other ordinary environmental debris. Moreover, the rear drain holes are covered by the sunroof and are not easily visible. When the water does not properly drain out of the tube, the water backs up into the sunroof tray and overflows into the vehicle from the left/ driver's side "A" pillar which houses the drain.

49. This is further exacerbated by the fact that a major electrical component known as the CCM is located in the cabin under the driver's seat without any insulation from the flooding.

### 2. Damages from the Sunroof Drain Defect

50. As a result of the flooding problems from the defectively designed sunroof drain, Plaintiffs and the Class have or will suffer significant damages, including irreparable damage to a major electrical component known as the CCM and carpeting as well as finding alternative means of transportation due to loss of use of the vehicle. Furthermore, the soaked interior becomes extremely difficult to dry properly and is often prone to hazardous mold and odor, even after several detailed cleanings. In addition, the resultant damage to the CCM can cause the engine to shut off, creating a serious safety concern to both the Class Vehicle occupants and the public.

51. Unfortunately for Plaintiffs and the Class, they have or will have learned -- usually after several years of driving

their Class Vehicles -- that their vehicles are not protected from the elements and are highly prone to a series of problems associated with Volkswagen's defective sunroof drain and improper maintenance directives only after gallons of water have flooded the interior of their vehicles, causing thousands of dollars in actual damages alone. Even if Defendants covered the damages under warranty, many Plaintiffs and other members of the Class would not discover this latent design defect until after the expiration of the limited new vehicle warranty.

### 3. Defendants' Knowledge, Recklessness or Negligence In Connection With Sunroof Drain Defect

52. Defendants were well aware of the sunroof drain design flaw which predisposed the Class Vehicles to flooding and its related ensuing problems from many sources, including, but not limited to its technicians, dealers, and consumers. However, they took no action to adequately warn or remedy the Sunroof Drain Defect, but instead concealed, suppressed and failed to disclose that the flooding was caused by the design defect in the sunroof drain. Despite its knowledge of the sunroof drain's predisposition to getting clogged and causing floods, evidenced in part by the fact that the customers are often told by Volkswagen agents, including technicians and mechanics, that the flooding was caused by the leak in the sunroof drain and that cuts have been made into the tubes for drainage.

53.  To the detriment of its consumers, Volkswagen failed to and continues to fail to warn, or even mention, anything about the Sunroof Drain Defect in the owner's manual or any of the maintenance or marketing materials to prevent flooding and the resulting damages.  Moreover, sunroof drains, especially the rear drain holes, are covered by the sunroof and are not easily visible.

54. Defendants have fraudulently concealed the Sunroof Drain Defect and continue to make misrepresentations to the damage and detriment of Plaintiffs and other Class members.  As a result of Defendants' omissions and/or misrepresentations, owners and/or lessees of Class Vehicles have suffered or will suffer substantial damages.

**Volkswagen's Misrepresentations and Omissions**

55.  This class action arises from Volkswagen's deceptive and unlawful conduct in designing, manufacturing, distributing and selling defectively designed vehicles without adequate warnings or maintenance recommendations.  Specifically, Plaintiffs bring this action individually and on behalf of all those persons who currently own or lease, or who has owned or leased, any Volkswagen vehicles with the alleged design defects that cause flooding, including Passat and Jetta (model years 1998 through and including 2006) and Audi (model years 1997 through and including 2006) (the "Class Vehicles").  Each of the

Class members purchased or leased a Volkswagen automobile without any knowledge of the described inherent design defects. As a result of Volkswagen's defective design and inadequate warnings, countless consumers have suffered and will suffer from water damages and other associated problems.

56. Volkswagen has represented and continues to represent that they manufacture and sell safe and dependable automobiles with safety as their first concern: "Plenty of thought and expertise go into making your Volkswagen a joy to drive. We want you to be safe, happy and comfortable with your life on the road." *See* http://www.vw.com/.

