| | |
|---|---|
| LISA MOBLEY, on behalf of herself and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>VOLKSWAGEN OF AMERICA, INC. and VOLKSWAGENWERK AKTIENGESELLSCHAFT,<br><br>      Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISON: BERGEN COUNTY<br>DOCKET NO: BER-L-2104-02<br><br>CIVIL ACTION<br><br><br><br>**DECISION OF MOTION** |

MECCA, P.J.S.C.

  The Plaintiff in this matter, Lisa Mobley ("Mobley") is the owner of a 2001 Volkswagen Golf ("Mobley Vehicle"), which was purchased in April, 2001 from a Volkswagen dealer in Maryland. The Mobley Vehicle has at all times been registered in Maryland, and all servicing of the vehicle since its purchase has taken place in Maryland. Defendant, Volkswagen of America, Inc. ("VWoA"), is the importer and distributor of Volkswagen vehicles in the United States. VWoA is incorporated in New Jersey, but its principal headquarters and executive offices are located in Michigan. Defendant, Volkswagen AG ("VWAG") is a German corporation headquartered in Wolfsburg, Germany.

  VWoA's New Jersey operations consist of a New Jersey-based Product Liaison Group, which employs twenty-two (22) employees. The purpose of the Product Liaison Group is to provide "technical and engineering assistance" to Volkswagen and its outside legal counsel by examining litigation or claims made against the company and providing expertise and assistance. In addition to the Product Liaison Group, VWoA's other New

Jersey operations include, a "major or master redistribution center," a parts warehouse, and a service training facility.

This matter arises out of Plaintiff's Complaint, which alleges a "Ring Defect," which is a hidden vehicular condition that occurs when the piston rings in the engine are not honed properly or fail to "break-in" or "seat" properly, resulting in the rings' failure to act as a seal between the piston and the cylinder wall. As a result, the Ring Defect causes oil to leak and "burn" off in the engine. Plaintiff has asserted the following theories against the Defendants: (1) violation of the Consumer Fraud Act; (2) breach of express warranty; (3) breach of implied warranties; (4) negligence and negligent misrepresentation; and (5) fraud.

During the entire ownership of the Mobley Vehicle, Plaintiff has never had the vehicle's engine repaired in order to correct the alleged oil consumption defect or for any other reason. However, Plaintiff concluded that a defect was present after conducting an oil consumption "test drive," which began on March 11, 2004 and consisted of normal everyday use of her vehicle, after technical personnel from VWoA and VWAG had changed the oil, filled the crankcase, and sealed the engine oil system. On April 14, 2004, when Plaintiff's 2,480 mile oil consumption "test drive" was concluded, the Mobley Vehicle's odometer read a little under 61,000 miles. Thus, the Mobley Vehicle's consumption at this time was measured as three-quarter (3/4) quart in 2,480 miles or one quart per 3,300 miles.

Based on the foregoing facts, the Defendants filed this motion for summary judgment.

**I. Plaintiff's Claims are governed entirely by the Law of Maryland pursuant to the New Jersey Choice of Law Doctrines and Constitutional Due Process.**

In conducting a "government interest" analysis, it is clear that the law of Maryland should be applied to all claims in the Plaintiff's Complaint.

In determining the law to be applied when a conflict of law arises, New Jersey courts have employed the "government interest" test. *See* Mellk v. Sarahson, 49 N.J. 226 (1967). The first prong of this test is identifying the competing state rules. *See* Fink v. Ricoh Corp., 365 N.J. Super. 520, 584 (Law Div. 2003). The second prong of the governmental-interest analysis requires the court to determine which state has the most significant relationship to the occurrence and the parties with respect to each relevant area of conflict or on an issue by issue basis. Id. In Fink, the court stated that in applying the *Restatement (Second) of Conflict of Laws §*145, Comment f (1971) five factors guide the courts in applying the governmental-interest test in tort cases. These include (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states. Id. The most significant of the *Restatement* factors is the fifth factor. The elements if this factor were identified as follows: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) place where the relationship, if any, between the parties is centered." Id. at 586.  Under this test, the incorporation of a national company in New Jersey is not enough to permit the application of New Jersey law to an out-of-state claim. Heavner v. Uniroyal, Inc., 63 N.J. 130, 135 (1973).

