Adam M. Slater
Eric D. Katz
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JACQUELINE DELGUERCIO, LYNDA GALLO, FRANCIS NOWICKI, and KENNETH BAYER individually and on behalf of all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | **Civil Action No.: 07-2361(FSH)** |
| vs. | : : | **FOURTH AMENDED COMPLAINT** |
| VOLKSWAGEN OF AMERICA, INC., VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN OF AMERICA, INC. d/b/a AUDI OF AMERICA, INC., VOLKSWAGEN AG, AUDI AG, VOLKSWAGEN DE MEXICO, S.A. DE. C.V., and ABC ENTITIES 1-20, | : : : : : : : : | **AND JURY DEMAND** |
| Defendants. | : : | |

Jacqueline Delguercio, Lynda Gallo, Francis Nowicki and Kenneth Bayer individually and on behalf of all others similarly situated, by way of Complaint against the defendants, Volkswagen of America, Inc., Volkswagen Group of America, Inc., Volkswagen of America, Inc. d/b/a Audi of America, Inc., Volkswagen AG, Audi AG, Volkswagen De Mexico, S.A.DE. C.V., and ABC Entities 1-20 (collectively "VW") say:

## FACTUAL OVERVIEW

1.     Between 1997 and the present, Plaintiffs and the Plaintiff Class (as defined below) purchased or leased the Class Vehicles, defined as including, but not limited to: Passat, Passat Wagon, Jetta, Beetle, Golf, Touareg, Audi A4, A6, A8, Allroad, and all other VW and Audi models that have defective pollen filters, pollen filter housing seals, plenum drains, sunroof drains, powertrains, transmissions, and transmission control modules ("TCM").

2.     The pollen filter is present in the Class Vehicles to clean and/or remove any particulate matter from the air before it enters the passenger compartment.  The Pollen filter in the Class Vehicles was sealed with a porous material until 2005, when the seal was changed to a non-porous material.

3.     The plenum drain is present on the Class Vehicles to allow water that gets into the vehicles' cowl area to flow to the ground.

4.     The sunroof drain is present on the Class Vehicles to drain water from the sunroof.

5.     The powertrain, sometimes referred to as the drivetrain, includes the components that  compromise the power transmission system of the Class Vehicles.

6.     The transmission is compromised of the components that transmit power at a multiplicity of speeds and torque ratios in the Class Vehicles.

7.     The TCM controls all of the electrical and hydraulic operations of the transmissions of the Class Vehicles.

8.     The Class Vehicles were negligently designed and/or manufactured by VW because the Class Vehicles have defective pollen filters, pollen filter housing seals, plenum

drains, sunroof drains, powertrains, transmissions, and TCM's. The Class Vehicles were designed and/or manufactured in such a way as to allow the pollen filters, pollen filter housing seals, plenum drains, sunroof drains, powertrains, transmissions, and TCM's to be defective and/or damaged and contain other defects as may appear during the course of discovery. Specifically, the Class Vehicles' defects allow and allowed the plenum drain to easily clog with debris, causing water to pool in the cowl area and spill over or drain into the vehicles' interior through the pollen filter housing seal and the pollen filter itself, causing extensive damage; allow and allowed the sunroof drain to easily clog with debris, causing water to spill over and into the vehicles' interiors, causing extensive damage; and the location, housing, and placement of the TCM's allow and allowed the powertrain, transmission, and TCM to be damaged by water entering the interiors of the Class Vehicles.

9.      If the Plaintiffs and the members of the Plaintiff Class had known about the above-described defect(s) at the time of sale or lease, plaintiffs would have not purchased or leased the Class Vehicles, or would have demanded that the price or cost be reduced.

10.      The Class Vehicles, containing these common design and/or manufacturing defect(s), violates VW internal standards for vehicle design and manufacture. The Class Vehicles, containing these common design and/or manufacturing defect(s), also violate accepted engineering and/or automobile industry principles, standards, and guidelines.

