UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN M. DEWEY, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>VOLKSWAGEN AG, et al.,<br><br>        Defendants. | Case Nos.:<br>07-CV-2249-FSH-PS<br>07-CV-2361-FSH-PS |
| JACQUELINE DELGUERCIO, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., et al.,<br><br>        Defendants. | CONSOLIDATED CLASS ACTION<br><br>Judge Faith S. Hochberg |

**MEMORANDUM OF LAW IN SUPPORT OF TROY COREY'S OBJECTION TO PLAINTIFFS' COUNSEL'S APPLICATION FOR AWARD OF <u>ATTORNEYS' FEES AND NOTICE OF INTENTION TO APPEAR</u>**

                  Pamela Kulsrud Corey, Esq.
                  28 Winterbottom Lane
                  Pound Ridge, NY 10576
                  Tel: (917) 853-4566

                  Objector *pro se*, and
                  counsel for Objector Troy Corey

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     Summary of the Argument and Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    The Standards Applicable to Review Counsel's Fee Request. . . . . . . . . . . . . . . . . . . . . . 2

III.   Plaintiffs' Counsel Have Applied the Wrong Fee Approach . . . . . . . . . . . . . . . . . . . . . . 3

IV.   As this Case Is More Analogous to a Common Benefit
       Settlement; Lodestar Is the Appropriate Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    Under the Lodestar Approach, the Fee Request Is Excessive . . . . . . . . . . . . . . . . . . . . . . 8

VI.   Applying the Percentage of the Fund Approach,
       the Requested Fee Is Also Excessive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.  The Awards in Similar Cases Do Not Support
       Plaintiffs' Counsel's Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VIII. Public Policy Considerations Argue Against
       a Super-Enhanced Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Brennan v. United Steelworkers of America AFL-CIO-CLC (Dist. 15) (Dist 31)*,
   554 F.2d 586 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Charles v. Goodyear Tire & Rubber Co.*,
   976 F. Supp. 321, 325 (D.N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cooperstock v. Pennwalt Corp.*,
   820 F. Supp. 921, 926 (E.D. Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Denney v. Jenkens & Gilchrist*,
   230 F.R.D. 317 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Goldberger v. Integrated Resources*,
   209 F.3d 43, 50 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*In re Cendant Corp. Litig.*,
   243 F.Supp.2d 166, 172 (D.N.J.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*In re Corrugated Container Antitrust Litig.*,
   1983-2 Trade Cas (CCH) ¶ 65,628 (S.D.Tex. September 1, 1983) . . . . . . . . . . . . . . 10

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D.Ga.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re First Fidelity Bancorporation Sec. Litig.*,
   750 F.Supp. 160 (D.N.J.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Folding Carton Antitrust Litig.*,
   84 F.R.D. 245 (N.D.Ill.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) . . . . . . . . . . . . 2

*In re MGM Grand Hotel Fire Litig.*,
    660 F.Supp. 522 (D.Nev.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*In re Remeron Direct Purchaser Antitrust Litig.*,
    No. Civ.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) . . . . . . . . . . . . . . . . 12

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Sulzer Orthopedics, Inc.*,
    398 F.3d 778 (6th Cir. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Visa Check/ Mastermoney Antitrust Litig.*,
    297 F.Supp.2d 503 (E.D.N.Y. 2003),
    *aff'd sub nom Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Twinlab Corp. Sec. Lit.*,
    187 F.Supp.2d 80, 87 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Washington Public Power Supply Sys. Sec. Litig.*,
    779 F.Supp. 1063 (D.Ariz.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*O'Keefe v. Mercedes-Benz USA, L.L.C.*,
    214 F.R.D. 266 (E.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Perry v. FleetBoston Financial Corp.*,
    No. 04-0507, 2005 WL 1527694 (E.D.Pa. June 28, 2005) . . . . . . . . . . . . . . . . . . . . . . 3

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F.Supp.2d 942 (E.D.Tex.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
  No. Civ.A. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) . . . . . . . . . . . . . . . . . . . 8

*Trustees v. Greenough* ,
  105 U.S. 527 (1882) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Weinberger v. Great Western Nakoosa Corp.*,
  925 F.2d 518 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


