UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **DEWEY, et al.,** | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case Nos.: |
| **VOLKSWAGEN AG, et al.,** | ) | |
| Defendants. | ) | **07-CV-2249-FSH-PS** |
| | ) | **07-CV-2361-FSH-PS** |
| **DELGUERCIO, et al.,** | ) | (consolidated) |
| Plaintiffs, | ) | |
| v. | ) | |
| **VOLKSWAGEN GROUP OF** | ) | |
| **AMERICA, INC., et al.,** | ) | |
| Defendants. | ) | |

## OBJECTION TO REQUEST FOR ATTORNEY'S FEES

Class members David T. Murray, 25 Lawrence Street, Woburn, MA 01801[1], Jennifer B. Murray, 25 Lawrence Street, Woburn, MA 01801[2], and James E. Pentz, 8912 Little Raven Trail, Longmont, CO 80503[3], hereby object to Class Counsel's Petition for Fees and Expenses, and the notice thereof made to the class.

The Notice of Proposed Settlement states that Class Counsel will ask the Court "for up to $30 million for attorneys' fees," but fails to state the basis of that fee request. Notice at p. 6. Class members are told that they have the right to object to Class Counsel's fee request, but are given no additional information that would make that right meaningful. Most important to the Class members would be the amount of Class Counsel's lodestar in this three-year-old case (which was settled in principle after a little more than two years), which should constitute the presumptively reasonable fee, unless

---

[1] Mr. Murray is the current owner of a 2004 Volkswagen Touareg, VIN# WVGBC67L24D013054. A copy of his current registration is attached hereto as *Exhibit A*.
[2] Ms. Murray is the owner of a 2003 Volkswagen Passat, VIN# WVWRH63B63P285055. A copy of her notice cover letter is attached hereto as *Exhibit B*.
[3] Mr. Pentz is the current owner of a 2007 Audi S8, VIN# WAUPN44E37N007077. A copy of the cover letter enclosing his Notice is attached hereto as *Exhibit C*.

this settlement is deemed "rare" or "exceptional."  *See Perdue v. Kenny A.*, 2010 U.S. LEXIS 3481 (April 21, 2010).

> Fed. R. Civ. P. 23(h) provides:
>
> (1) *Motion for Award of Attorney Fees*.  A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court.  Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) *Objections to Motion*.  A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) *Hearing and Findings*.  The court hay hold a hearing and must find the facts and state its conclusions of law on the motion under Rule 52(a).

This rule requires reasonable service of "*the motion*" on all class members.  For the Class Notice to serve as reasonable notice of class counsel's fee motion, it must disclose, at a minimum, the maximum amount of fees that Class Counsel will request, and the basis for the request.  Where, as here, the Notice failed to disclose the basis of Class Counsel's fee request, or the date by which Class Counsel would file their Application for Attorney's Fees, nor did Class Counsel include a link to their Fee Application on the settlement website, Rule 23(h) has not been satisfied, and this Court is without power to make any fee award until such time as the Class has been served with reasonable notice of Class Counsel's actual Fee Application.

The Application for Fees and Expenses asks for an attorney's fee that is almost entirely based on an arbitrary percentage of an unreliable and inflated projection of the value of recommendations that Class members inspect and clean their sunroof drain systems every 40,000 miles, and proposed service actions for select vehicles.  The $8 million Reimbursement Fund is the only concrete monetary benefit of the Proposed

Settlement. Objectors contend that the recommendations and service actions required by the Settlement do not easily convert to any monetary value.

Indeed, the only way to "value" the recommendations is to project the amount of damage to vehicle interiors that will be prevented by the Revised Maintenance Schedule and service actions. However, in a Proposed Settlement that covers 12 years of VW and Audi vehicles, the Reimbursement Fund is only $8 million. If the amount of damage caused by faulty sunroofs over the past 12 years is estimated to be only $8 million[4], then the Revised Maintenance Schedule and proposed service actions cannot be worth more than $8 million over the next 12 years.

