## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------X

JOHN M. DEWEY, et al.,

                                          Plaintiffs,

     -vs.-

VOLKSWAGEN AG, et al.,

                                          Defendants.

-------------------------------------------------------X

JACQUELINE DELGUERCIO, et al.

                                          Plaintiffs,

     -vs.-

VOLKSWAGEN GROUP OF AMERICA, INC.,
et. al.

                                          Defendants.

-------------------------------------------------------X

Case Nos.: 07-CV-2249-FSH-PS
07-CV-2361-FSH-PS
**(Consolidated)**

---

## DEFENDANTS' OPPOSITION BRIEF TO PLAINTIFFS' COUNSELS' ATTORNEY FEE APPLICATION

---

CHASE KURSHAN HERZFELD & RUBIN LLC
354 Eisenhower Parkway, Suite 1100
Livingston, New Jersey 07039-1022
(973) 535-8844
Attorneys for Defendants

and

HERZFELD & RUBIN, P.C.
125 Broad Street, 12th Floor
New York, New York 10004
(212) 471-8500
Attorneys for Defendants

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ......................................................................................... iv

PRELIMINARY STATEMENT ................................................................................... I

ARGUMENT................................................................................................................4

POINT I ......................................................................................................................4

THE SETTLEMENT AGREEMENT, THE ERIE DOCTRINE AND
ESTABLISHED CHOICE OF LAW PRINCIPLES ALL PROVIDE THAT
'THE SUBSTANTIVE LAW OF THE STATE OF NEW JERSEY' APPLIES
TO THE ENTIRE SETTLEMENT AGREEMENT AND THUS
DETERMINES TO THE ENTIRE SETTLEMENT AGREEMENT AND
THUS DETERMINES THE AMOUNT OF REASONABLE ATTORNEY
FEES ......................................................................................................................4

POINT II ......................................................................................................................6

THIS IS NOT A 'COMMON FUND' CASE. NO ATTORNEY FEES ARE
BEING PAID FROM A 'FUND' .............................................................................6

POINT III.....................................................................................................................9

THE LODESTAR METHOD IS THE REQUIRED METHOD FOR
DETERMINING A REASONABLE ATTORNEY FEE AWARD UNDER
THE APPLICABLE NEW JERSEY LAW – THE CONSUMER FRAUD
ACT........................................................................................................................9

POINT IV.....................................................................................................................13

FOR LODESTAR PURPOSES, THE CONTEMPORANEOUSLY BILLED
RATES OF DELGUERCIO COUNSEL SWORN TO IN THIS COURT
YIELD A BASE LODESTAR FEE OF FROM $3.3 to $3.5 MILLION. THE
LESSENED LITIGATION RISKS RESULTING FROM THE P9, P9
EXPANDED AND JU SERVICE ACTIONS, COUPLED WITH THE
ATTEMPT TO OBSCURE COUNSEL'S CURRENT RATES FROM THE
COURT ON THIS APPLICATION COUNSELS AGAINST A
MULTIPLIER OR ENHANCEMENT.....................................................................I3

POINT V.......................................................................................................................22

NO FEE ENHANCEMENT IS APPROPRIATE IN THIS CASE .............................22

POINT VI.........................................................................................................................24

    PLAINTIFFS' COUNSEL HAVE TENDERED NO EVIDENCE OF THEIR
    CLAIMED EXPENSES, WHICH MUST THEREFORE BE DENIED ON
    THE PRESENT RECORD .......................................................................................24

POINT VII ......................................................................................................................25

    PLAINTIFFS' VALUATION OF THE SETTLEMENT IS OVERSTATED
    BY OVER $90 MILLION.   VALUED ACCORDING TO SOUND
    ECONOMICS AND THE GOVERNING LAW, A 'PERCENTAGE OF THE
    FUND' CALCULATION YEILDS A CROSSCHECK AMOUNT WHICH
    CONFIRMS THE REASONABLENESS OF THE LODESTAR AWARD
    REQUIRED IN THIS CASE. ....................................................................................25

CONCLUSION.................................................................................................................29

## **TABLE OF AUTHORITIES**

Page

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*
    493 F.3d 110 (2d Cir. 2007)................................................................................... 15

*Beye v. Horizon Blue Cross Blue Shield of New Jersey,*
    06-5337-FSH-PS (DKT. 268-7).................................................. 2, 3, 17, 18, 19, 20, 22

*Blum v. Stenson,*
    465 U.S. 886 (1984).................................................................................. 13, 16, 17

*Careccio v. BMW of N. Am. LLC,*
    2010 U.S. Dist. LEXIS 42063 (D.N.J. 2010)
    (docketed sub nom. *Chandran et al v. BMW of North America, LLC* et al.)......... 2, 21

*Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.,*
    2006 U.S. Dist. LEXIS 62966 (D.N.J. 2006) ........................................................... 12

*Chin v. Chrysler LLC,*
    538 F.3d 272 (3d. Cir. 2008)................................................................................... 5

*Coulter v Tennessee,*
    805 F.2d 146 (6th Cir. 1986) ................................................................................ 15

*Daggett v. Kimmelman,*
    811 F.2d 793 (3d Cir. 1987)............................................................................ 15, 16

*Delaware Valley II,*
    483 U.S. at 747....................................................................................................... 22

*EEOC v. UPS,*
    2009 U.S. Dist. LEXIS 91241 (D.N.J. 2009) ........................................................ 20

*Ellis v. Ethicon, Inc.,*
    2010 U.S. Dist. LEXIS 18455 (D.N.J. 2010) ............................................. 12, 21, 22

*Erie R.R. v. Tomkins,*
    304 U.S. 64, 585 Ct. 817, 82 L.Ed. 1188 (1938) .................................................... 5

*Fibermark N. Am., Inc. v. Jackson,*
    2008 U.S. Dist. LEXIS 50049, 8-9 (D.N.J. June 30, 2008)..................................... 12

*Glass v. Snellbaker,*
    2008 U.S. Dist. LEXIS 73012 (D.N.J. Sept. 23, 2008) ........................................... 15

*Grant v. Omni Health Care Sys. of N.J., Inc.,*
    2010 U.S. Dist. LEXIS 43286 (D.N.J. 2010) ............................................................ 20

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) .................................................................................... 3, 10, 13

*Hernandez v. Kalinowski,* 146 F.3d 196 (3d Cir. 1998) .................................................. 12

*In re AremisSoft Corp. Sec. Litig.,*
    210 F.R.D. 109 (D.N.J. 2002) .................................................................................... 6

*In Re Cendant,*
    243 F.3d 722 (3d Cir. 2001) .................................................................................. 8, 13

*In Re Diet Drugs,* 582 F.3d 524 (3d Cir. 2009) ............................................................... 8

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ..................................................................................... 11, 12

In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 313-15 (3d Cir. 2008) .............. 26

*In re Rite Aid Corp. Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005) ........................................................................................ 8

*In Re Schering-Plough/Merck Merger Litigation* ............................................................... 9

*In re Zenith Rear Projection Television,*
    |2009 U.S. Dist. LEXIS 13568 (D.N.J. 2009) ............................................................... 8

*Interfaith Community Organization v. Honeywell International,*
    426 F.3d 694 (3d Cir. 2005) .......................................................................... 12, 17, 24

*J & J Snack Foods, Corp. v. Earthgrains Co.,* No. 00-6230,
    2003 U.S. Dist. LEXIS 8040, 2003 WL 21051711 (D.N.J. 2003) ............................ 13

*Judy Larson v. AT&T* .......................................................................................................... 9

*L.J. v. Audubon Bd. of Educ.,*
    2010 U.S. App. LEXIS 7350 (3d. Cir. 2010) ............................................................ 20