57. Volkswagen has also strongly touted their "expert" and "inside" knowledge of the their vehicles that was unique to them: "Our engineers spend thousands of hours making sure that all the components in the vehicle system work together in an optimal way." *Id.*

58. The owner's manual, *i.e*, 2002 Passat "*Tips and Advice – operating your vehicle the right way,*" specifically states and touts: "Your vehicle has been designed to help keep maintenance requirements to a minimum . . . . We strongly urge you to give your authorized VOLKSWAGEN dealer the opportunity to perform all scheduled maintenance and necessary repairs.  Your dealer has the facilities, original parts and trained specialists to keep your vehicle running properly."

59.  The statements set forth in the preceding paragraphs were materially false and misleading since they clearly conveyed that the Class Vehicles were safe and reliable and well maintained by expert technicians who knew the vehicles inside out.

60.  Plaintiffs and the other Class members have no knowledge of these defects and their resulting damages until some time into the ownership or lease, when there are gallons of water in the vehicle from the pollen filter and/or the sunroof drain leaks.

61.  In fact, Volkswagen tout and recommend that the "best protection against environmental influences is frequent *washing* and waxing . . . . Under certain circumstances, **weekly washing** may be necessary." (emphasis supplied).  *See, e.g.*, 2002 Passat booklet on "*Tips and Advice – operating your vehicle the right way.*"

62.  This language falsely conveys that the Class Vehicles are safe and able to withstand water.

63.  As stated above, at no time did Defendants notify or attempt to remedy the Pollen Filter and Sunroof Drain Defects known to them.

64.  Volkswagen did not fully and truthfully disclose to its customers the true nature of the inherent design defects, which were not readily discoverable until years later, often

after the warranty has expired.   As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and or purchase the Class Vehicles with the said design defects and all of the resultant problems, which permitted Defendants to amass enormous ill-gotten profits.

65.   At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other Class members. As described herein, Volkswagen made or caused to be made a series of materially false or misleading statements about the Class Vehicles, including maintenance.   These material misstatements and omissions had the cause and effect of inducing cautious consumers into leasing and/or purchasing the Class Vehicles while Volkswagen neglected to warn and remedy the inherent design defects known to them, thus causing the damages complained of herein.

**Volkswagen's Fraudulent Concealment**

66.   Volkswagen wrongfully and actively concealed from Plaintiffs and other Class members the true nature of the Class Vehicles, specifically concerning the pollen filter and sunroof drains and a series of their attendant problems.   Defendants' misrepresentations – *i.e.*, to their consumers on the websites, marketing brochures, and via their dealers -- that the Class

Vehicles were safe and reliable precluded Plaintiffs and other Class members from discovering the nature of the fraud. These representations were reasonably relied upon by Plaintiffs and the other Class members to their detriment.

67.  As alleged herein, Plaintiffs have zealously pursued the uncovering of Volkswagen's fraud with due diligence as soon as they learned of the design defects and Volkswagen has not cured the defects or the damages.

## FIRST CLAIM

## Violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56: 8-1 et seq.)

68.  Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

69.  The New Jersey Consumer Fraud Act (N.J.S.A. 56: 8-1) states:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

70.  As set forth at paragraphs 55- 64 *supra*, false representations made by Defendants to Plaintiffs and the other Class members concerning their Class Vehicles were prepared and disseminated, in part, from New Jersey,  including but not limited to all of the statements made in the owner's manual, maintenance books, websites and other public statements.

71.  Plaintiffs' vehicles, like all Class Vehicles, are subject to flooding as a result of the design defects.

72.  The flooding problem in Class Vehicles emanates from the Pollen Filter Defect and/or the Sunroof Drain Defect, common to all Class Vehicles.

73.  Defendants have known for years about these design defects.

74.  Defendants      made      the      above-described misrepresentations, concealment and omissions of material facts concerning the design defects with full knowledge or recklessness that they were false and misleading and with the intent that their consumers would rely upon such concealment, suppression and omission.

75.  During all relevant times, Volkswagen engaged in the following conduct:

a.  concealing, suppressing and making fraudulent and/or negligent misrepresentations concerning the design defects in the Class Vehicles, as herein before alleged.