In this case, the provisions of the New Jersey Consumer Fraud Act, specifically, N.J.S.A. 58:8-19, and provisions of the Maryland Consumer Protection Act, specifically M.G.L.A. 93A, § 11, conflict. N.J.S.A. 56:8-19 requires the court to award threefold the damages sustained by the Plaintiff in a consumer fraud action. However, under M.G.L.A. 93A, § 11, the court has discretion in determining whether to award treble damages. Both statutes have similar policies of deterring the manufacture of and distribution of unsafe products into the stream of commerce. However, Maryland has the additional governmental interest of providing fair and full compensation rights of the injured party since the Plaintiff is a resident of its state, whereas New Jersey has none. In Deemer v. Silk City, the court held:

> Whatever incidental benefits a liability judgment may contribute towards the correction of a defective design or the deterrence of wrongful conduct with respect to the future distribution of a product, the principal aim of a product liability or other personal injury claim is fairly to compensate the injured party. We therefore determine that the second of the two noted policies must control. Deemer v. Silk City Textile Mach Co., 193 N.J. Super. 643, 649 (App. Div. 1984).

Because the Plaintiff and her vehicle, among other things, are all solely connected to the state of Maryland, Maryland's governmental interest of compensating their resident must take priority. As a result, all of the Plaintiff's claims must be controlled by Maryland law, including Plaintiff's consumer fraud claims. The Plaintiff is in no worse position to recover damages since Maryland also offers a form of relief for victims of consumer fraud.

In her opposing papers and at oral argument, Plaintiff argued that the recent opinions of Dabush v. Mercedes-Benz USA, LLC, 2005 N.J. Super. LEXIS 164 (App. Div., June 8, 2005) and Thiedemann v. Mercedes-Benz USA, LLC, ___N.J.___,___(May

4

18, 2005), are distinguishable from the instant matter. In those cases, the court held that because the Plaintiff cannot demonstrate any proof of an "ascertainable loss," Plaintiff's claim under the CFA must fail. However, Plaintiff's reliance on these cases are misplaced, because before determining whether Plaintiff Mobley can demonstrate an "ascertainable loss," Plaintiff must first show that the law set forth in these cases applies. In both Dabush and Thiedemann, the fact that Defendant Mercedes-Benz USA, LLC maintained its headquarters and executive offices, from which its activities are directed, in New Jersey, is an important justification for tipping the balance in favor of applying New Jersey law. In this case, no such justification exists as the Defendant VWoA maintained its headquarters and executive offices in Michigan. As a result, for this additional reason, the law of Maryland must apply.

### II. Plaintiff's Claim under Maryland's Consumer Protection Act must fail because of the lack of evidence for loss or damage and for the lack of proof that unfair or deceptive practices actually reached the Plaintiff.

Pursuant to the Maryland Consumer Protection Act ("CPA"), Md. Com. Law Code Ann. §13-301 *et. seq.*, a private consumer bringing an action under the CPA must show actual injury or loss sustained as a result of a practice prohibited under the CPA. CPA § 13-408. In Legg v. Castruccio, the court stated that:

> "the rationales undergirding the actual injury or loss requirement include preventing aggressive consumers from acting as self-appointed private attorneys general in situations in which the statutory violation did not personally harm the consumer and the violation was relatively minor, and that consumers would use the statute's power to harass or coerce merchants." Legg v. Castruccio, 100 Md. App., 748, 756-757 (1994) *citing* CitaraManis v. Hallowell, 328 Nd. 142, 152 (1992).

Furthermore, the court in Legg, held that it is required that actionable damages under the Consumer Protection Statute must be "non-trivial." Legg at 772.

5

In this case, Plaintiff fails to show any actual injury or loss sustained. Specifically, the fact that the Mobley Vehicle consumed three-quarters (3/4) quart of oil in 2,480 miles does not rise to the level of demonstrating actual injury or loss contemplated by the statute. In fact, the claim by the Plaintiff is of the type that the statute seeks to prevent. As a result, Plaintiff's claim under the Consumer Protection Act fails and must be dismissed.