**JURISDICTION AND VENUE**

11.      The United States District Court for the District of New Jersey has jurisdiction over the subject matter of this action pursuant to; (a) the Class Action Fairness

Act of 2005, 28 U.S.C. §1332; (b) diversity jurisdiction pursuant to 28 U.S.C. §1332(d)(2); and (c) supplemental jurisdiction pursuant to 28 U.S.C. §1367.

12.     While Plaintiffs are citizens of New Jersey, many other members of the Plaintiff Class are citizens of states different than that of one or more defendants and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

13.     In addition, venue is proper in this District pursuant to 28 U.S.C. §1391(b) because defendants transact business in this District, are subject to personal jurisdiction in this District, and many of the transactions alleged herein occurred in this District.

## THE PARTIES

14.     Plaintiff Jacqueline Delguercio ("Delguercio") is a citizen of the State of New Jersey and resides in the Township of Union, County of Union, and State of New Jersey.   Delguercio purchased a 2001 Volkswagen Passat 4-door sedan on or about October 3, 2000.

15.     Plaintiff Lynda Gallo ("Gallo") is a citizen of the State of New Jersey and resides in the Township of Whippany, County of Morris, and State of New Jersey.   Gallo leased a 2005 Audi A4 1.8 Quattro on or about March 2, 2005.

16.     Plaintiff Francis Nowicki ("Nowicki") is a citizen of the State of New Jersey and resides in the Township of East Windsor, County of Mercer, and State of New Jersey.   Nowicki purchased a pre-owned 2002 Audi A6 Quattro on or about February 20, 2006.

17.     Plaintiff Kenneth Bayer ("Bayer") is a citizen of the State of New Jersey and resides in the Township of Dunellen, County of Middlesex, and State of New Jersey. Bayer purchased a 2004 Volkswagen Golf R32 on or about on or about August 20, 2004.

4

18.     Defendants, Volkswagen of America, Inc., Volkswagen Group of America, Inc., and Volkswagen of America, Inc. d/b/a Audi of America, Inc., are automobile design, manufacturing, distribution, and servicing corporations organized under the laws of the State of New Jersey and doing business in all 50 states in the United States, with their principal place of business in Auburn Hills, Michigan, and design, manufacture, distribute, market, service, repair, sell and lease passenger vehicles, including the Class Vehicles, nationwide.

19.     Volkswagen AG, Berliner Ring 2, 38440 Wolfsburg, Federal Republic of Germany, Audi AG, Auto-Union-Str.2, D-85045, Ingolstadt, Deutschland, and Volkswagen De Mexico, S.A. DE.   C.V., Autopista Mexico – Puebla Km. 116, San Lorenzo Almecatla, Cuautlancingo, Puebla, C.P. 72008, Mexico, are automobile design, manufacturing, sale, leasing, distribution, and servicing corporations organized under the laws of Germany (Volkswagen AG and Audi AG) and under the laws of Mexico (Volkswagen De Mexico) and doing business in all 50 states in the United States. Volkswagen AG is the parent of Volkswagen of America, Inc., Volkswagen Group of America, Inc., Volkswagen of America, Inc. d/b/a Audi of America, Inc., Audi AG, and Volkswagen De Mexico.   These defendants design, manufacture, distribute, market, service, repair, sell and lease passenger vehicles, including the Class Vehicles, nationwide.

20.     The "Plaintiff Class" is defined as and consists of:

All individuals who purchased or leased a VW Passat, and any other VW and Audi models including, but not limited to, Passat Wagon, Jetta, Beetle, Golf, Audi A4, Audi A6, A8, Allroad, and all other VW and Audi models ("Class Vehicles") with the same or

similar defect(s) to the pollen filter, pollen filter housing seal, plenum drain, sunroof drain, powertrain, transmission, and TCM  described herein, from 1997 through the present.

## SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF DELGUERCIO

21.    Plaintiff Delguercio repeats and restates the foregoing allegations as if set forth at length herein.

22.    On or about October 3, 2000, plaintiff Delguercio purchased a 2001 VW Passat automobile designed, manufactured and sold by defendants.  This vehicle was new at the time of purchase.