## *OTHER AUTHORITIES*

Alba Conte and Herbert Newberg,
  *Newberg On Class Actions* (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Third Circuit Task Force, *Court Awarded Attorneys' Fees*,
  108 F.R.D. 237 (Oct. 8, 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

MANUAL FOR COMPLEX LITIGATION,
  (2d ed. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

I.      SUMMARY OF THE ARGUMENT AND PRELIMINARY STATEMENT

My name is Pamela Kulsrud Corey, I reside at 28 Winterbottom Lane, Pound Ridge, New York 10576. In June 2004, I purchased a 2004 Passat GL with VIN: WVWRH63B74P009839. There are 22,000 miles on my vehicle. I am submitting this objection on behalf of myself and Troy Corey, a member of the class. My client, Troy Corey, who also resides at 28 Winterbottom Lane, Pound Ridge, New York 10576, leased a 2002 Audi A4 with VIN: WAULT68E22A162973. He terminated this lease in 2004.

In addition to being and representing a Class Member, I also have a substantial background in class action practice. For 21 years I was a class action litigator for Bernstein Litowitz Berger & Grossmann, LLP and Kirby McInerney LLP. For the past decade or more, I have specialized in class action settlements and attorneys' fee applications. In my ten years of supervising the approval of all settlements sequentially for both firms, I have overseen approximately 60 class action settlements including: securities litigations, derivative litigations, breach of fiduciary or state transactions cases, consumer fraud, telecommunication and bank fraud matters. Through this experience, I believe my background and point of view would be helpful to the Court's review of Plaintiffs' Counsel's Fee Application in this matter.

Since December 1987, I have been a member of the Bar of the State of New Jersey and the United States District Court for the District of New Jersey. I am also a member in good standing of the New York Bar, for both state and federal courts. Please note my intention to appear at the July 26, 2010 hearing.

In my position as an experienced federal class action attorney and a member of the Class, my views are more informed by experience and less biased than those of the defendants. They are also less biased than Plaintiffs' Counsel. Because defendants, Volkswagen AG and Volkswagen Group

1

of America, Inc., *et al.*, are obligated to pay whatever attorneys' fees this Court deems appropriate, they have a clear incentive and obligation on behalf of their clients to reduce the fee to be paid in any way they can. However, having read Plaintiffs' Counsel's Brief in Support of Application of Co-Counsel For Award of Attorneys' Fees and Expenses (the "Fee Brief"), it appears to me that portions of the analysis are inapposite. For example, it simply sounds silly to claim that a litigation in a United States District Court, guided by Federal Rule of Civil Procedure 23, would turn to state law (under a tortured conflict of law reasoning) for an assessment of attorneys' fees. No more appropriate is the suggestion that this is a statutory fee-shifting case. These arguments are "straw men" easily knocked aside by an experienced Rule 23 litigator, as they have been in Plaintiffs' Counsel's papers.

When I reviewed the May 15, 2010 Class Notice, I was shocked by the $30 million maximum fee sought. As a seasoned settlement specialist, my experience is that, unless a wave of objections is made, Plaintiffs' Counsel routinely seek the maximum amount described in the Class Notice. A $30 million fee is patently unreasonable here and is not sought. I understand that there was a wave of objections to that fee and Plaintiffs' Counsel now seek compensation of $22.5 million (plus expenses). That fee is still too high given the appropriate application of fee jurisprudence and the nature of the settlement benefits conferred. I object to the $22.5 million fee as unreasonable on behalf of myself and my client.

## II. THE STANDARDS APPLICABLE TO REVIEW OF COUNSEL'S FEE REQUEST

"[A] court may award fees to attorneys who have created a common fund or conferred some other substantial benefit on a class of plaintiffs." *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *5 (S.D.N.Y. Sept. 29, 2003), *see also Trustees v. Greenough* 105 U.S. 527, 532-33 (1882) (establishing "common fund" doctrine), *Boeing Co. v. Van*

*Gemert*, 444 U.S. 472, 478 (1980). The guiding principle of attorneys' fee awards is that the fee must be reasonable.