How can the proposed service actions and the educational preventative maintenance information have the value that Dr. Eads ascribes to them, when the absence of those very items over the past 12 years caused just $8 million or less in damages to class members' vehicles? If, on the other hand, Dr. Eads is correct, then the Reimbursement Fund is grossly underfunded, and the settlement should be rejected for that reason. There is a fundamental disconnect between the amount of the Reimbursement Fund for past damages and the value placed upon the future injunctive relief by Class Counsel.

The only possible explanation for such a disparity is an expectation that Volkswagen's manufacturing quality will *get worse* over the next 12 years, and that therefore the inspections and service actions will prevent more than ten times as much damage as was caused to vehicles over the past 12 years. But that is simply contrary to reality and common sense. Instead, it is far more likely that Volkswagen, in response to

---

[4] Indeed, the amount of past damages is estimated to be even less than this, since the Settlement provides for Defendants to draw on these funds over the next five years to satisfy future claims.

3

this lawsuit as well as consumer complaints, has taken steps to address whatever problems may have existed in its vehicles' sunroof drainage systems, with the result that such problems are virtually non-existent in new vehicles. This means that the proposed service actions and educational information will have very little value going forward, and will certainly be worth *less than* $8 million, the parties' estimate of vehicle damage caused during the period when Volkswagen *did* have an alleged problem with its sunroof drains.

The use of the lodestar method is mandatory in this non-monetary settlement.[5] The lodestar should not be enhanced by any multiplier, or by a very modest one, based upon recent Supreme Court caselaw, since this is hardly a rare or extraordinary result. To the contrary, the settlement provides little more than what class members were already entitled to under the law and their warranties.

As Class Counsel concede in their Application, this settlement creates no "pot of money," and any attempts to value a settlement that is mostly injunctive are inherently unreliable. Why would the Court even try to engage in such a speculative valuation process, when the law is clear that the Court has discretion to use the lodestar method, which the Supreme Court has recently held is the presumptively reasonable fee for all but the most rare and exceptional cases? *See Perdue v. Kenny A.*, 2010 U.S. LEXIS 3481 (April 21, 2010).

While *Kenny A.* was decided in the context of a statutory fee-shifting case, at least one court has already applied it in a claims-made, so-called "constructive common fund" class action to award a fee of 1.2 times class counsel's lodestar. *Van Horn v. Nationwide*

---

[5] Again, with the exception of the $8 million Reimbursement Fund, which would support a common fund fee of $2.6 million.

4

(ND OH)(April 30, 2010)(attached hereto as *Exhibit D*).  This Court should follow the lead of Judge Gwin in *Van Horn* and award Class Counsel no more than their lodestar multiplied by a modest enhancement in the ballpark of the one approved in *Van Horn*, and in no event greater than 1.5.[6]  To award anything more would require this Court to make specific findings that Class Counsel has met the extremely high threshold for a "rare" or "exceptional" result, something that Class Counsel do not even pretend to argue in their Application.[7]

In this case, the state law relevant to a determination of attorney's fees is New Jersey's, based upon the Settlement Agreement's choice of law clause.  New Jersey state law limits maximum attorney's fees in actions brought pursuant to statutes that contain a fee-shifting provision, regardless of whether those actions result in a common fund.  *See Rendine v. Pantzer*, 661 A.2d 1202, 1231 (N.J. 1995).[8]

> We also discern from our review of the extensive litigation concerning contingency enhancements that fee awards of double the lodestar represent the high end of attorney fee awards under fee-shifting statutes:
>
> > Before the Supreme Court began to address contingent mutlipliers, the size of contingency enhancements varies both according to the

---

[6] An overall multiplier of 1.5 would result in an effective multiplier for pre-settlement time of 3 or more, since so much of Class Counsel's lodestar was generated during "confirmatory discovery," when the risk of non-payment was low or non-existent, and Class Counsel had every incentive to bill as much time as possible in order to justify a higher fee, especially when it knew that the Defendants would oppose their fee, and would also argue that the fee should be based upon lodestar.