*Lindy Brothers Builders v. American Radiator & Standard Sanitary Corp.,*
    487 F.2d 161 (3d Cir. 1973) ....................................................................................... 11

*M.G. v. E. Reg'l High Sch. Dist.,*
    2009 U.S. Dist. LEXIS 98631 (D.N.J. Oct. 29, 2009) ................................................ 20

*Muller-Moreno v. Malouf,* 2009 N.J. Super. Unpub. LEXIS 1191 (Sup. Ct. 2009) ........ 10

*Norman v. Housing Authority of Montgomery,*
    836 F.2d 1292 (11th Cir. 1988) ................................................................. 16

*O'Keefe v. Mercedes-Benz United States,* LLC,
    214 F.R.D. 266 (E.D. Pa. 2003)......................................................... 27, 28

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air Act,* 478 U.S.
    546, 106 S. Ct. 3088, 92 L. Ed.2d 439 (1986)............................................. 15

*Perdue v. Kenny,*
    2010 U.S. LEXIS  (U.S. Sup. Ct. April 21, 2010)................................. 9, 10

*Reiter v. Metro. Transp. Auth. of N.Y.,*
    2007 U.S. Dist. LEXIS 71008 15 (S.D.N.Y. Sept. 25, 2007)............................... 16, 22

*Rendine v. Pantzer,*
    141 N.J. 292, 661 A.2d 1202 (1995)........................................................ 4, 10, 22, 23

*Slover v. Live Universe, Inc.,*
    2009 U.S. Dist. LEXIS 29072 (D.N.J. 2009) ............................................. 20

*Stair v. Thomas & Cook,*
    2009 U.S. Dist. LEXIS 48706 (D.N.J. June 10, 2009)................................. 20

*Student Public Interest Research Group, Inc. v. AT & T Bell Laboratories,*
    842 F.2d 1436 (3d Cir. 1988)......................................................... 12, 17

*Sutter v. Horizon Blue Cross Blue Shield of New Jersey,*
    406 N.J. Super. 86, 966 A.2d 508 (App. Div. 2009) ............................................. 10, 11

*Tenafly Eruv Ass'n v. Borough of Tenafly,* 195 Fed. Appx. 93 (3d Cir. 2006)................. 17

*Wachtel v. Health Net, Inc.,*
    2007 U.S. Dist. LEXIS 44225, 10-12 (D.N.J. 2007) .................................... 12

*Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031 (3d
    Cir. 1996) ................................................................................. 17

*Weber v. GEICO,*
    262 F.R.D. 431, 449  (D.N.J. 2009)........................................................ 1, 7, 12, 13

**Statutes**

28 U.S.C. § 2072(b)  (Rules Enabling Act) ........................................................................ 6

New Jersey Consumer Fraud Act (CFA) .............................................. 1, 2, 5, 8, 10, 12, 13

UCC ................................................................................................................................... 5

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................................... 5, 6, 9

**Other Authorities**

2010 Federal Civil Rules Handbook, West Publishing, Fed. Riv. Pro 23(h) at 1569 ......... 6

Fed.R.Civ.P., 2003 Amendment, Rule 23(h), Advisory Committee Notes ........................ 6

Third Circuit Advisory Committee Report 1984 ............................................................... 7

## PRELIMINARY STATEMENT

Class Counsel's fee application is, in major respects, an argument in desperate search for support. But, on every critical point, there is none. First, the claim that fees in this diversity case are governed by federal law is contradicted by the Settlement Agreement itself, sec. 18.17 of which explicitly provides that New Jersey Law applies. Conversely, Fed.R.Civ.P. 23(h), the "federal law" upon which Counsel pin their hopes, is not and, under the Rules Enabling Act, cannot be a source of applicable substantive law.

In fact, all causes of action alleged in the Fourth Amended Complaint are governed by the "American Rule," with the sole exception of the Consumer Fraud Act ("CFA"), which shifts fees to defendants. Applicable New Jersey decisional law at the highest levels declares the fee in a CFA claim to be based on a lodestar evaluation. This fair and reasonable method of ascertaining attorneys' fees fulfills express public policies. Indeed, the United States Supreme Court, two months ago, commended and endorsed the lodestar approach for a number of reasons, all of which are fully applicable in this case.

Plaintiffs argue mightily that a "percentage of recovery" method should be used here based on a "common fund" valued at $146 million. They are dead wrong on both counts. In their own words, "Counsel's fee is completely separate and apart from any benefits being provided to the class and will be paid directly by the defendants. Thus, the Class will receive the same benefits regardless of the amount of the fee that Counsel is awarded." (Plaintiffs' Brief in Support of Motion for Final Approval of Settlement and Settlement Class, Dkt. No. 213-3, June 17, 2010 ("Fairness Br.") at 29.) Thus the Settlement Agreement, as Class Counsel themselves read it, is the polar opposition of a "common fund that would be depleted depending upon the size of the fee award." *Weber*

*v. GEICO*, 262 F.R.D. 431, 449 (D.N.J. 2009).  Nor is plaintiffs' valuation correct.  As

defendant's economic expert Prof. Ordover shows, when stripped of impermissible

double counts, the real valuation, while entirely generous and reasonable, is $95 million

less than what plaintiffs claim.  Plaintiffs' proffered valuation is neither sound economics

nor good law.

Under the New Jersey CFA, which mandates the use of a "lodestar" analysis, a

reasonable attorney fee is somewhat less than $3.5 million, accepting plaintiffs' proffered

total of  11,345 hours reasonably expended on the litigation.  This calculation is based on

*Delguercio* plaintiffs' counsel own booked hourly rates as sworn to in an application to

this Court currently pending in *Beye v. Horizon Blue Cross Blue Shield of New Jersey,*

06-5337-FSH-PS (DKT. 268-7).  The *Beye* rate structure is consistent with rates of the

*Dewey* plaintiffs' local counsel, a prominent Newark firm whose charges in this case

have been "assumed" by New York counsel, and in this fashion  conveniently omitted

from plaintiffs' petition.

Based entirely on their inflated settlement valuation, Counsel demand a startling

fee of $22.5 million.  As they admit under the rubric of a lodestar "crosscheck," this

amounts to an hourly rate of just below $2,000 - across the board.  Nothing in the record,

the governing law or the policies which that law must serve supports such a result.  In

fact, counsel in this district every bit as qualified and competent as Class Counsel

undertake, prosecute and settle similar class litigation against major automobile

manufacturers at a fraction of the nearly $2000/hour "blended rate" being pursued in this

case.  *Careccio v. BMW of N. Am. LLC*, 2010 U.S. Dist. LEXIS 42063 (D.N.J. Apr. 29,

2010), 2:08-cv-02619-KSH -PS (docketed sub nom. *Chandran et al v. BMW of North*

*America, LLC* et al.)  Plainly, no deserving case will lack representation in this district if Plaintiffs' Counsel fall short of the payout on which they have set their sights.

Nothing in the petition is more startling than the sudden change in *Delguercio* counsel's rates just prior to this fee application based on a purported "survey" of what other firms' senior attorneys may charge.  Such artifice should not escape the Court's attention.  "Current rates" do not equate with what the attorney declares is "new" for the purpose of requesting a fee.  The Court will note that the "new" firm rates used for Counsel's lodestar calculations for some attorneys are nearly double those pending before this Court in *Beye*.  Endorsing such tactics would send the wrong message to bench and bar, not to mention being entirely inconsistent with the aim of the New Jersey Supreme Court to keep lodestar limits reasonable and fair.