34

b.   failing to adequately and properly inform and warn Plaintiffs and other Class members of the design defects; and

c.   failing to repair, replace, or reimburse Plaintiffs and Class members for damages incurred due to said design defects.

76.   Defendants' actions, as described above, constitute unfair and deceptive and/or fraudulent business practices in violation of the CFA. As a result of Defendants' actions, Plaintiffs and other Class members have been injured and damaged in an amount to be determined at trial.

## SECOND CLAIM

## Breach of Express Warranty Under the New Jersey Uniform Commercial Code

77.   Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

78.   The Express Warranty provision of the New Jersey Statute 12A:2-313 provides:

(a)   Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the           basis of the bargain creates an express warranty that

35

the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

79. Plaintiffs and the Class members leased and/or purchased a Class Vehicle from Defendants.

80. In connection with the lease or sale, Volkswagen, through its authorized dealers, agents and marketing materials, expressly warranted to the general public, owners and lessees of Class Vehicles that the vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used -- that they were safe and reliable. Volkswagen is a merchant with respect to passenger motor vehicles.

81. Volkswagen breached this express warranty in that the Class Vehicles were defectively designed. More specifically, there are serious latent design defects in the pollen filter gasket area and the sunroof drain that significantly impair the safety and the value of the vehicles by causing water to enter and flood the vehicles. Defendants further breached their express warranties in that the Class Vehicles were accompanied by an owner's manual that incorporated incorrect and incomplete maintenance specifications. The Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes

for which passenger vehicles are used because of the design defects and owner's manual that incorrectly set forth maintenance specifications.

82. As a result of Volkswagen's breach of warranties upon which Plaintiffs reasonably relied, Plaintiffs and the Class members have sustained financial injury resulting from the breach by Defendants.

83. Plaintiffs and Class members could not have reasonably discovered the design defects of the Class Vehicles. Defendants' breach of their express warranties was the direct and proximate cause of the Class members' financial harm.

84. Volkswagen's breach also caused the incidental and consequential damages to Plaintiffs and the Class. Further, Volkswagen failed to warn of the defects and the associated problems. Defendants' conduct was willful, wanton, and reckless. Based on the intentionally dishonest nature of Volkswagen's conduct, which was directed at the Class and at the public generally, it should be held liable to the Class for actual damages as well as punitive damages in an amount to be determined at trial.

## THIRD CLAIM

### Breach of Implied Warranty Under the New Jersey Uniform Commercial Code

85.  Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein.

86.  The Implied Warranty provision 12A:2-314 (implied warranty of merchantability) of the New Jersey Statute provides:

(1)  Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a)  pass without objection in the trade under the contract description; and

(b)  in the case of fungible goods, are of fair average quality within the description; and

(c)  are fit for the ordinary purposes for which such goods are used;

and

(d)  run, within the variations permitted by kind, quality and quantity within each unit and among all units involved; and

(e)  are adequately contained, packaged, and labeled as the agreement may require; and

        (f) conform to the promises or affirmations of fact made on the container or label if any.

    (3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade.

87. Volkswagen was, at all relevant times, a merchant with respect to the sale and distribution of Volkswagen passenger motor vehicles. Defendants impliedly warranted to the general public, owners and lessees of the Class Vehicles that the vehicles were merchantable and fit for the ordinary purposes for which the vehicles are used.

88. Plaintiffs and the Class leased and/or purchased a Class Vehicle from Volkswagen.

89. A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant action, pursuant to U.C.C. section 2-314.

90. Plaintiffs and other Class members never contemplated that their vehicles would be unable to withstand water (*i.e.*, rain or carwash) and eventually become flooded and be subject to the series of associated problems. Plaintiffs relied on implied warranties of merchantability made by Defendants concerning the Class Vehicles and sustained substantial damages resulting from the breach of those warranties by the Defendants. Plaintiffs could not have reasonably discovered the design defects of the

Class Vehicles. Defendants' breach of their implied warranties of merchantability was the direct and proximate cause of Plaintiffs' and the Class members' damages.