### III. Assuming Arguendo that New Jersey law was to be applied, Plaintiff's claim under New Jersey's Consumer Fraud Act fails because Plaintiff fails to demonstrate any proof of "ascertainable loss."

If New Jersey law was to apply, as argued by the Plaintiff in her opposing papers and at oral argument, and for which this Court disagrees, Plaintiff's claim under New Jersey's Consumer Fraud Act fails because Plaintiff fails to demonstrate "any ascertainable loss" that would support a claim under the CFA. In defining the elusive term "ascertainable loss," N.J.S.A. 56:8-19, the court in Thiedemann and subsequently in Dabush, stated, "to give effect to the legislative language describing the requisite loss for private standing under the CFA, and to be consistent with Weinberg v. Sprint Corp., 173 N.J. 233 (2002), a private Plaintiff must produce evidence from which a factfinder could find or infer that the Plaintiff suffered an actual loss." Dabush, slip. op. at 22. Moreover, "the ascertainable loss requirement operates as an integral check upon the balance struck by the CFA between the consuming public and sellers of goods." Id.

In this case, Plaintiff's loss of approximately one quart of oil is *de minimis* at most and does not constitute an ascertainable loss" contemplated by the statute and the case law. As in Dabush, what the Plaintiff urges here is that they are entitled to a motor vehicle without any of the ordinary tribulations of automobile ownership or lease: in other words, a perfect car unaffected by the laws of physics and common sense. Id. slip.

6

op. at 21. However, this Court is not inclined to provide legal remedies because of the Plaintiff's unrealistic disappointment of the alleged oil consumption of Defendant's vehicle. *See* Id. As a result, the loss alleged by the Plaintiff does not rise to the level necessary to overcome summary judgment.

### IV. Plaintiff's claim for breach of an express warranty fails because Plaintiff cannot demonstrate that this claim is based on anything other than general statements not made in connection with a particular sale.

Although privity can be established between the parties as evidenced by the fact that the Plaintiff purchased the Mobley Vehicle from a dealer of the Defendant, the substance of the Plaintiff's express warranty claim fails pursuant to Maryland law. In Worm v. American Cynamid Company, the court held that even where privity exists, "general statements not made in connection with a particular sale' cannot be the basis of a breach of warranty claim." *See* Worm v. American Cynamid Company, 1992 WL 368062 (D.Md. 1992).

In this case, Plaintiff bases her express warranty claim on Defendant's advertisements and statements, which are characterized as having "touted the high-performance and quality engineering of such vehicles." Plaintiff argues that this is not the case because she also relied on the specific, written representations in the Maintenance Schedule concerning the rate of oil consumption in Volkswagen's vehicles. In either situation however, Plaintiff fails to demonstrate that any of the quoted statements had anything to do with the purchase of her vehicle. In other words, Plaintiff fails to establish that the representations made by the Defendants were a "basis of the bargain."

7

### V. Plaintiff's claim for breach of implied warranty fails because Plaintiff fails to state a claim upon which relief can be granted.

Plaintiff's implied warranty claim fails because under Maryland law, Plaintiff failed to demonstrate a particular purpose. Md. Code Ann. Com. Law § 2-315 (1) (1997) provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

In Ford Motor Company v. General Accident Insurance Company, the court held that an actionable particular purpose "must be distinguishable from the normal use of the goods." Ford Motor Company v. General Accident Insurance Company, 365 Md. 321, 343 (Md. Ct. App. 2001). Further, "a particular purpose" differs from the ordinary purpose for which the goods are used. Official Comment 2, Md. Code. Ann. Com. Law § 2-315(1)(1997).

In this case, the Plaintiff does not specify any particular purpose for which the Mobley vehicle was to be used other than the ordinary purpose of using the Mobley vehicle as a means for transportation to and from work. Furthermore, assuming that the Plaintiff did have a particular purpose under the scope of the pertinent statute, Plaintiff's claim still fails because Defendants did not sell the Mobley vehicle knowing of a particular purpose nor could the Defendants knowledge of Plaintiff's purpose be presumed.