23.    At the time of sale, Delguercio's vehicle, as with the Class Vehicles of all the class members, contained a defective pollen filter, pollen filter housing seal, plenum drain, sunroof drain, powertrain, transmission, and TCM and failed to conform to defendants' warranty.   Thereafter, when Delguercio's VW Passat had been driven approximately 56,000 miles, Delguercio noticed signs of electrical malfunction, including the dashboard warning lights illuminating all at once, the car could not easily be shifted to "drive," the transmission would buck when the car accelerated, and water accumulated in the inside of the vehicle.  Soon after, Delguercio brought her vehicle to a local mechanic and paid for ineffective repairs, then to an authorized VW dealer and service center.  The VW technician advised that Delguercio was experiencing a common problem, and Delguercio was charged for further ineffective repairs.

24.    Thereafter, Delguercio traded in the vehicle, at greatly diminished value, as a result of the defective pollen filter, pollen filter housing seal, plenum drain, sunroof drain, powertrain, transmission, and/or TCM,  and resulting damage to the vehicle.

25.     Delguercio has contacted VW and yet, VW has been unwilling to investigate or address Delguercio's complaints.

## SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF GALLO

26.     Plaintiff Gallo repeats and restates the foregoing allegations as if set forth at length herein.

27.     On or about March 2, 2005, Plaintiff Gallo leased a 2005 Audi A4 1.8T Quattro automobile designed, manufactured, and leased from defendants.  This vehicle was new at the time of the lease.

28.     At the time of lease, Gallo's vehicle, as with the Class Vehicles of all the class members, contained a defective pollen filter, pollen filter housing seal, plenum drain, sunroof drains, powertrain, transmission, and TCM and failed to conform to defendants' warranty.  Thereafter, Gallo noticed signs of water infiltration to the interior of the vehicle, including but not limited to water blowing into her face from the air conditioning vents, approximately 2 inches of standing water in her car, and noticed signs of electrical malfunction, and the vehicle sustained extensive damage, including but not limited to malfunction of the comfort control module/convenience control module ("CCM"), the engine control module ("ECM"), TCM, wires, carpet and seats.  Plaintiff Gallo brought her vehicle to an authorized Audi dealer and service center, on multiple occasions within the express warranty period.  Audi's customer service representatives and service personnel misrepresented the true facts to Gallo and blamed Gallo for the manifested problems, and failed to fully and properly repair and service the damage.  Gallo and her insurance carrier were charged for ineffective and useless repairs and service of her vehicle, all of which the defendants should have performed under warranty at no charge.

29.     Gallo contacted VW/Audi and yet, VW/Audi were unwilling to investigate or address plaintiff Gallo's complaints.

## SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF NOWICKI

30.     Plaintiff Nowicki repeats and restates the foregoing allegations as if set forth at length herein.

31.     On or about February 20, 2006, Plaintiff Nowicki purchased a pre-owned 2002 Audi A6 Quattro automobile designed and manufactured by defendants.

32.     At the time of lease, Nowicki's vehicle, as with the Class Vehicles of all the class members, contained a defective pollen filter, pollen filter housing seal, plenum drain, sunroof drains, powertrain, transmission, and TCM and failed to conform to defendants' warranty.  Nowicki brought his vehicle to Princeton Audi on several occasions to be serviced while the vehicle was still under warranty.

33.     On or about March 9, 2008 Nowicki entered his vehicle and immediately noticed that six (6) inches of water had frozen on the passenger side floor.  Nowicki removed as much of the ice and water from the vehicle as possible.  However, because Nowicki was out of state at the time, he was forced to drive the vehicle home.  On the drive home, Nowicki's vehicle began to shake and "buck" violently.  As a result, Nowicki pulled his vehicle into a rest stop.  While at the rest stop, Nowicki was having difficulty getting his vehicle in and out of gear.  Nowicki determined that his car was unsafe to drive and called a tow truck to tow his truck back to New Jersey at a cost of $695.00.