In the class action context, attorneys' fees may be calculated using either the percentage-of-recovery method, which is favored when the fee is to be paid from common fund, or lodestar method, which is favored when there is no meaningful common fund or rights secured are otherwise difficult to calculate. *Perry v. FleetBoston Financial Corp.*, No. 04-0507, 2005 WL 1527694 (E.D.Pa. June 28, 2005). This case presents the latter example. Facts unique to each case are relevant to the amount of any award. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir. 2005) (It is within district court's discretion to determine the appropriate method for calculating attorney fees in light of unique characteristics of class actions in general, and of unique circumstances of actual cases before it.)

Plaintiffs' Counsel have advised the Court to apply the incorrect approach in evaluating the fee request.

### III.   PLAINTIFFS' COUNSEL HAVE APPLIED THE WRONG FEE APPROACH

Plaintiffs' Counsel assert this is a common fund settlement. This is only partially true. A common fund settlement confers either a cash fund or a substantial benefit upon the class. The reasoning of the fee application goes off the rails when Plaintiffs' Counsel compare their therapeutic benefit to the cash funds established in securities class action litigations. In the garden variety class action securities litigation, there is an actual pool of money paid by defendants in exchange for the compromise of claims. A portion or percentage of that fund is allocated to counsel for the class to compensate them for the work performed, the quality of the settlement and the risks of contingent litigation. This case does not provide a fund of money for the class and therefore the 15 securities litigation cases Plaintiffs' Counsel has cited in support of the fee application apply only tangentially.

3

Plaintiffs' Counsel seek to be paid under the percentage-of-recovery approach, assign a value of $146 million to the settlement benefits and request 15.4% of that amount, with an abridged lodestar cross-check validating their request. As the $146 million valuation is inherently academic, not based upon real claims and actual maintenance actions performed, this fee request is more suitable for review under the common benefit doctrine.

In *Brennan v. United Steelworkers of America AFL-CIO-CLC (Dist. 15) (Dist 31)*, in analyzing fees to be paid where counsel have created a common benefit, the Third Circuit held:

> [F]ederal courts have the inherent power to fashion such equitable relief, payable by those enjoying a common benefit. . . and have not hesitated to use this power where "overriding considerations indicate the need for such a recovery." The courts have been particularly sensitive to the need and desirability of the allowance of attorney's fees in cases where a plaintiff's prosecution of an action confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." (Internal citations omitted).

554 F.2d 586, 599-600 (3d Cir. 1977).

Under the common benefit doctrine, an award of attorneys' fees is appropriate where plaintiffs' counsel's successful litigation confers a substantial benefit on members of an ascertainable class. The amount of such an award is committed to the sound discretion of the court, which determines what is reasonable under the circumstances. *In re Cendant Corp.*, 264 F.3d 201, 255 (3d Cir. 2001) (*Cendant I*). Based upon my decades of experience as a litigator, this settlement most closely approximates either the common benefit doctrine or a coupon/voucher settlement, either of which would instruct the Court to apply a full lodestar analysis. While Plaintiffs' Counsel will argue that this is not a true coupon settlement because Class Members will (a) receive notification as a part of their settlement benefits, (b) receive the real benefit of the Revised Maintenance Schedule automatically, and (c) be reimbursed for maintenance performed on the sunroof and plenum drain

if they paid out of pocket for such services, a closer examination of the application and the benefit supports the coupon analogy. The percentage of the common-fund approach becomes unworkable when the recovery does not involve a quantifiable monetary settlement or damages award. Here, the benefit conferred is not hard dollars and cannot be specifically quantified.

The United States Court of Appeals for the Third Circuit, in *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 821 (3d Cir. 1995) ("*General Motors*"), explained the judicial loyalty to the lodestar method in this kind of case:

> The lodestar and the percentage of recovery methods each have distinct attributes suiting them to particular types of cases. Ordinarily, a court making or approving a fee award should determine what sort of action the court is adjudicating and then primarily rely on the corresponding method of awarding fees (though there is, as we have noted, an advantage to using the alternative method to double check the fee).
>
> \*   \*   \*
>
> Certainly, the court may select the lodestar method in some non-statutory fee cases where it can calculate the relevant parameters (hours expended and hourly rate) more easily than it can determine a suitable percentage to award.