[7] Class Counsel's argument that federal law applies to their fee petition simply because the parties cited to FRCP 23(e) when moving for settlement approval is absurd.  Any case pending in federal court is governed by the Federal Rules of Civil Procedure.  The entitlement to attorney's fees, in contrast, is governed by substantive state law in a diversity case. *Security Mutual Life Ins. Co. v. Contemporary Real Estate Assocs.*, 979 F.2d 329, 331-32 (3d Cir. 1992).  *Accord*, *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *Northern Heel Corp. v. Compo Indus.*, 851 F.2d 456, 475 (1st Cir. 1988); *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992).  Furthermore, it is Class Counsel, not the Defendants, who are failing to abide by FRCP 23(h), by not providing reasonable notice of their Fee Application to the class.  *That* is what Rule 23(h) addresses.  Nowhere does Rule 23(h) specify how fees are to be calculated.  That is supplied by state substantive law in cases that do not arise under a federal statute.

[8] This is a case brought pursuant to a fee-shifting statute, New Jersey's Consumer Fraud Act, and therefore the guidelines set forth in *Rendine* clearly apply here.

>type of litigation and the degree of risk involved in the individual lawsuit.  Although the lower courts' tendency to fail to spell out precisely how much of a fee enhancement was due to contingency and how much to other factors makes any breakdown inherently imprecise, a total multiplier of 2, representing all enhancing factors, appears typically to have been applied as a ceiling in public interest litigation….
>
>…
>
>We conclude that contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar.  Such enhancements should never exceed one-hundred percent of the lodestar, and an enhancement of that size will be appropriate only in the rare and exceptional case in which the risk of nonpayment has not been mitigated at all, i.e., where the "legal" risk constitutes "an economic disincentive independent of that created by the basic contingency in payment… and the result achieved… is significant and of broad public interest."

*Id.* at 1230-31.

Two years ago, the New Jersey Supreme Court affirmed the continuing application of *Rendine* to common fund class action settlements.  *See The Education Day Care Center Inc. v. Yellow Book USA, Inc.*, 194 N.J. 271, 944 A.2d 31 (2008).[9]

---

[9] A copy of this unpublished case is attached hereto as *Exhibit E*.

6

Objectors hereby adopt all objections not inconsistent with those set forth herein that are made by Defendants in their opposition to Class Counsel's Fee Application, which is due to be filed by June 29, 2010.

## CONCLUSION

Wherefore, Objectors pray that this Court calculate Class Counsel's attorney's fee award based upon their reasonable lodestar, and that it grant Class Counsel no more than 1.5 times their reasonable lodestar, or $9.1 million.

>Respectfully submitted,
>David T. Murray, Jennifer B. Murray,
>and James E. Pentz,
>By their attorneys,
>
>
>*/s/ Vincent S. Verdiramo*_____
>VINCENT S. VERDIRAMO
>VERDIRAMO & VERDIRAMO ESQS, PA
>3163 Kennedy Blvd.
>Jersey City NJ 07306
>(201) 798-7082
>(201) 798-4627
>mmf036@aol.com
>
>John J. Pentz,
>2 Clock Tower Place, Suite 440
>Maynard, MA  01754
>Phone: (978) 461-1548
>Fax: (978) 405-5161
>Clasaxn@earthlink.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system on June 15, 2010, and that as a result electronic notice of the filing was served upon all attorneys of record.

>*/s/ Vincent S. Verdiramo*
>Vincent S. Verdiramo

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 15, 2010 I mailed the foregoing objection by first class U.S. Mail to the following addresses:

Water Ingress Administrator
PO Box 2298
Faribault, MN  55021-2433

                                          */s/ John J. Pentz*
                                          John J. Pentz