Any modest multiplier which might otherwise apply in this case should be withheld.  This is due first to the early removal of substantial litigation risk through service campaigns ("P9" and "JU") covering a major segment of the settlement class. Second, the carefully choreographed inflation of counsel's own rates solely for purposes of the instant petition does not reflect appropriate conduct by officers of the Court acting on their own behalf and should be discouraged lest it be repeated.  The tactics employed to avoid confronting counsel's own virtually current rates on file with the Court likewise hardly merits reward or incentives.  Most broadly, the bloated fee application, as well as the tactics employed in support of it, have virtually guaranteed the very result which the United States and New Jersey Supreme Courts have warned against – "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461

U.S. 424, 437 (1983); *accord, Rendine v. Pantzer*, 141 N.J. 292, 317, 661 A.2d 1202, 1217 (1995) (adopting lodestar rule to discourage "collateral litigation").

     Plaintiffs' Brief requests approval of over $835,000 in expenses but has offered little detail and absolutely no competent proof. Expert fees over $360,000 are claimed but most such experts were never identified. Supporting documentation of and details as to what they each have charged and for what has not been forthcoming. Absent proof, these claims must be disallowed.

**ARGUMENT**

**POINT I**

**THE SETTLEMENT AGREEMENT, THE ERIE DOCTRINE AND<br>ESTABLISHED CHOICE OF LAW PRINCIPLES ALL PROVIDE THAT<br>"THE SUBSTANTIVE LAW OF THE STATE OF NEW JERSEY" APPLIES<br>TO THE ENTIRE SETTLEMENT AGREEMENT AND THUS DETERMINES<br>THE AMOUNT OF REASONABLE ATTORNEY FEES**

     The Agreement of Settlement in this case expressly provides that it is to be "construed and enforced in accordance with, and governed by, the substantive laws of the State of New Jersey." (Agreement of Settlement, ¶ 18.17. Certification of Adam Slater, Exh. 5) Plaintiffs' Counsel admit that "the proposed settlement is to be *entirely* governed by the law of New Jersey. ..." (emphasis added). (Br. In Support, at 9 citing the Joint Application for Preliminary Approval Brief at p. 14, Slater Cert., Exh. 6.) There is no support in the Agreement, or the governing law, for counsel's attempt to exempt the

"reasonable attorney fees" from the New Jersey law by which they admit the Settlement

Agreement is to be "entirely governed."[1]

Even without the Settlement Agreement's express choice of law provision, New

Jersey law would apply, either as substantive law under *Erie R.R. v. Tomkins,* 304 U.S.

64, 585 Ct. 817, 82 L.Ed. 1188 (1938), or as forum state procedural law under applicable

New Jersey choice of law principles. *Chin v. Chrysler LLC,* 538 F.3d 272, 279 (3d. Cir.

2008) (". . . for *Erie* purposes, a party's asserted right to attorneys' fees is a matter of

substantive state law.")

In fact, except for the New Jersey CFA and similar state statutes pleaded in the

Sixth Count of the Fourth Amended Complaint (Slater Cert., Exh. 3, Dkt. No. 63), there

is no right to attorney fees under any of the common law and UCC legal theories invoked

in the 4th Amended Complaint. (See Slater Cert., Exh. "4.")

Nevertheless, Plaintiffs' counsel contend that Rule 23(h), Fed.R.Civ.P., is the

applicable fee generating law, and denounce defendants at length for ostensibly denying

that the Rule applies in this case. This misstates Defendants' position and fundamentally

misreads the Rule itself. There is no dispute that the Federal Rules of Civil Procedure,

including but not limited to Rule 23(h), apply in this federal court. However, just as

---

[1] Counsel's attempt to construe this language against Defendants is inadmissible.
Paragraph 18.16 of the Agreement of Settlement expressly forecloses this avenue of
argument:

> None of the Settling Parties, or their respective Counsel,
> will be deemed the drafter of this Settlement Agreement or
> its Exhibits for purposes of construing the provisions
> thereof. The language in all parts of this Settlement
> Agreement and its Exhibits will be interpreted according to
> its fair meaning, and will not be interpreted for or against
> any of the Settling Parties as the drafter thereof.

In any event, the language at issue is unambiguous.

clearly, Rule 23(h) cannot determine either the existence or amount of an attorney fee award. The Advisory Committee Notes to the 2003 Amendment promulgating Rule 23 (h) drive this point home in the clearest possible terms.

> This subdivision does not undertake to create new grounds for an award of attorney fees . . . Instead it applies when such awards are authorized by law or by agreement of the parties.

Advisory Committee Notes, Rule 23(h), Fed.R.Civ.P., 2003 Amendment, as reprinted in 2010 Federal Civil Rules Handbook, West Publishing, Fed. Riv. Pro 23(h) at 1569. Plaintiffs' reading of Rule 23(h), moreover, would violate the Rules Enabling Act. 28 U.S.C. § 2072(b), which provides that no Federal Rule of Civil Procedure "shall abridge, enlarge or modify the substantive rights of any litigant."

In this matter, there is no agreement concerning the amount of attorney fees to be paid or the method of computation. To the contrary, while it was agreed defendants would pay fees awarded, no other terms were agreed upon.

## POINT II

### THIS IS NOT A "COMMON FUND" CASE.  NO ATTORNEY FEES ARE BEING PAID FROM A "FUND"

"The percentage-of-recovery method is used in common fund cases on the theory that class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." *In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 128 (D.N.J. 2002*).* Here the Settlement Agreement expressly provides that there is no "common fund" from which fees may be drawn. Indeed, the settlement expressly prohibits the payment of any attorney fees from the only true fund in the case,

the $8 million Reimbursement Fund, which is devoted entirely to the use and benefit of

members of the Settlement Class:

> 1.24 "***Reimbursement Fund***" **. . . *shall be applied*** solely and exclusively to the payment of valid claims by Settlement Class Members. . . and ***for no other purpose, including but not limited to the payment of Class Counsel Fees and Expenses***
>
> ***
>
> 7.1 . . . . ***No portion of the Reimbursement Fund shall be used to pay*** costs or expenses of settlement administration, or ***attorneys' fees and costs*** . . .(emphasis added)
>
> ***
>
> 15.2. ***Class Counsel Fees and Expenses*** shall be paid entirely and exclusively by Defendants and ***shall not*** diminish, invade or reduce, or ***be derived or drawn from, the Reimbursement Fund***. (Emphasis added)

Plaintiffs themselves understand the import of these provisions:

> Counsel's fee is completely separate and apart from any benefits being provided to the class and will be paid directly by the defendants. Thus, the Class will receive the same benefits regardless of the amount of the fee that Counsel is awarded.

Fairness Br. at 29.

The Agreement of Settlement thus totally precludes the existence in this case of

"a common fund that would be depleted depending upon the size of the fee award."

*Weber v. GEICO*, 262 F.R.D. at 449. The common fund doctrine, as defined by the Third

Circuit Advisory Committee Report 1984, cannot apply on the facts of this case:

> "A key element of the fund case is that the fees are not assessed against the unsuccessful litigant (fee shifting) but rather are taken from the fund or damage recovery (fee spreading), thereby avoiding the unjust enrichment of those who otherwise would be benefited by the fund without sharing in the expenses incurred by the successful litigant."

By eliminating, any "common fund" from which to draw attorney fees in this case, the quoted provisions of the Settlement Agreement completely distinguish this case from the cases which Plaintiffs' counsel mistakenly cite. *In Re Cendant*, 243 F.3d 722 (3d Cir. 2001) involved an actual fund from which lead counsel was awarded 8.275% pursuant to a fee "auction" conducted at the outset of litigation. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) involved a similar percentage of a common fund recovery under the same federal statute. *In Re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009), is even farther removed from the facts in this case. The *Diet Drugs* settlement involved multiple actual funds specifically devoted to attorney fees. As the Third Circuit noted ". . . [T]here is no such  statute [fee shifting] at work here. "Defendant" voluntarily undertook the process of compensating opposing counsel, ***by establishing and funding various escrow accounts dedicated to the payment of claimant's legal costs.***" *Id.* at 540. (emphasis added)[2]  With no interest in the fund once it had been established, the defendant was not even a party to the appeal, which solely concerned "the allocation of fees among various attorneys who represented plaintiffs' interests." *Id. In re Zenith Rear Projection Television*, 2009 U.S. Dist. LEXIS 13568 (D.N.J. 2009), involved a settlement of a consumer class action governed entirely by state substantive law, including the New Jersey CFA, with both lodestar and percentage cross checks applied to test an unopposed petition under a "clear sailing" fee agreement.