91. Defendants breached the implied warranty of merchantability in that the Class Vehicles were not in merchantable condition when sold or at any time thereafter, and were not fit for the ordinary purpose for which such goods are used, in that there were serious latent design defects in the pollen filter gasket area and the sunroof drain that significantly impair the safety and the value of the automobiles by causing water to enter and flood the vehicles. The Class Vehicles were defectively designed. Defendants further breached their implied warranties in that the Class Vehicles were accompanied by an owner's manual that incorporated incorrect and incomplete maintenance and service specifications. The Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of the design defects.

92. As a result of Volkswagen's breach of implied warranty of merchantability, Plaintiffs and other Class members have suffered substantial damages, including the difference between the value of the vehicles accepted and the value they would have had if they had been as warranted.

93.   Volkswagen's   breach   also   caused   incidental   and consequential damages to Plaintiffs and the Class.   Plaintiffs and   the   Class   are   entitled   to   equitable,   declaratory   and injunctive relief and such other relief as the Court deems proper against Volkswagen, wherein Defendants would be required by this Court's order to create a fund available to remedy the defective pollen filter and sunroof drain in the Class Vehicles and to bear the cost of notice to the Class Members, as approved by the Court, of the availability of funds to remedy these defects.

## FOURTH CLAIM

### Common Law Fraud

94.   Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

95.   The   above   described   conduct   and   actions   constitute common law fraud by way of misrepresentations, concealment and omissions of material facts made by Volkswagen in the sale and servicing of the Class Vehicles which are the subject of this action.

96.   Volkswagen,   upon   information   and   belief,   made   the above-described misrepresentations, concealment and omissions of material   facts   concerning   its   sales   and   maintenance   service practices   with   full   knowledge   that   they   were   false   and misleading or with reckless disregard of the truth.

97.  Defendants intended that the Plaintiffs and the other members of the Class rely upon the above-described misrepresentations, concealment and omissions.

98.  Defendants' misrepresentations, concealments and omissions concerning the safety and reliability of the vehicles and their expert knowledge of the vehicles were material in Plaintiffs' and the other Class member's decision to lease and/or purchase their vehicles from Volkswagen.

99.  The Plaintiffs and other Class members justifiably relied upon such misrepresentations, concealment and omissions to their damage and detriment.

100. Plaintiffs and the Class suffered the damage described in this complaint as a proximate result thereof.

101. Defendants' conduct was willful, wanton, and reckless. Based on the intentionally dishonest nature of Defendants' conduct, which was directed at the Class and at the public generally, Defendants should also be held liable to the Class for punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

### Negligent Misrepresentation

102. Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

103. At all times relevant hereto, Volkswagen had a duty to manufacture and distribute safe and reliable vehicles, and had a

42

further duty to disclose to Plaintiffs and other consumers any defects or nonconformities.

104. At all times relevant hereto, Volkswagen breached the aforesaid duty of disclosure by representing, either affirmatively or by omission, that the aforesaid design defects did not exist, when in fact, the vehicles had the defects as set forth above. Defendants negligently misrepresented to Plaintiffs and the Class members the characteristics of the Class Vehicles with respect to the pollen filter and sunroof drain. Defendants negligently misrepresented information in the Class Vehicles' owner's manuals and other marketing materials that incorporated inadequate disclosure and maintenance recommendations.

105. Defendants' representations of their expertise and the safety of the automobiles were all material in Plaintiffs' and other Class members' decision to "purchase" or "lease" their vehicles by and through Volkswagen.

106. Plaintiffs and the Class justifiably relied on Defendants' misrepresentations in leasing or purchasing the vehicles.

107. The damages sustained by Plaintiffs and other members of the Class were a direct and foreseeable result of Volkswagen's afore-described negligence and misrepresentations.

108. As a result of Defendants' actions, Plaintiffs and other Class members have been damaged and injured in an amount to be determined at trial.