**VI. Plaintiff's negligence claim must be dismissed because Maryland law does not recognize negligence claims for purely economic loss.**

Because Maryland law does not recognize purely economic loss, Plaintiff's negligence claim must be dismissed. Morris v. Osmose Wood Preserving, set forth the governing doctrine:

> We have categorized losses in products liability claims as either (1) personal injuries, (2) physical harm to property other than the product itself, or (3) economic loss suffered when the product fails to meet the contractual expectations of the purchaser. Generally, Plaintiffs cannot recover in tort for losses in the third category – purely economic losses. Morris v. Osmose Wood Preserving,, 240 Md. 519, 667 (Md. Sp. Appeals 1995) *citing* U.S. Gypsum v. Baltimore, 336 Md. 145, 156 (1994).

In this case, it is evident from the evidence presented that the Plaintiff makes nothing more than a claim for economic damages. As a result, since Maryland, like New Jersey, does not recognize a negligence claim for pure economic losses, this claim must be dismissed even if the Plaintiff could demonstrate that her vehicle had experienced the "defect" of which she purports to complain.

**VII. Plaintiff's claim for negligent misrepresentation based on purely economic loss is not actionable under Maryland law because Plaintiff fails to show that statements by the Defendants are nothing more than mere "puffery" and "sales talk."**

Under Maryland law, "If the risk created by negligent conduct is no greater than one of economic loss, generally no tort duty will be found absent a showing of privity or its equivalent. Jacques v. First National Bank of Maryland, 515 A. 2d 756 (Md. Ct. App. 1986). However, case law in Maryland makes it clear that representations as to the soundness and value of a product are normally considered in law to be "indefinite generalities of exaggeration, which could deceive no rational person and therefore do not amount to misrepresentation." *See* Milkton v. French, 159 Md. 126, 132-133 (1930).

In this case, it is evident that the alleged statements quoted in paragraph 32 of Plaintiff's Complaint, which alleges *inter alia*, that the Defendants made representations concerning the quality, fitness, and dependability of Volkswagen automobiles, amount to nothing more than "puffing" and "sales talk." Basically, this is the sort of speech that is "offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer on which no reasonable person would rely." *See* McGraw v. Loyola Food, Inc., 124 Md. App. 560 (Md. Ct. Sp. App. 1999). As a result, Plaintiff's claim must be denied because it is clear that the statements made by the Defendants are not actionable under Maryland law.

### VIII. Plaintiff's fraud claim must be dismissed pursuant to Maryland law because she did not plead this claim with the required particularity and because she did not allege an actionable misstatement of present fact concerning her vehicle.

In Maryland, in order to prove a fraud claim, the Plaintiff must prove that "the Defendant[s] made a false representation of a presently existing fact, which was either actually known to be false or made with reckless indifference to the truth, for the purposes of defrauding her. In addition Plaintiff actually and reasonably relied to her detriment and suffered damage directly resulting from the false representation. Equitable Trust Company v. G&M Construction Corporation, 544 F. Supp. 736 (D. Md. 1982). As in New Jersey, in Maryland, each element must be proved by "clear and convincing evidence." Gross v. Sussexx, 332 Md. 247, 258 (1993).

In this case, the Plaintiff cannot state with particularity statements that the Defendants made as a false representation of existing fact. Furthermore, Plaintiff fails to prove that by clear and convincing evidence that the oil consumption promises were even false as evidenced by Plaintiff's own oil consumption test. Therefore, because Plaintiff

10

fails to satisfy the required elements of a fraud claim under Maryland law, this specific claim must be denied.

### IX. Summary Judgment must be granted and Plaintiff's Complaint, as to all counts, must be dismissed, because Plaintiff fails to satisfy the standard set forth in Brill.

According to the standard adopted by the New Jersey Supreme Court in <u>Brill v. Guardian Life Ins. Co. of America</u>, the determination of a motion for summary judgment rests on "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one sided that one party must prevail as a matter of law." <u>Brill v. Guardian Life Ins. Co. of America</u>, 142 N.J. 520 (1995). Moreover, the court must view the facts in the light most favorable to the non-moving party. <u>Brill</u> at 536.

Based on the foregoing reasons, viewing the facts in a light most favorable to the Plaintiff, summary judgment is appropriate. Plaintiff's Complaint must be dismissed as to all counts.

Dated: _____                                    _____

                                                          Hon. Daniel P. Mecca, P.J.S.C.