34.     Nowicki's car was towed to KPS Tire & Automotive / Princeton Garage, who subsequently diagnosed the problem as a clogged plenum drain that resulted in water entering the car through the pollen filter damaging the vehicle's TCM.  As a result of the

malfunctioning TCM, the vehicle's transmission was also destroyed, requiring replacement. The cost to repair the damage that resulted from the defects in Nowicki's vehicle was $7,800.00. However, Nowicki made a claim with his insurance company, State Farm who covered all the repair charges except his $500.00 deductible.

35.     Nowicki contacted Audi of America to alert them of the situation and request them to cover the cost of the repair. Audi took Nowicki's information but failed to ever reimburse him for the cost of the repairs. Thus, Nowicki and his insurance carrier were charged for repairs and service as a direct result of defects in the vehicle, all of which the defendants should have covered at no charge.

## SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF BAYER

36.     Plaintiff Bayer repeats and restates the foregoing allegations as if set forth at length herein.

37.     On or about August 20, 2004, Plaintiff Bayer purchased a new 2004 Volkswagen Golf R32 automobile designed, manufactured, and sold by defendants.

38.     At the time of purchase, Bayer's vehicle, as with the Class Vehicles of all the class members, contained a defective pollen filter, pollen filter housing seal, plenum drain, sunroof drains, powertrain, transmission, and TCM and failed to conform to defendants' warranty. Bayer brought his vehicle to authorized Audi and Volkswagen dealerships on several occasions to be serviced while the vehicle was still under warranty.

39.     In or about the spring of 2005 Bayer first began noticing wetness and a mold smell in his vehicle, particularly in the hatch area. Shortly thereafter, Bayer brought his car to Paul Miller Audi in Parsippany, New Jersey to have a 50,000 mile service performed (even though his vehicle only had about 40,000 miles) and the water was

drained from the interior of his vehicle at that time.  Despite this service, Bayer continued to have water infiltration problems in his vehicle.  At a later service appointment at Flemington Volkswagen, Bayer's sunroof drains were cleaned and modified to allow water to flow more freely.  Again, despite this service and modification of the sunroof drains, water continued to enter the interior of Bayer's vehicle.  In or about June 2008 Flemington Volkswagen diagnosed Bayer's vehicle as having sunroof drain hoses that were not connected to the drains and also having a missing sunroof drain hose (driver side front). Despite these obvious defects, Bayer was advised that Volkswagen was only willing to pay half the cost to fix this problem, and he would have to pay for the remainder of the repair.

40.     As a result of the constant water infiltration, the carpet in Bayer's vehicle has been damaged and a permanent mold smell remains in his vehicle.  In addition, several items of clothing and other belongings that were in his vehicle during periods of water infiltration have been ruined.

## REASONS FOR CLASS CERTIFICATION

41.     **Numerosity.**  This action is brought by Plaintiffs and all other persons similarly situated whose joinder in this action is impracticable because the class is so numerous.  The class consists of more than one million VW and Audi owners and lessees.

42.     **Common Questions of Law and Fact.**  There are questions of law or fact common to the members of the class that predominate over questions of law or fact affecting only individual members.  The questions of law or fact common to all members include but are not limited to:

(a)     Whether the Class Vehicles contain a defective pollen filter, pollen filter housing seal,  plenum drain, sunroof drain, powertrain, transmission, and/or TCM.

(b)      Whether VW has failed to properly service, repair, correct or address the alleged defect(s) and provide consumers with a non-defective vehicle;

(c)      Whether VW has breached its warranty due to the existence of the alleged defect(s);

(d)      Whether Plaintiffs and the Plaintiff Class are entitled to revoke acceptance and/or rescind its contracts of sale and/or lease, as appropriate;

(e)      Whether VW has concealed and/or misrepresented information concerning the defect(s) inherent in the pollen filter, pollen filter housing seal, plenum drain, sunroof drains, powertrain, transmission, and/or TCM of the Class Vehicles;

(f)      Whether the Class Vehicles' pollen filters, pollen filter housing seals, plenum drains, sunroof drains, and/or powertrains, transmissions, and/or TCM's are inherently defective and not of merchantable quality.

(g)      Whether the Plaintiffs and the Plaintiff Class, as a result of VW's breach and misconduct, are entitled to injunctive relief and other relief, and the amount of such relief.