*Id. See also Charles v. Goodyear Tire & Rubber Co.*, 976 F. Supp. 321, 325 (D.N.J. 1997) (applying the lodestar method after noting the difficulty in valuing a settlement that included equitable relief); *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 926 (E.D. Pa. 1993) (applying the lodestar method after finding that the benefit conferred upon the class plaintiffs was "unquantifiable").

Is this an unquantifiable case? The circumstances would make it appear so.[1] When a benefit requires an economist to value elements of the non-cash portion of a settlement that is almost <u>all</u>

---

[1] There can be no question that Professor Eads is an expert of great experience, relied upon in similar cases, such as the *O'Keefe v. Mercedes-Benz USA, L.L.C.*, 214 F.R.D. 266, 305 (E.D. Pa. 2003). and *General Motors* case, *id.* That is not the issue. I am not a Yale-trained economist and would no more substitute my valuation of the case than I would remove my own appendix. The point is that the valuation itself is inherently subjective and predictive and therefore insufficiently definite to apply the percentage-of-recovery approach.

5

non-cash, the settlement approaches unquantifiable. Furthermore, unless plaintiffs and their hired expert possess a crystal ball, it is nearly impossible to predict how many Class Members will avail themselves of the benefits of the settlement. Most likely 100% of the presumed Class will seek out those benefits. The common benefit doctrine, which requires a full-blown lodestar analysis, is the appropriate method to determine a reasonable attorneys' fee.

**IV.    As This Case Is More Analogous to a Common Benefit Settlement; Lodestar Is the Appropriate Standard**

Plaintiffs' Counsel have provided ample precedent for the percentage-of-recovery approach in their Fee Brief. What Plaintiffs' Counsel have not done is demonstrate that common fund theory applies in a settlement that provides only a nominal cash component. I object to the quantum leap from an expert valuating the settlement on the basis of future possible events and then treating that valuation as though it is an actual cash fund.

Here, the Class Action Pocket Guide is instructive:

> The Committee Note to Rule 23(h) gives the following guidance for determining fees based on the creation of a monetary fund for the common benefit of the class (a "common fund' the fundamental focus is the result actually achieved for class members"). In cases where the benefit to the class is nonmonetary, determining the final result requires looking behind the face value of nonmonetary or contingent benefits to determine their actual benefit to the class. In some cases, you might use expert valuations based on reliable objective standards. In other cases, perhaps a majority of them, the only reliable test of benefit to the class will be evidence of class members' use or redemption of coupons, warrants or other nonmonetary scrip. *See* MANUAL FOR COMPLEX LITIGATION § 21.71, *see also* Class Action Fairness Act, 28 U.S.C. §1712(a).

This case is more similar to a coupon settlement than to a cash settlement. As such, the Court must either carefully evaluate what the actual benefit to class members will be (an exercise in prediction at best) or rely on more firm information – the value of counsel's lodestar.

Does the fact that this Settlement provides largely non-cash relief render it a coupon

6

settlement? The term "coupon" could include any form of relief that requires class members to take affirmative action to receive the benefit.[2] This would include certificates that are directly redeemable for cash or that cover the full cost of a replacement item. This settlement typifies a coupon settlement, but here, the "virtual coupon" is for free routine maintenance that the class members must take affirmative action to avail themselves of.

> In the context of coupon or voucher settlements, some courts have opted for the lodestar method, finding that "where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value...of the common fund may be unreliable, rendering application of the percentage-of-recovery approach inappropriate."

MANUAL FOR COMPLEX LITIGATION 4th §14.121; *see, e.g., In re General Motors*, 55 F.3d at 821("Outside the pure statutory fee case, the lodestar rationale has appeal, where, as here, the nature of the settlement evades the precise evaluation needed for the percentage-of-recovery approach."); *Weinberger v. Great Western Nakoosa Corp.*, 925 F.2d 518, 526 n.10 (1st Cir. 1991) ("because the absence of any true common fund renders the percentage approach inapposite here, we cannot fault the district court's implied premise that the lodestar is the soundest available alternative.") *See also Goldberger v. Integrated Resources*, 209 F.3d 43, 50 (2d Cir. 2000) ("To be sure, there are cases where the district court can calculate the relevant parameters, (hours expended and hourly rate) more easily than it can determine a suitable percentage award.") The lodestar approach was the method that should have been used to justify counsel's fee request. Instead, Plaintiffs' Counsel provided an abridged lodestar that skipped an essential step - - justifying the excessive 3.68 multiplier.