Contrary to plaintiff's counsel's assertions, there is no authority for the notion that Defendants' agreement to pay fees was intended to define or prescribe the method by

---

[2]  The emphasized portion of this passage is, inexplicably, missing from Plaintiffs' quotation from the *Diet Drugs* opinion. See Pltffs' Br. at 19.

which reasonable fees are to be determined, or that there is some common law fee award for product liability warranty claims. Additionally, the other two Settlement Agreements cited by plaintiffs *In Re Schering-Plough/Merck Merger Litigation* Civ. Act. No. 09-1099 Doc. 60-2 Filed 12/3/09 and *Judy Larson v. AT&T* (Civ. Act. No. 2:07-Cv-05325 Doc. 84-1 Filed 12/3/08) 2010 U.S. Dist LEXIS 29121 (D.N.J. 2010) (attached to the Slater Cert. respectively as Exhs. 151 and 152) stand for the proposition that the Settlement Agreement mandating New Jersey law apply is not enforceable for attorney fees, are also inapposite to the case at bar. In both cases, the defendants specifically agreed in the Settlement Agreement not to contest the fee amounts in a clear sailing provision. In *Larson*, defendant Sprint stated it "will not oppose or undermine the application..." Such agreement comes within the "by agreement" provisions of F.R.Civ. P. 23(h). Similarly, in the *Merck Merger Litigation*, defendants agreed within the settlement that "they will not oppose class counsel's application...up to 3.5 million." Neither agreement supports the notion that "federal law" provided fees absent specific agreement, or that the Courts were not constrained to consider applicable law in calculating fees. In sum, these two scenarios lend no guidance herein and are simply irrelevant to the issues presented.

## POINT III

### THE LODESTAR METHOD IS THE REQUIRED METHOD FOR DETERMINING A REASONABLE ATTORNEY FEE AWARD UNDER THE APPLICABLE NEW JERSEY LAW – THE CONSUMER FRAUD ACT

The United States Supreme Court noted two months ago that "[t]he lodestar figure has, as its name suggests, become the guiding light in our fee shifting jurisprudence." *Perdue v. Kenny*, 130 S. Ct. 1662, 1672 (U.S. 2010) (quoting *Dague*, 505 U.S. 557, 562,

112 S. Ct. 2638, 120 L. Ed. 2d 449). The Supreme Court further held there is a "strong

presumption" that the lodestar figure is reasonable. *Id.* at 1667. The lodestar looks to

prevailing market rates in the relevant community, in this case northern New Jersey. As

the Supreme Court has observed, the lodestar approach is "objective," and thus "permits

meaningful judicial review, and produces reasonably predictable results." *Id.* at 1672

citing *City of Burlington v. Dague, supra* and *Hensley v. Eckerhart, supra.*

Based on similar considerations, the New Jersey Supreme Court has

unequivocally held that the lodestar method applies to attorney fees in statutory fee shift

matters. *Rendine v. Pantzer,* 141 N.J. 292, 661 A.2d 1202 (1995). *Rendine* specifically

cites the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-19 as an example of such a fee

shifting statute. *Id.* at 322. *Rendine* applies in class as well as individual litigation. *See*

*e.g. Muller-Moreno v. Malouf,* 2009 N.J. Super. Unpub. LEXIS 1191 (Sup. Ct. 2009)

(unpublished) (applying lodestar to class action against auto dealers under the CFA).

*Rendine* reflects an acute awareness of the twin policy considerations which must

undergird all fee jurisprudence, federal and state:

> In addressing the issue, our primary goals are to arrive at a rule that
> is faithful to the Legislature's objective in enacting fee-shifting
> provisions, while at the same time sharply discouraging collateral
> litigation of "reasonable fee" issues under fee-shifting statutes by
> trial setting forth standards that inform the exercise of discretion by
> trial courts called on to determine such fees.

*Id.,* 141 N.J. at 317, 661 A.2d at 1217. Accord, *Perdue v. Kenny, supra.*

In fact, the *Rendine* lodestar approach has been used by Appellate Division in

New Jersey to rein in an overreaching fee request by *Delguercio* counsel with strong

parallels to this case. *Sutter v. Horizon Blue Cross Blue Shield of New Jersey,* 406 N.J.

Super. 86, 966 A.2d 508 (App. Div. 2009) vacated a $6.5 million fee awarded to the

Mazie Slater firm, calculated as 16.7% of their expert's valuation of the settlement benefits. The Appellate Division found, *inter alia*, that the trial court's failure to compute the effective hourly rate embodied in its award was error, 406 N.J. Super. at 106, 966 A.2d at 520, and remanded with the direction that "the court shall consider the reasonableness of the fee in light of the hourly rate." 406 N.J. Super. at 109, 966 A.2d at 522. The Appellate Division's own consideration of the effective hourly rate prompted a pointed expression of judicial "sticker shock:"

> Appellants argue that class counsel represented it spent "'approximately 3,500 hours' on the case, without presenting documentation to support the claim." Appellants maintain that the $ 6 million fee divided by 3,500 hours represents an hourly rate in excess of $ 1,700. Even in the New York/New Jersey metropolitan area, that is extraordinary in our view.

*Sutter v. Horizon*, 406 N.J. Super. at 103, 966 A.2d at 518. The $1,983 average "hourly rate" being sought here substantially exceeds the "extraordinary" outcome rejected in *Sutter v. Horizon Blue Cross*.[3]

Contrary to Plaintiffs' Counsels' assertions, the Third Circuit, which originated the lodestar doctrine in *Lindy Brothers Builders Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973), continues to commend this approach in statutory fee shift cases, where it "assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir. 1995).

---

[3] On remand, after extensive additional proceedings, the Superior Court in *Sutter v. Horizon,* on June 10, 2010, applied a lodestar method to what had become a total of 5,528 total hours and applied a *Rendine* enhancement of approximately 35%. Slip Dec. at p. 22-23. (Chase Cert., Exh. "E".) The unusually high "blended" rates for lawyer time were based on the fact that Messrs. Katz and Mazie, two of the most senior attorneys in the firm, had billed over 75% of the attorney time in the case. The Court noted that "neither party provided comprehensive information in support of what the appropriate lodestar rate should be."

The Third Circuit has also endorsed the lodestar method outside the statutory fee cases where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F 3d. at 821.

Accordingly, Courts in this District have consistently calculated fee awards under fee shift statutes using the lodestar approach. *See e.g., Interfaith Cmty.* Org. *v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 N.5 (3d Cir. 2005); (Resource Conservation and Recovery Act) *Student Pub. Interest Research Group of New Jersey v. AT&T Bell Labs*, 842 F.2d 1436, 1455 (3d Cir. 1988) (Clean Water Act); *Hernandez v. Kalinowski,* 146 F.3d 196, 199 (3d Cir. 1998) (Prison Reform Act); *Ellis v. Ethicon, Inc.*, 2010 U.S. Dist. LEXIS 18455 (D.N.J. 2010); *Fibermark N. Am., Inc. v. Jackson,* 2008 U.S. Dist. LEXIS 50049, 8-9 (D.N.J. 2008) (Clean Water Act); *Wachtel v. Health Net, Inc.*, 2007 U.S. Dist. LEXIS 44225, 10-12 (D.N.J. 2007) (ERISA); *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, 2006 U.S. Dist. LEXIS 62966 (D.N.J. Sept. 5, 2006) (Civil Rights).