## SIXTH CLAIM

### Breach of Duty of Good Faith and Fair Dealing

109. Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

110. Each contract of sale and lease agreement entered by Plaintiffs and members of the Class for the purchase and lease of the Class Vehicles contains an implied term requiring Defendants to adhere to a duty of good faith and fair dealing.

111. Defendants have breached their duty of good faith and fair dealing by, among other things, failing to notify Plaintiffs and members of the Class of the defect(s) in the Class Vehicles, and failing to fully and properly repair the defect(s) and resulting damage to the Class Vehicles, at no expense to Plaintiffs and members of the Class.

112. Defendants' breach of its implied duty of good faith and fair dealing is intentional, malicious, and with willful and wanton disregard of the rights and interests of Plaintiffs and members of the Class.

113. As a direct and proximate result of Defendants' breach of implied duty of good faith and fair dealing, Plaintiffs and members of the Class have suffered damages including but not

limited to costly repairs, loss of use of the vehicle, substantial loss in value and resale value of the vehicle and other damages in an amount to be determined at trial.

## SEVENTH CLAIM
### Unjust Enrichment

114. Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully herein.

115. As a result of Volkswagen's materially false and misleading statements and failure to disclose the truth concerning the design defects in the pollen filter and sunroof drains, Volkswagen has profited and benefited from the lease and sale of the Class Vehicles. Defendants breached their implied and express warranties in that the Class Vehicles were defectively designed. Defendants further breached their express and implied warranties in that the Class Vehicles were accompanied by an owner's manual that incorporated inadequate maintenance recommendations.

116. By paying out of their own pockets the cost to repair the damages caused by the defectively designed pollen filter and sunroof drain, the Plaintiffs and the Class have conferred a substantial monetary benefit upon Volkswagen, thereby unjustly increasing its wealth.

117. In addition, to the extent that any member of the Class purchased Volkswagen branded replacement parts and were

serviced by Volkswagen dealerships, Volkswagen realized a direct benefit through such sale.

118. Volkswagen has benefited and been unjustly enriched by the above alleged conduct. Volkswagen has leased and sold, and continues to lease and sell, the Class Vehicles in their defective state, thereby reaping benefits and profits from consumers.

Defendants should be required to disgorge this unjust enrichment.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiffs as Lead Plaintiffs and Plaintiffs' counsel as Lead Counsel, and certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory and punitive damages in favor of Plaintiffs and the other Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, including violation of the CFA, in an amount to be determined at trial, including interest thereon;

(c)   Requiring Defendants to account for and/or pay in damages to Plaintiffs and the Class the amounts by which Volkswagen was unjustly enriched due to its wrongful conduct;

(d)   Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees, as well as incidental (costs of parts and repairs to the vehicles expended by the class) and consequential (loss of use and/or expenditures for substitute transportation; and lost wages) damages;

(e)   Awarding injunctive relief by ordering Volkswagen to issue corrective actions including notification, recall, inspection and, as necessary, repair and/or replacement of the defective and damaged parts in the Class Vehicles and imposing a constructive trust upon monies obtained by Volkswagen as a result of the alleged wrongful conduct;

(f)   Such   other   and   further   relief   as   the   Court   may   deem
just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

**GENOVA, BURNS & VERNOIA**

By:_s/Francis J. Vernoia
Francis J. Vernoia (8880)
354 Eisenhower Parkway
Eisenhower Plaza II
Livingston, New Jersey 07039
(973) 533-0777

**SCHOENGOLD SPORN LAITMAN
& LOMETTI P.C.**

Samuel P. Sporn (SS-4444)
Ashley Kim (AK-0105)
19 Fulton Street, Suite 406
New York, NY 10038
(212) 964-0046

Dated:   September 28, 2007

## CERTIFICATION, L. CIV. R. 11.2

I   hereby   certify   that   to   the   best   of   my   knowledge   the
matter   in   controversy   is   not   the   subject   of   any   other   action
pending   in   any   court   or   of   any   pending   arbitration   or
administrative proceeding.

___/s/Francis J. Vernoia_____
Francis J. Vernoia

Dated:   September 28, 2007