43.      **Typicality.**   The claims of the Plaintiffs are substantially similar to the claims of the entire class and are typical of the claims of the class.

44.      **Adequacy of Representation.**   Plaintiffs will fairly and adequately protect the interests of the class.   They have retained attorneys experienced in the prosecution of complex civil litigation in general, and class actions in particular.

45.      **Superiority**.   The maintenance of this action as a class action is superior to all other available methods of adjudication in achieving a fair and efficient adjudication of the controversy in this matter because:

(a)     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class;

(b)     The action is manageable as a class action because notice of the pendency of this action can readily be furnished to all prospective members of the class because their identities are known to VW;

(c)     In view of the complexity of the issues and the expense of litigation, the separate claims of the individual class members are insufficient in amount to support the prosecution of separate actions because such members would lack the economic incentive to prosecute such actions;

(d)     It is probable that the amount that may be recovered by individual class members as a group will be large enough in relation to the expense and effort of administering the action to justify a class action;

(e)     The class members have a common and undivided interest to ensure that owners and lessees of Class Vehicles will be compensated for the costly repairs to their vehicles as well as the consequent depreciation and diminution in the value of their vehicles and that VW does not continue to economically damage and defraud consumers through unscrupulous and unconscionable business practices.

## THE CLAIMS OF THE PLAINTIFF AND THE CLASS

### FIRST COUNT
### (Breach of Express Warranty)

46.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

47.     At all relevant times, VW has continuously designed, manufactured, distributed, marketed, sold and leased the Class Vehicles and warranted that each vehicle was free of defects.  Moreover, VW expressly warranted to the general public and to Plaintiffs and Plaintiff Class that the Class Vehicles were safe and properly designed and manufactured.  VW expressly warranted that these vehicles were safe to use for ordinary and expected uses for a passenger vehicle.  VW warranted to the general public and to Plaintiffs and Plaintiff Class that the construction, design and manufacture of the Class Vehicles was appropriate and safe.

48.     Despite VW's express warranties, however, the Class Vehicles were sold or leased to Plaintiffs and members of the Plaintiff Class in a defective condition in that each Class Vehicle contained a defective pollen filter, pollen filter housing seal, and plenum drain that over time caused water to pool in the cowl area and spill over and/or drain into the vehicles' interior through the pollen filter housing seal and/or the pollen filter itself, and/or contained a defective sunroof drain that over time caused water to back up and pool and spill over and/or drain into the vehicles' interior causing damage to the electrical components, transmission, TCM, and the interior carpets and carpet padding of the vehicles, and defective powertrains, transmissions, and TCM's, the location, housing and placement of which allow the powertrain, transmission, and TCM to be damaged by water entering the interior of the vehicles.   Furthermore, defendants failed to warn Plaintiffs and

members of the Plaintiff Class of the problems associated with the defective pollen filter, pollen filter housing seal, sunroof drain, plenum drain, powertrain, transmission, and TCM.

49.     Unbeknownst to Plaintiffs and members of the Plaintiff Class at the time they purchased or leased the Class Vehicles, VW designed and sold vehicles that were defective in workmanship, material and manufacturing.

50.     By reason of the foregoing, VW has breached its express warranties to Plaintiffs and members of the Plaintiff Class and is liable to Plaintiffs and members of the Plaintiff Class for such breach.

51.     The powertrain, transmission, and TCM are covered by a 10-year/100,000 mile express warranty for plaintiff Delguercio, a 4-year/50,000 mile express warranty for Plaintiff Gallo, a 5-year/60,000 mile express warranty for plaintiff Nowicki, and a 4-year/50,000 mile express warranty for plaintiff Bayer.

52.     VW knew of the aforesaid defects at least as early as 2004 -- as evidenced by Technical Service Bulletins VW issued -- and continues to have knowledge of the defect(s) and breach of its express warranty, yet has intentionally failed to notify Plaintiffs and members of the Plaintiff Class.

53.     This intended failure to disclose known defect(s) is malicious, and with willful and wanton disregard of the rights and economic interests of Plaintiffs and members of the Plaintiff Class.