---

[2] Many observers have criticized coupon or voucher settlements in recent years, arguing that they often provide little or no benefit to class members but reward class counsel with large fees. Indeed, the Class Action Fairness Act was enacted in 2005 to address this disparity among others. If the Court were to analyze the fee under CAFA standards, however, Plaintiffs' Counsel would either receive no cash fee or the Court would hold back any attorneys' fee awards that are linked with nonmonetary benefits until after the redemption period has ended.

## V.   Under the Lodestar Approach, the Fee Request is Excessive

Plaintiffs' Counsel have given a most cursory analysis to a portion of the lodestar analysis, *e.g.,* the appropriate multiplier. Plaintiffs' Counsel expended 11,345.94 hours and they assess a lodestar value to that time of approximately $6,111,783.49 for those services. The appropriate billing rate and the reasonableness of the hours expended have been documented by counsel and can be examined by the Court. The nature of my objection is in the choice of multiplier, 3.68.

In the *Cendant PRIDES* litigation, which was brought and settled by my former firm, Kirby McInerney, LLP, Third Circuit determined that in a mega-fund case such as this, the maximum lodestar multiplier in this circuit is 2.99. *See In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 742 (3d Cir. 2001) (finding lodestar multiplier of 1.35 to 2.99 common in mega-funds over $100 million). *See also Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 352-54 (S.D.N.Y. 2005) (reducing fee percentage from 20% to approximately 15.5% of $81.5 million settlement, and reducing multiplier from 2.04 to 1.5); *In re Twinlab Corp. Sec. Lit*., 187 F.Supp.2d 80, 87 (E.D.N.Y. 2002) (reducing fee from 33% to 12% of $26.5 million settlement, and reducing lodestar from 3.58 to approximately 1.29, stating, "post-*Goldberger* **courts ... have generally refused multipliers as high as 2.03**") (emphasis added).

Plaintiffs' Counsel either inform the Court that, on average, far higher multipliers are routinely applied (in securities cases) or warn the Court away from applying formulaic results, such as following Third Circuit guidelines for applying a reasonable fee. A 3.68 multiplier is excessive in this case, yielding as it does a $1,983.08 hourly rate for all of the hours devoted to this case. This seems unreasonable in light of both the indefiniteness of the much of the settlement value and the nature of the harm redressed. For the reasons addressed in the remainder of the brief, I would urge the Court to apply a lower multiplier. I defer to the Court's experience and expertise to determine

what the proper multiplier should be. It simply should be lower than 2.99, which itself would yield a generous attorneys' fee of $18,274,232.64 or below.

## VI.   Applying the Percentage of the Fund Approach, the Requested Fee is also Excessive

Even if the percentage-of-the-fund approach is acceptable as a cross-check, in cases such as this, where the benefit conferred is estimated to be above $100 million, the sliding scale descends and an appropriate percentage would be closer to 10% than the 15.4% sought.

The Third Circuit has adopted a declining sliding scale approach to mega-fund cases. Following the 1985 THIRD CIRCUIT TASK FORCE REPORT ON COURT AWARDED ATTORNEY FEES, 108 F.R.D. 237 (1986), the Third Circuit instructed, "ordinarily, the percentage of a recovery devoted to attorneys fees should decrease as the size of the overall settlement or recovery increases." *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. Civ.A. 03-4578, 2005 WL 1213926, *9 (E.D. Pa. May 19, 2005.) *(*quoting *Cendant I*, 264 F.3d at 284 n. 55; *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 736). Additionally, the Third Circuit reiterated the likelihood that the size of the common fund may require a smaller percentage fee award in mega-fund cases: "[O]ur jurisprudence confirms that it may be appropriate for percentage fees awarded in large recovery cases to be smaller in percentage terms than those with smaller recoveries." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302 (3d Cir. 2005). The Third Circuit previously had explained, "[t]he basis for this inverse relationship is the belief that '[i]n many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.'" *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 339 (3d Cir. 1998) ("*Prudential*") (quoting *In re First Fidelity Bancorporation Sec. Litig.,* 750 F.Supp. 160, 164 n. 1 (D.N.J.1990)).