In *Weber v. GEICO*, 262 F.R.D. 431 (D.N.J. 2009), a case strikingly similar to this one, the district court turned to the CFA to support its election to proceed according to the lodestar method. Judge Simandle's reasoning applies with full force here:

> First, plaintiffs' claims are brought pursuant to, *inter alia*, New Jersey's Consumer Fraud Act, which contains a "statutory fee shifting provision." *Id.*; as 449 see N.J. Stat. Ann. 56:8-19 ("In all actions under this section . . . the Court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit. . .
>
> Moreover, the settlement agreement at issue herein does not contemplate a common fund that would be depleted depending upon the size of the fee award. *See In re*

> *Cendant*, 264 F.3d at 256. . . .[The settlement] benefits are
> not readily subject to precise calculation such that a such
> that a "percentage of the total recovery," *In re Cendant*, 264
> F.3d at 256, could be discerned under the percentage-of-
> recovery approach . . . The lodestar method will be
> employed in reviewing the fee application herein.

262 F.R.D. at 449-50. Here as in *Weber*, the benefits to the class members, though very

substantial, are not subject to precise calculation (as seen from the dispute of experts).

Here, as in *Weber*, the plaintiffs' invocation of the CFA as a basis for their claims,

bolstered by the express choice of law provision in the Settlement Agreement applying

the law of New Jersey, mandates that the Court apply the lodestar rate and spare itself the

"battle of the experts" inherent in plaintiffs' "percentage of a non-fund" proposal.


### POINT IV

**FOR LODESTAR PURPOSES, THE CONTEMPORANEOUSLY BILLED RATES
OF DELGUERCIO COUNSEL SWORN TO IN THIS COURT YIELD A BASE
LODESTAR FEE OF FROM $3.3 to $3.5 MILLION. THE LESSENED
LITIGATION RISKS RESULTING FROM THE P9, P9 EXPANDED AND JU
SERVICE ACTIONS, COUPLED WITH THE ATTEMPT TO OBSCURE
COUNSELS' CURRENT RATES FROM THE COURT ON THIS APPLICATION
<u>COUNSEL AGAINST A MULTIPLIER OR ENHANCEMENT</u>**

To fix the size of a prevailing party's fee award, a court must determine

the appropriate billing rate for the party's attorneys as well as the number of hours those

attorneys reasonably expended on the action. See *Blum v. Stenson*, 465 U.S. 886, 888

(1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In determining the lodestar

amount, the Court must "carefully and critically evaluate the hours and the hourly rate set

forth by counsel." *J & J Snack Foods Corp. v. Earthgrains Co.*, No. 00-6230, 2003 U.S.

Dist. LEXIS 8040, 2003 WL 21051711, at *6 (D.N.J. 2003) (quotation and citation

omitted).

As to hours claimed, Defendants' counsel have been afforded an opportunity to review plaintiffs' lead counsels' time records "onsite." A number of challenges could be made to individual items reflecting overbilling or overstaffing. Assuming the total of 11,345.94 hours billed by the two firms (5482.5 by Mazie Slater and 5863.44 hours for the Schoengold Sporn firm) are correct, those hours are distributed among the attorneys appearing on the two firms' time billings as follows:

| **Mazie Slater** | | **Schoengold & Sporn** | |
|---|---|---|---|
| **Attorneys/Paralegals** | **Hours** | **Attorneys/Paralegals** | **Hours** |
| Adam Slater | 1630.7 | Samuel P. Sporn | 1258.79 |
| Eric D. Katz | 156.6 | Joel P. Laitman** | 27.00 |
| David A, Mazie | 74.5 | Christopher Lometti | 60.25 |
| David M. Freeman | 650.2 | Kurt Hunciker | 2.50 |
| Jennifer Pawlak | 125.8 | Jay P. Saltzman | 2603.02 |
| Matthew R. Mendelsohn | 1552.9 | Ashley Kim | 669.08 |
| Karen Kelsen | 1203.6 | Frank Schirripa | 420.05 |
| Irina Elgart | 11.2 | Daniel B. Rehns | 162.50 |
| *Steven Sederens* | 77 | Pietro de Volpi | 499.25 |
| | | Irena Shpigel | 16.00 |
| | | Tom Santanello | 72.00 |
| | | Marta Michael | 53.50 |
| | | Nancy Ahem | 19.50 |
| **Total Hours** | **5482.5** | **Total Hours** | **5863.44** |

(Slater Cert., Exh. "C" last page and Sporn Cert., Exh. "B.")

The Mazie Slater law firm claims that their current hourly rates are $795 for partners Mazie and $695 for partner Slater and up to $460 for junior associates. (Slater Cert. at page 11 ¶ 18) (Docket 195-1)   Similarly, Mr. Sporn claims his current hourly rate is $790 per hour, and that of his "of counsel" Jay Saltzman at $600 per hour, (Sporn Cert., Exh. "B"). Two other associates at Schoengold Sporn who put in substantial time, are no longer with the firm; Ashley Kim at $475. per hour and Frank Schirripa at $450. per hour. *Id.* Another new associate was billed at $250 per hour.

With a claimed multiplier of 3.68 plaintiffs' counsel seek a combined "effective rate of $1,983.08" covering all attorneys on the case, from the greenest associate to name partners. Brief in support of Fee Award, p. 38.

Plaintiffs' Counsel, however, offer no evidence – indeed, they do not even claim – that anyone has ever retained and paid them at these rates, with or without their multiplier. This is a failure of proof.  In fact, prior to the filing of the petition, the defense had no information as to the rates which Mazie Slater would claim, as this information was withheld from the time and billing records made available as ordered by the Court in early June, immediately prior to the filing of the petition.

### Reasonable Rates – Actual Billed Rates, Tempered by Community Norms

The Third Circuit has held that "the reasonable value of an attorney's time . . . is generally reflected in the attorney's normal billing rate." (Emphasis added) *See Daggett v. Kimmelman*, 811 F.2d 793 (3d Cir. 1987). The Court in *Daggett* quoted the Sixth Circuit's teaching that "the words [used are] 'reasonable' fees, not 'liberal' fees. Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Coulter v Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986). See also *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air Act*, 478 U.S. 546, 106 S. Ct. 3088, 3098 92 L. Ed.2d 439 (1986) "What a reasonable, paying client would be willing to pay is a factor in determining what is a reasonable hourly rate." See *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007). (*Glass v. Snellbaker*, 2008 U.S. Dist. LEXIS 73012 (D.N.J. Sept. 23, 2008), ("the applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate, although that information is not necessarily

conclusive.")  citing *Kenny A. v. Perdue*, 454 F. Supp.2d 1260 1284 (N.D. GA. 2006). The District Court "bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill.* 493 F.3d at 112. "A paying client normally would have no reason to pay more than the attorney's customary rate." *Reiter v. Metro. Transp. Auth. of N.Y.*, 2007 U.S. Dist. LEXIS 71008 (S.D.N.Y. Sept. 25, 2007).

Indeed, when particularly rates are at issue, even actual customary rates, if billed and paid by clients, cannot be inflicted on an involuntary "client" by the judicial system. For example, the Third Circuit emphasized that "[i]f we were confronted with a case where a litigator of national repute charged $1,000 per hour in the legal marketplace and nevertheless had innumerable clients waiting at his or her door to pay such rates, that extraordinary level of remuneration could not be legally imposed as a matter of course on an adversary in a prevailing party's counsel fee case." *Daggett v. Kimmelman,* 811 F.2d at 799-800.