54.     As a result of the defendants' actions, Plaintiffs and members of the Plaintiff Class have suffered economic damages including but not limited to costly repairs,

loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damage.

WHEREFORE, Plaintiffs and members of the Plaintiff Class demand judgment against the defendants for:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Attorneys' fees;

(d)    Interest;

(e)    Costs of suit; and

(f)    Such other relief as the Court deems equitable and just.

### SECOND COUNT
### (Breach Of Implied Warranty)

55.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

56.    The purchase or lease of the Class Vehicles by Plaintiffs and members of the Plaintiff Class with defective pollen filters, pollen filter housing seals, plenum drains, sunroof drains, powertrains, transmissions, and TCM's from VW authorized dealers and agents, is governed by the warranty provision of the Uniform Commercial Code ("UCC").

57.    The UCC has been adopted in every state in the United States of America.

58.    Defendant VW is a "merchant" as defined by the UCC.

59.    The Class Vehicles are "goods" as defined by the UCC.

60.    VW's express warranty does not and cannot exclude the Uniform Commercial Code's implied warranty of merchantability.

61.     Plaintiffs and members of the Plaintiff Class are provided with an implied warranty of merchantability by the UCC.

62.     Pursuant to the provisions of the UCC, the Class Vehicles are not "merchantable" because their defective condition does not pass without objection in the trade.

63.     The Class Vehicles, at the time they left VW's control, had defect(s) which over time caused water to build up and leak within the car, causing damage to electrical wiring and components, the transmission, and/or the interior carpet and carpet padding, seats, and other interior structures, and which allowed the powertrain, transmission, and TCM to be damaged by water entering the interior of the Class Vehicles.

64.     Defendants knew and continue to have knowledge of the defect(s) and breach of their warranty, yet have intentionally failed to notify Plaintiffs and members of the Plaintiff Class.

65.     This intended failure to disclose known defect(s) is malicious, and with willful and wanton disregard of the rights and economic interests of Plaintiffs and members of the Plaintiff Class.

66.     As a direct and proximate result of the defective Class Vehicles and VW's breach of the implied warranty of merchantability, Plaintiffs and members of the Plaintiff Class have suffered economic damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damage.

WHEREFORE, Plaintiffs and members of the Plaintiff Class demand judgment against the defendants for:

(a)   Compensatory damages;

(b)   Punitive damages;

(c)   Attorneys fees;

(d)   Interest;

(e)   Costs of suit; and

(f)   Such other relief as the Court deems equitable and just.

### THIRD COUNT
### (Improper Repair and Breach of Warranty)

67.   Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

68.   VW had a duty, both in tort and warranty, to properly repair the defect(s) in the Class Vehicles at defendants' sole and exclusive expense.

69.   VW also had a duty, both in tort and under warranty, to properly repair all damage resulting to other components and parts of the Class Vehicles, as a result of the defect(s) in the Class Vehicles at defendants' sole and exclusive expense.

70.   VW breached its duty and its warranty by failing to properly repair the aforesaid defect(s) and resulting damage in all Class Vehicles, and to do so at VW's sole and exclusive expense.

71.   As a direct and proximate result of VW's aforementioned breaches of its duties and negligence, Plaintiffs and members of the Plaintiff Class have experienced damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damage.

72.     VW's breaches of its duties and its warranty, as aforesaid, were intentional, malicious, and with willful and wanton disregard of the rights and economic interests of the Plaintiffs and members of the Plaintiff Class.

WHEREFORE, Plaintiffs and members of the Plaintiff Class demand judgment against the defendants for:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Attorneys' fees;

(d)     Interest;

(e)     Costs of suit; and

(f)     Such other relief as the Court  deems equitable and just.

## FOURTH COUNT
### (Breach of Duty of Good Faith and Fair Dealing)

73.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

74.     Each contract of sale and lease agreement entered by Plaintiffs and members of the Plaintiff Class for the purchase and lease of the Class Vehicles contains an implied term requiring defendants to adhere to a duty of good faith and fair dealing.