In cases where a class is conferred a benefit of between $75-$200 million, courts routinely weigh the economies of scale inherent in class actions in fixing a percentage to yield a recovery of

reasonable fees. *See* A Conte & H. Newberg, NEWBERG ON CLASS ACTIONS, at § 2.09. Accordingly, fees in the range of 6-10 percent and even lower are common in mega-fund cases. *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478, 482 n.20 (S.D.N.Y. 1998) contains a string of recent percentages awarded in mega-fund cases.[3]

In this Circuit, the fee awards in "class actions with recoveries exceeding $100 million ranged from 4.1% to 17.92%." *In re Prudential*, 148 F.3d at 339. The Task Force Report explained: "absent ***unusual circumstances***, the percentage will decrease as the size of the fund increases." 108 F.R.D. at 256 (emphasis added). As Plaintiffs' Counsel have largely failed to illustrate any

---

[3] Following is a short list of representative cases extracted from that footnote:

• *In re Visa Check/ Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, at 123 (2d Cir. 2005) (attorneys' fees that constituted 6.5% of $3.383 billion in compensatory relief);

• *Shaw v. Toshiba Am. Info. Sys.*, Inc., 91 F.Supp.2d 942, 988 (E.D.Tex.2000) (approving a fee of 7% of a common fund valued at $2.1 billion);

• *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488-89 (S.D.N.Y. 1998) at 488-89 (approving a fee constituting 14% of a $1.027 billion common fund);

• *In re Washington Public Power Supply Sys. Sec. Litig.*, 779 F.Supp. 1063 (D.Ariz.1990) (awarding fee of 4.9 percent of $690 million common fund);

• *In re MGM Grand Hotel Fire Litig.*, 660 F.Supp. 522 (D.Nev.1987) (awarding 7 percent of $205 million recovery);

• *In re Corrugated Container Antitrust Litig.*, 1983-2 Trade Cas (CCH) ¶ 65,628 (S.D.Tex. September 1, 1983) (awarding fee of 9 percent of $366, million fund);

• *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245 (N.D.Ill.1979) (awarding fee of 6.6 percent of $200 million class settlement);

• *In re Cendant Corp. Litig.*, 243 F.Supp.2d 166, 172 (D.N.J.2003) (awarding only 1.7% of a $3.2 billion settlement); and

• *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D.Ga.1993) (awarding attorneys' fees of 5.25% of $305 million settlement).

extraordinary circumstances about the risks faced or the result achieved, this settlement presents the prototypical case to apply a declining percentage.

Given that the $146 million figure ascribed to the common benefit is highly subjective and cannot be predicted with any certainty, I believe that the percentage fee requested, 15.41% is too high.[4] Following both the *Gunter* factors and the *Prudential* analysis, Plaintiffs' Counsel assert that the percentage is in line with similar cases. However, I disagree (and object). The analysis, which shows only securities cases providing real cash (or cash equivalents, in the case of the Cendant PRIDES), simply fails.

Plaintiffs' Counsel argue that it is both inappropriate to apply the lodestar method and that the Court should not apply the declining percentage fee. Why? Because, they argue, that would involve applying a formulaic approach to assessing the fee. However, this settlement, in particular, can hew to the lower percentages and still avoid the formulaic result. Here, for example, it was not the case that Plaintiffs' Counsel held out for a higher settlement for the class. They agreed to the maintenance modifications and the notification process, then attempted to define the class widely. The settlement value derives mainly from the number of cars predicted to be involved, but the number that actually <u>will</u> be involved cannot be ascertained at any time in the near future. I have had my 2004 Passat for six years and I have only driven 22,000 miles. At this rate it could be another five years before I even know if my sunroof will leak. Similarly, my client, Troy Corey, had his car only three years and never faced any water ingress. Furthermore, while the recovery may be unique in the number of types of vehicles, it is not special. Plaintiffs' Counsel are seeking nearly $1 million a month for their labors spanning two and a half years, and the result simply does not appear to

---

[4] It should be noted in passing that when added to the $837,713.76 in out of pocket expenses plaintiffs' counsel also seek, the percentage fee rises to almost 16% (15.98%).

11

warrant such compensation.