Unsupported requests for hourly rates that were never in fact billed to a client do not meet the governing standard. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence [the affidavit] necessarily must speak to rates actually billed and paid in similar lawsuits.  Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988), *citing Blum v. Stenson,* 465 U.S. at 896.  Plaintiffs' counsel's statement that their billing rates are the market rate, without any evidence to show the rate actually paid by a client, cannot not be accepted.

It is equally clear that "[t]he reasonable hourly rate "is calculated according to the prevailing market rates in the relevant community." *Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 Fed. Appx. 93, 96 (3d Cir. 2006); *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) *(citing Blum v. Stenson*, 465 U.S. at 895-96 n. 11 and *Student Public Interest Research Group, Inc. v. AT & T Bell Laboratories,* 842 F.2d 1436, 1448 (3d Cir. 1988). The Third Circuit has held that under "normal circumstances," a prevailing party's attorneys should be compensated based on market rates in the vicinage of the litigation, not where the attorney has his or her office. *Interfaith Community Organization v. Honeywell International*, 426 F.3d 694 (3d Cir. 2005). The exception would be where the plaintiff shows an inability to obtain willing counsel in that vicinage, or if the issues required the special expertise of counsel outside the area.

Here, plaintiffs not only could engage local counsel in New Jersey but the *Delguercio* plaintiffs did so. There is no basis for the payment of "Manhattan rates" advocated by the Schoengold Sporn law firm. Thus, the proffered Declaration of Mr. Labaton attesting to the reasonableness of the Sporn firm's rates in New York City is wholly irrelevant and should be disregarded.

Despite Mr. Slater's Certification, proof of actual hourly rates of *Delguercio* counsel is on public file in this Court, in support of a pending fee application in *Beye v. Horizon Blue Cross Blue Shield of New Jersey*, 06-5337-FSH-PS. Dkt. No. 268-7. This includes contemporaneous time records of the Mazie Slater firm specifying billing rates, covering services rendered from 2006 to 2008, for most of the firm's attorneys and paralegals involved in this matter. These records show Mr. Slater billing at $375 as of

November 2006 Exhibit "O" (page 2 of 85), and at $435/hr as of May 2008 (page 57 of

85). *Horizon v. Beye* (see Mazie Cert.. Exh. "O," Chase Cert., Exh. "A.")    One will

search Plaintiffs' counsel's papers in vain for mention of *Beye*, much less a plausible

explanation for the $355 per hour increase in Mr. Slater's billing rate since May 2008.

### Plaintiffs' Counsel's Lodestar Using Mazie Slater Rates Filed in This Court

Applying the Mazie Slater rates on file in this Court in *Beye* to the hours billed by

the same attorneys or those of similar experience as the Mazie Slater and Sporn firms in

this action, yields a total estimated lodestar of $3,443, 212.05 as follows:

### MAZIE SLATER FREEMAN & KATZ

| Attorneys/Paralegals | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Adam Slater | 1630.7 | $435.00 | $709,354.50 |
| Eric D. Katz | 156.6 | $435.00 | $68,121.00 |
| David A, Mazie | 74.5 | $560.00 | $41,720.00 |
| David M. Freeman | 650.2 | $435.00 | $282,837.00 |
| Jennifer Pawlak | 125.8 | $260.00 | $32,708.00 |
| Matthew R. Mendelsohn | 1552.9 | $200.00 | $310,580.00 |
| Karen Kelsen | 1203.6 | $160.00 | $192,576.00 |
| Irina Elgart | 11.2 | $268.00 | $3,001.60 |
| *Steven Sederens* | 77 | $100.00 | $7,700.00 |
| **Total Hours** | **5482.5** | **Total Lodestar** | **$1,648,598.10** |

While the Schoengold Sporn firm was not in the *Beye Horizon* case, their co-

counsel's rates would apply as follows:

### SHOENGOLD & SPORN

| | | | |
|---|---|---|---|
| Samuel P. Sporn | 1258.79 | $560.00 | $704,922.40 |
| Joel P. Laitman | 27.00 | $435.00 | $11,745.00 |
| Christopher Lometti | 60.25 | $435.00 | $26,208.75 |
| Kurt Hunciker | 2.50 | $260.00 | $260.00 |
| Jay P. Saltzman | 2603.02 | $260.00 | $676,785.20 |
| Ashley Kim | 669.08 | $220.00 | $147,197.60 |
| Frank Schirripa | 420.05 | $200.00 | $84,010.00 |
| Daniel B. Rehns | 162.50 | $200.00 | $32,500.00 |
| Pietro de Volpi | 499.25 | $180.00 | $89,865.00 |
| Irena Shpigel | 16.00 | $160.00 | $2,560.00 |
| Tom Santanello | 72.00 | $160.00 | $11,520.00 |
| Marta Michael | 53.50 | $100.00 | $5,350.00 |

| Nancy Ahem | 19.50 | $100.00 | $1,950.00 |
| **Total Hours** | **5863.44** | **Total Lodestar** | **$1,794,613.95** |

*Dewey* counsel have engaged prominent and distinguished Newark local counsel, Genova Burns, but have not separately made any claim for fees for this firm, stating instead that the Sporn firm will absorb their local counsel's charges:[4]

## The New Mazie Slater Rate Schedule and "Survey" – Made to Measure for this Application

It should be noted that the Slater certification attempts to sidestep *Beye* by simply purporting to promulgate new rates established "in connection with this application." (Slater Cert., ¶14)  Mazie Slater's new rate schedule, wildly increasing rates presented to this Court in *Beye* just in time to file the petition, is based on what is termed a "survey" of other firms' fee applications.  (Id. at ¶ 14) This supplies the pretext for a proclamation that "rates that may have been quoted in past" by the Mazie Slater firm in connection with fee applications are irrelevant since they were not based on this self-serving in-house "survey" commissioned and conducted "in connection with this application." (Slater Cert., ¶ 14) Plaintiffs' counsel, however, do not assert that there is any client who has ever paid such rates, or for that matter has even been informed of them as required. Nowhere is it claimed that these "rates" were in effect at any time prior to the settlement of this case.  This showing fails to meet the governing standards for establishing a

---

[4] In a recent resolution of the Borough of Red Bank, engaging Genova Burns attorneys, including one of its name partners, at $135 per hour, applicable to work from April through December of this year. (Chase Cert., Exh. "B.") Additional similar engagements by Burns Genova have been in the range of $175 per hour for work performed in 2009 for Cumberland County and the Borough of Harvey Cedars. The engagement resolutions for the referenced retentions are attached as see Chase Cert., Exh. "B." While these are surely not the rates Genova Burns is billing in this case, they are a virtually conclusive indication that "full freight" for major commercial litigation – e.g. this case – by an established firm in this district is nothing like what either lead counsel are seeking.

reasonable rate. The purported survey contained within the Slater Certification ¶ 15-17 remarkably does not rely on rates in this District but on hourly rates from two New York and Delaware law firms. These rates can not be deemed comparable to the "community market rate" of New Jersey.

Numerous decisions from this district which were somehow overlooked in the Mazie Slater "survey" make it clear that $650 to $795 for senior partners, and junior associates at $425-$460 per hour claimed for this occasion are anything but typical or characteristic hourly rates for class action attorneys in this vicinage. Absent from their "survey," for example, are cases such as *Stair v. Thomas & Cook*, 2009 U.S. Dist. LEXIS 48706, *8 (D.N.J. 2009) (finding an hourly rate of $325 reasonable); *EEOC v. UPS*, 2009 U.S. Dist. LEXIS 91241, *8-9(D.N.J. 2009) (approving an hourly rate of $250.00 to the lead attorney located in Jersey City); *Grant v. Omni Health Care Sys. of N.J.*, Inc., 2010 U.S. Dist. LEXIS 43286, *2 (D.N.J. 2010) (awarding $225.00 for the defendant's lead attorneys from a New Jersey law firm in River Edge, N.J); or *Slover v. Live Universe, Inc.*, 2009 U.S. Dist. LEXIS 29072, *4 (D.N.J. 2009) ($335.00 found reasonable hourly rate for lead New Jersey counsel).