75.     Defendants have breached their duty of good faith and fair dealing by, among other things, failing to notify Plaintiffs and members of the Plaintiff Class of the defect(s) in the Class Vehicles, and failing to fully and properly repair the defect(s) and resulting damage to the Class Vehicles, at no expense to Plaintiffs and members of the Plaintiff Class.

76.     Defendants' breach of their implied duty of good faith and fair dealing is intentional, malicious, and with willful and wanton disregard of the rights and interests of Plaintiffs and members of the Plaintiff Class.

77.     As a direct and proximate result of VW's breach of its implied duty of good faith and fair dealing, Plaintiffs and members of the Plaintiff Class have suffered damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damages.

WHEREFORE, Plaintiffs and members of the Plaintiff Class demand judgment against the defendants for:

    (a)     Compensatory damages;

    (b)     Punitive damages;

    (c)     Attorneys' fees;

    (d)     Interest;

    (e)     Costs of suit; and

    (f)     Such other relief as the Court deems equitable and just.

### FIFTH COUNT
### (Negligent Misrepresentation)

78.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

79.     VW negligently failed to disclose defect(s) and continuously made negligent misrepresentations regarding defect(s) in the Class Vehicles to Plaintiffs and members of the Plaintiff Class during the sale, lease, maintenance, and servicing of said vehicles.

80.     VW negligently advised the Plaintiffs and members of the Plaintiff Class that certain maintenance and servicing was the only maintenance and servicing necessary and appropriate to properly maintain the Class Vehicles.

81.     Plaintiffs and members of the Plaintiff Class justifiably relied on VW's representations to their detriment, and as a result, suffered damages.

82.     By virtue of the foregoing, VW has committed negligent misrepresentation.

WHEREFORE, Plaintiffs and members of the Plaintiff Class demand judgment against the defendants for:

a)     Compensatory damages;

b)     Interest;

c)     Costs of suit;

d)     Attorney's fees; and

e)     Such other relief as the Court deems equitable and just.

### SIXTH COUNT
### (Statutory Consumer Fraud)

83.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

84.     The advertisement, promotion, distribution, supply, sale, and lease of the Class Vehicles is a "sale or advertisement" of "merchandise" governed by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., and implicated and governed by the applicable Consumer Fraud Acts, however titled or described, of every State in the United States of America.

85.     By advertising, promoting, distributing, supplying, selling and leasing the Class Vehicles, when VW knew or should have known that each of the Class Vehicles' pollen filter, pollen filter housing seals, plenum drains, sunroof drains, powertrains, transmissions, and TCM's were or could be defective, VW engaged in an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., and the applicable Consumer Fraud Acts, however titled or described, of every State in the United States of America.

86.     As a direct and proximate result of VW's aforesaid Consumer Fraud violations, Plaintiffs and members of the Plaintiff Class have suffered ascertainable losses.

WHEREFORE, Plaintiffs and members of the Plaintiff Class demand judgment against the defendants for:

(a)     Compensatory damages;

(b)     Treble damages;

(c)     Attorneys' fees;

(d)     Interest;

(e)     Costs; and

(f)     Such other relief as the Court deems equitable and just.

## SEVENTH COUNT
### (Unjust Enrichment)

87.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

88.     As a direct and proximate result of VW's failure to disclose known defect(s) and material misrepresentations regarding known defect(s) in the Class Vehicles, VW has profited through the sale and lease of said vehicles.

89.     Additionally, as a direct and proximate result of VW's failure to disclose known defect(s) and material misrepresentations regarding known defect(s) in the Class Vehicles, Plaintiffs and members of the Plaintiff Class have incurred substantial costs to repair the defect(s) and therefore have conferred an unjust substantial benefit upon VW.

90.     Moreover, as a direct and proximate result of VW's failure to disclose known defect(s) and material misrepresentations regarding known defect(s) in the Class Vehicles, VW has profited to the extent that Plaintiffs and members of the Plaintiff Class purchased certified VW parts to repair the defect(s) and/or serviced Class Vehicles at authorized VW dealerships to repair the defect(s).

91.     VW has therefore been unjustly enriched due to the known defect(s) in the Class Vehicles through the use of funds that earned interest or otherwise added to VW's profits when said money should have remained with Plaintiffs and members of the Plaintiff Class.