## VII. The Awards in Similar Cases Do Not Support Plaintiffs' Counsel's Application

When providing the Court with information regarding awards in similar cases, the seventh *Gunter* factor, the Court must compare the actual award requested to other awards in comparable settlements. *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ.03-0085 FSH, 2005 WL 3008808, *13 (D.N.J. Nov. 9, 2005). Plaintiffs' Counsel have not provided a comprehensive survey of percentage-based class counsel fee awards in non-securities suits in this Circuit published since the *Gunter* decision. Instead, Plaintiffs' Counsel compares the fee request with securities class action cases, which are not directly comparable because they create hard dollar funds, a factor not present here. The fact that a paid economist was able to 'monetize' the settlement for the benefit of the Court's analysis does not elevate this to a cash settlement.

Because the recovery obtained is largely nonmonetary, the appropriate fee comparison would be other similar nonmonetary settlements. The most relevant comparable fee information this Court should receive from Plaintiffs' Counsel would be fees paid in cases that produced revisions to cars' scheduled maintenance programs (that is the settlements which most closely approximate the benefit bestowed here). The second most salient information would be the fees awarded in each of the nine cases Plaintiffs' Counsel favorably compares the result achieved to in the Fee Brief itself. *See*, Fee Brief, at pp. 31-32.

If it turns out that the average attorneys' fees awarded in such cases were above 15.4% and/or the courts there awarded lodestar multipliers of more than 3.6, then the fee request here is appropriate and I would withdraw my objection.

## VIII. Public Policy Considerations Argue Against a Super-Enhanced Fee

The Court should award attorneys' fee that are fair, reasonable and not excessive. In a time

when Toyota is recalling thousands of vehicles for the very real threat of unanticipated acceleration, when other vehicles threaten to tip over due to overly-high center of gravity issues and where Bridgestone/Firestone tires when under-inflated caused life-threatening accidents, class counsel in each of those actions performed a noble and protective service. This settlement does not present the same life-or-death scenario.

      At the risk of sounding glib, the true title of this class action should be "the leaky sunroof litigation;" a title which speaks volumes as to the end-result. In my six years of VW Passat ownership, I have received maintenance notifications for considerably more serious risks. For example, a car seat-warmer that potentially could catch fire and brake lights that failed. These are serious, potentially life-threatening, Volkswagen-specific issues deserving serious treatment and warranting an attorneys' fee award that reflects the real value of the corrected item.

      In attempting to obtain what, in my opinion, is a windfall for the service performed here there must be a connection between the more than 11,000 hours labored and a truly meaningful result. One that matters in the larger picture. Otherwise, we plaintiffs' attorneys are guilty of the same greed that brought the American economy to its knees over the past 21 months. Volkswagen has issues with leaks in its cars, but water damage to a seat cushion is not the same thing as avoiding fatal collisions. The disparity suggests overreaching and an additional drain on a productive member of the struggling auto industry.

13

## CONCLUSION

It is easy for an objector to sit on the sidelines and throw rocks at Plaintiffs' Counsel's work. It would be hypocritical for me to do so. For a person who has experienced water ingress damage, the harm is real and the benefit Plaintiffs' Counsel has created (advising owners of the problems, scheduling additional maintenance programs and reimbursing class members who paid out of pocket) is well-connected to the harm caused, or potentially caused. Accordingly, I believe that Plaintiffs' Counsel are entitled to a reasonable fee for the hours they have labored, the risks they have faced, and the benefit they have conferred upon the Class. For the potentially leaky sunroof (which may or may not occur after 40,000 miles driven), both the harm and the remedy simply do not elevate the result in this case to the highest end of the fee award spectrum. Accordingly, a lower percentage attorney fee award (or a lodestar multiplier that falls squarely with the average range of below 3.0) would more fairly compensate counsel for work undertaken and the result achieved. I leave the determination of what that appropriate fee ought to be to the sound discretion of the Court, where it has always resided.

Dated: June 15, 2010                              Respectfully submitted,

/s/ Pamela Kulsrud Corey
Pamela Kulsrud Corey, Esq.
28 Winterbottom Lane
Pound Ridge, NY 10576
Tel: (917) 853-4566

Objector *pro se* and counsel for Objector Troy Corey