Plaintiffs' counsel's "survey" also fails to note any of the cases in which courts in this District have reduced claimed hourly rates found to be too high and not "reasonable," generally bringing them into line with the rate schedule actually billed in the Mazie Slater time records in *Beye*. E.g., *L.J. v. Audubon Bd. of Educ.*, 2010 U.S. App. LEXIS 7350 (3d. Cir. Apr. 9, 2010) (affirming reduction of the requested hourly rate from $400 to $250); *M.G. v. E. Reg'l High Sch. Dist.*, 2009 U.S. Dist. LEXIS 98631 (D.N.J. Oct. 29, 2009) (rejecting hourly rate of $400 as "unsupportable."

Lastly, the Mazie Slater "survey," while ranging far and wide outside this district to cherry-pick counsel's favorite securities and other mega-recoveries, most often from actual common funds, overlooks a recent settlement, in this Court, assigned to the same Magistrate Judge presiding in this case, concerning an alleged automotive defect. In *Careccio v. BMW of N. Am. LLC*, 2010 U.S. Dist. LEXIS 42063 (D.N.J. Apr. 29, 2010), 2:08-cv-02619-KSH -PS (docketed sub nom. *Chandran et al v. BMW of North America, LLC* et al.) counsel agreed to a modest **reduction** from their customary rates, securing an approved attorney fee of $1.2 million, for approximately 2,542 billed hours. Plaintiffs' counsel cannot be heard to argue here that anything approaching the bonanza they seek is necessary to attract competent counsel to undertake litigation of this character.

Indeed, plaintiffs requested hourly rates are much higher than those awarded within the past half year for attorneys of seniority and experience indistinguishable from plaintiffs' lead counsel. For example, In *Ellis v. Ethicon, Inc.*, 2010 U.S. Dist. LEXIS 18455 (D.N.J. Mar. 1, 2010), a fee application was filed in December 2009, and the Court awarded an hourly rate of $350 (reduced from original request of $400) which they stated "falls within the norm of New Jersey attorneys with similar positions and experience." *Id* at 9. The lead attorney for plaintiffs in *Ellis* had been a member of the bar since 1986, and became a partner in 1997; had substantial trial experience and was admitted to practice in the state of New Jersey, U.S. District Court of N.J., U.S. District Court, Eastern District of Pennsylvania, U.S. Court of Appeals, 3rd Circuit, and the United States Supreme Court. By way of comparison Plaintiff's counsel David Mazie, who seeks $790 here, more than double the rate awarded in *Ellis*, was also admitted to the bar in 1986, and is admitted to the bar in New Jersey, U.S. District Court, District of New Jersey and

U.S. Court of Appeals, Third Circuit. Eric Katz, Adam Slater, and David Freeman, Jennifer Pawlek and Matthew Mendelsohn all have lesser years of experience and are requesting rates substantially higher than the $350 rate awarded in this District. Plaintiffs make no showing as to how their "background and expertise" would warrant their higher fees from this Court in the summer of 2010 than counsel in *Ellis* obtained the spring of this year in this Court.

In short, the total cumulative lodestar fee properly awarded in this case should, at maximum, be on the order of $3.5 million, depending on the exact allocation of billing rates to attorneys here who did not record time in *Beye*.

**POINT V**

**NO FEE ENHANCEMENT IS APPROPRIATE IN THIS CASE**

The New Jersey Supreme Court permits a contingency enhancement to the lodestar fee under New Jersey statutory fee shifting statutes. *Rendine*, 141 N.J. at 338. Under *Rendine*, the practical approach for the Court is simply to determine if the case was taken on a contingent basis, whether nonpayment was mitigated in any way, and what economic risks were present. *Id.* at 339 citing to *Delaware Valley II*, 483 U.S. at 747 (Blackman, J. dissenting). However, the New Jersey Supreme Court in *Rendine* was at pains to point out that enhancement was subject to stringent limitations. Said the Court:

> "contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement **in typical contingency cases ranging between twenty and thirty-five percent of the lodestar**. Such enhancements should never exceed one-hundred percent of the lodestar, and an enhancement of that size will be appropriate only in the rare and exceptional case in which the risk of nonpayment has not been

> mitigated at all, *i.e.*, where the "legal" risk constitutes "an economic disincentive independent of that created by the basic contingency in payment * * * [and] the result achieved * * * is significant and of broad public interest."

*Id.* at 343. (Emphasis added)

Plaintiffs' counsels' argument that they should be compensated for the risk that they took in litigating these matters by abandoning the lodestar in favor of a percentage of recovery without merit. The entire structure of *Rendine* enhancements operates solely and exclusively within the context of lodestar jurisprudence and methodology. If the Court considers it appropriate, the risk factor can be taken into account in the lodestar method with an enhancer as guided by New Jersey law in *Rendine*. One must note in this connection, however, that the P9 (August 2007), P9 expanded (June 2008) and JU campaigns (June 2008), which together retrofitted and offered reimbursement consideration to approximately 450,000 vehicles in the class, in actions for which plaintiffs are permitted to claim credit in the Settlement Agreement, per section 4, substantially mitigated the risk of non-payment. Moreover, the agreement in principle on basic settlement terms in September 2009, leading to a stay of all proceedings other than confirmatory discovery and finalization of settlement (Dkt. No. 154, 9/14/09), removed any remaining litigation risk, and therefore precludes any multiplier for time expended after that point.

However, for the reasons stated in the Introduction to this Brief, this Court should withhold even the modest enhancement which might otherwise be available under *Rendine*. This matter was resolved by Settlement Agreement pre-certification, before motions for summary judgment and prior to trial. Most fundamentally, Plaintiffs' counsel should not be rewarded for their fee quest tactics, which at the very least obscure

clear evidence of specific hourly rates in this district behind an eleventh-hour smokescreen of their new rates and carefully crafted and seriously skewed "survey," is alone sufficient to require a disincentive to such conduct, which may therefore not be seen in the future, by any attorneys appearing at the bar of this Court.

**POINT VI**

**PLAINTIFFS' COUNSEL HAVE TENDERED NO
EVIDENCE OF THEIR CLAIMED EXPENSES, WHICH MUST THEREFORE
BE DENIED ON THE PRESENT RECORD**

Plaintiffs' counsel seek over $800,000 in expenses including in excess of $374,000 for experts. The Slater Mazie firm has offered no evidence of these expenses or what experts received payments. The Mazie Slater firm has provided a list of alleged expenses at Exh. "D" to the Slater Certification and states only that the stated expenses were "incurred in connection with the litigation" and "necessary for advancement of the litigation" expert work. Plaintiffs' counsel failed to provide the identity of the payee, the time spent, or the accuracy of the billing. Without providing the back up information, it is not possible for the Court to award these expenses. The Schoengold Sporn firm similarly fails to provide any back up documentation to the Court concerning expenses, although, records unlike the Mazie Slater firm, it did permit defendants brief examination of its expenses on site.

"As with the time claimed by counsel, the prevailing party bears the burden of justifying the time claimed by its expert witnesses. Similarly, the district court has the obligation to conduct a thorough and searching review of the time claimed by a prevailing party's experts." *Interfaith Community Org. v. Honeywell International, Inc.*, 426 F.3d 694, 714 (3d Cir. 2005). In *Interfaith*, defendant Honeywell challenged the

District Court's decision to award more than $ 780,000 for the time and costs of three

expert witnesses.  The Court held that:

> The fact that the work of the experts assisted the Court does not, by
> itself, imply that the amount of time claimed by the three experts
> was reasonable. Rather, as was the case with the time [plaintiff's]
> attorneys claimed, the District Court has an obligation to "'go line,
> by line, by line' through the billing records supporting the fee
> request." Evans, 273 F.3d at 362. Similarly, the Court must give us
> a sufficiently detailed explanation of its reasoning so that we can
> engage in meaningful appellate review. Since it failed to do so, we
> will vacate the award of fees for the three experts (and their
> respective business entities).