92.     As a result of the VW's unjust enrichment, Plaintiffs and members of the Plaintiff Class have suffered damages.

WHEREFORE, Plaintiffs and members of the Plaintiff Class demand judgment against the defendants for:

a)      Compensatory damages;

b)      Interest;

b)      Costs of suit;

d)      Attorney's fees; and

e)      Such other relief as the Court deems equitable and just.

## EIGHTH COUNT
### (Common Law Fraud)

93.      Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

94.      VW, by and through the continuous misrepresentations and/or omissions falsely represented to Plaintiffs and members of the Plaintiff Class during the sale, lease, maintenance, and servicing, that the Class Vehicles were free of defects.  In addition, VW made these continuous misrepresentations and/or omissions knowing that they were false and/or misleading.

95.      VW falsely told the Plaintiffs and members of the Plaintiff Class that the water damage to the Class Vehicles was due to "outside influences," not subject to warranty or VW's obligations, despite knowing that the water damage was due to the aforesaid defects.

96.      Plaintiffs and members of the Plaintiff Class relied on these representations to their detriment as intended by VW and, as a result, suffered damages.

97.      By virtue of the foregoing, VW has committed fraud.

WHEREFORE, Plaintiffs and members of the Plaintiff Class demand judgment against the defendants for:

(a)      Compensatory damages;

(b)      Punitive damages;

(c)      Interest;

(d)     Costs of suit;

(e)     Attorney's fees;

(f)     Such other relief as the Court deems equitable and just.

## NINTH COUNT
### (Injunctive Relief)

98.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

99.     Injunctive relief is appropriate and necessary to remedy VW's wrongful conduct and to prevent VW from continuing its wrongful conduct.

WHEREFORE, Plaintiffs and Plaintiff Class demand judgment against the defendants for:

(a)     Entry of a preliminary injunction and permanent injunction, requiring defendants to immediately:  (1) notify all members of the Plaintiff Class of the aforesaid defect(s), (2) institute a comprehensive recall of the Class Vehicles, (3) inspect all Class Vehicles currently owned or leased by members of the Plaintiff Class to determine the nature and extent of the defect(s) and necessary repairs for each vehicle inspected, (4) fully and properly repair all Class Vehicles, as required, at defendants' sole expense, (5) provide ongoing annual inspections of all Class Vehicles owned by members of the Plaintiff Class to determine the nature and extent of the defect(s) and necessary repairs of each vehicle inspected, (6) take all necessary steps to modify the design, manufacture, and quality control for the Class Vehicles, to prevent the aforesaid defect(s) from arising in any of the Class Vehicle models in the future.

(b)     Attorneys' fees;

(c)     Costs of suit; and

(d)      Such other relief as the Court deems equitable and just.

## TENTH COUNT
### (Fictitious Parties)

100.      Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

102.      At all times relevant, ABC Entities 1-20 are companies, corporations, or other entities that are or may be liable for the aforesaid wrongdoing and damages.

103.      ABC Entities 1-20 have not been identified.

WHEREFORE, Plaintiffs and members of the Plaintiff Class demand judgment against the defendants for:

(a)      Injunctive relief;

(b)      Compensatory damages;

(c)      Punitive Damages;

(d)      Interest;

(e)      Attorney's Fees;

(f)      Costs of suit; and

(g)      Such other relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

**MAZIE SLATER KATZ & FREEMAN, LLC**
Attorneys for Plaintiffs


BY:____*s/ Adam Slater*_____
      Adam M. Slater
      Eric D. Katz

Dated:  July 30, 2008

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby certify that, upon information and belief, the matter in controversy is the subject of an action filed in the United Sates District Court for the District of New Jersey, styled Dewey, et al. v. Volkswagen of America, et al., Civil Action No. 07-2249 (FHS/PS).

I hereby further certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

BY:   *s/ Adam Slater*
    Adam M. Slater

Dated: July 30, 2008

H:\EDK\DelGuercio Class\Fourth Amended Complaint 7-30-08.doc