*Id.* at 714.  The same holds true herein. Sums of this size cannot be taken on faith

or imposed on the present record, without actual business records confirming

them.

## POINT VII

### PLAINTIFFS' VALUATION OF THE SETTLEMENT IS OVERSTATED BY APPROXIMATELY $95 MILLION.  VALUED ACCORDING TO SOUND ECONOMICS AND THE GOVERNING LAW, A "PERCENTAGE OF THE FUND" CALCULATION YIELDS A CROSSCHECK AMOUNT WHICH CONFIRMS THE REASONABLENESS OF THE LODESTAR AWARD REQUIRED IN THIS CASE.

Plaintiffs' "percent of the fund" calculation, aside from being inapplicable as a

matter of law, is based on a fundamentally flawed and significantly overstated valuation

of the settlement.  In the view of the Defendants' eminently qualified economic expert,

accepting the calculations of plaintiffs' expert, Dr. Eads, as to various categories of

valuation, but removing the double-counts the total value of the settlement is in the range

of from $ 36.6  to $49.4  million, rather than the approximately $142 million claimed by

plaintiffs.

Attached hereto as Exhibit "D" to the Chase certification is the report of Defendants' expert, Professor Janusz Ordover. ("Ordover Rpt.") Dr. Ordover is Professor of Economics at New York University, and a former chief economist for the United States Department of Justice, Antitrust Division, who has been qualified as an expert in economics by numerous courts, including those in this Circuit. E.g., *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 313-15 (3d Cir. 2008) His report summarizes the analysis and conclusions embodying his critique of plaintiffs' economist's calculations as to which testimony will be presented at the Fairness Hearing.

The gist of Dr. Ordover's critique of plaintiffs' valuation is simply summarized in his report. Prof. Ordover notes that Dr. Eads calculates four categories of economic costs and benefits with respect to the settlement:

| | |
|---|---|
| Actual and potential reimbursements for claims up to Dec 2009: | $9.5 million |
| Service actions to remedy certain alleged defects: | $55.3 million |
| Avoided future repair costs: | $37.6 million |
| Avoided diminution in future value: | $39.8 million |
| Total: | $141.8 m |

Ordover Rpt. ¶ 4.

Prof. Ordover notes that the inclusion of the second and fourth listed items, i.e. the $55.3 million to be paid by Defendants for the service actions undertaken as a result of this litigation, and the $39.8 million in "avoided diminution in future value," for a total of $95.1 million, constitutes incorrect "double-counting," in effect adding both the input costs (to Defendants) and the output benefit (to Class Members) or cumulating two forms of avoided damage (repairs and diminished value), only one of which can reasonably be expected to occur.

Prof. Ordover concludes that Dr. Eads' figures show benefits to the class of actual and potential reimbursements of $9.5 million and the calculated "avoided future repair

costs" of $37.6 million   (Id., ¶¶ 6-9)   With a possible additional adjustment for the anticipated approximately 72% "take up rate" with respect to the service campaign component of the settlement, Professor Ordover concludes that Dr. Eads' calculated values, stripped of double-counting errors, yield a valuation of the benefits to the class of either  $36.6 million (applying 72% "take up" rate) or $49.4 million (100% of available benefits).[5]

Prof. Ordover grounds his critique of Dr. Eads' double-counting entirely and exclusively in economic terms.   In fact, recent decisions, including one rejecting calculations offered by Dr. Eads in another automotive case, require the same result.   In *O'Keefe v. Mercedes-Benz United States*, LLC, 214 F.R.D. 266 (E.D. Pa. 2003),   Dr. Eads appeared on behalf of the defendant in connection with the final fairness hearing and the award of attorney fees.   The proposed settlement included various information disclosures and an extended warranty commitment.   Dr. Eads initially valued the settlement solely as the cost of the program to the defendant.   The Court rejected this approach and disregarded Dr. Eads' calculations:

> We found Dr. Eads's report unrelated to the settlement's valuation because it measured the common fund by MBUSA's costs and not by the benefit [to] the class.

214 F.R.D. at 305. The court solicited expert input addressing the valuation issue exclusively in terms of the benefits to the class. However, the court found that Dr. Eads' second effort still failed to meet the requirements of the law:

> We do not believe that Eads's analysis is relevant to valuing the benefit to the class members. It reads more like a document aimed at placating DaimlerChrysler

---

[5]   The "take up rate" refers to the percentage of class numbers who drive their vehicles in for the service action.

> shareholders. . . . *[T]his court must value the benefit to the class. The cost to [defendant] is irrelevant.*

214 F.R.D. at 306. (emphasis added). [6]

In short, in *O'Keefe*, Dr. Eads measured the wrong value – defendants' cost. The cure for this is to measure the correct value (class benefits), as Prof. Ordover proposes and as Dr. Eads, inter alia, has done. It is not correct to add the wrong value (defendants' costs) to the right value (class benefits). The Eads double-count is impermissible not only as a matter of economics but as a matter of law. Accordingly, as a matter of law, the costs to defendants of $55.3 million cannot be counted also as "benefits" to the class. Likewise, the administrative costs of the settlement and notice, which are being paid by Defendants, cannot be included in the valuation of any hypothesized "fund" in this case, were that approach permissible.

In addition, Prof. Ordover in fact based his critique on the report of Defendants' expert Robert Lange, a veteran of the automotive industry (see attached Report of Robert Lange, Chase Cert., Exh. "D") who rejects Mr. Hixenbaughs' "avoided diminished value" concept which Dr. Eads derives from plaintiffs' appraisal expert Mr. Hixenbaugh (who has not conducted any appraisal in this case). As Mr. Lange observes, a vehicle fully repaired following anything other than a catastrophic episode of water ingress will not suffer any resale value loss (Lange Report, Chase Cert. Exh. "D."). Accordingly, absent the settlement, the repair costs alone would make the class whole against any loss of resale value. Therefore adding "avoided repair costs" and "avoided diminished value"

---

[6] Because of the application of New Jersey law and the CFA fee shift, the "fund" approach is not appropriate in this case. However, the matter proves largely academic, as a correctly applied fund approach yields a similar result to a lodestar analysis.

represents yet another double count. The settlement's value is appropriately measured by the potential avoidance of either of these events, not both, as both cannot be experienced.

All of the foregoing experts will be available at the hearing. We will therefore leave further comment to that occasion. Suffice to say that, if the settlement is valued according to governing law and sound economics, it has major value to the class in a minimum amount of $36.6 million. The fee percentage which plaintiffs are seeking, applied to this "fund," cross-checks the lodestar calculation which is required in this case, as it should, yielding handsome fees which, by any standards other than those of the attorneys requesting them, constitute the "reasonable fee" provided in the Settlement Agreement and required by law.

## CONCLUSION

For the foregoing reasons, the Court should award plaintiffs' counsel a reasonable lodestar fee in the approximate total amount of $3.5 million, plus expenses for which proper proof, withheld to date, is offered forthwith and tendered at the hearing.

Respectfully submitted,

CHASE KURSHAN HERZFELD & RUBIN, LLC
Attorneys for Defendants

By:  /s/ Jeffrey L Chase
       Jeffrey L. Chase (JLC 4476)

June 29, 2010

HERZFELD & RUBIN, P.C.

By:  /s/ Daniel V. Gsovski
       Daniel V. Gsovski (DG 4413)

332607-1                                29