**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey  07068
(973) 228-9898
Attorneys for DelGuercio Plaintiffs

UNITED STATES DISTRICT COURT
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN M. DEWEY, et al., | : |
| Plaintiffs, | : |
| vs. | : |
| VOLKSWAGEN AG, et al., | : |
| Defendants. | : Case Nos.: |
| JACQUELINE DELGUERCIO, et al., | : 07-CV-2249-FSH-PS |
| | : 07-CV-2361-FSH-PS |
| Plaintiffs, | : (consolidated) |
| | : **SUPPLEMENTAL** |
| vs. | : **CERTIFICATION OF** |
| | : **ADAM M. SLATER** |
| VOLKSWAGEN GROUP OF AMERICA, INC., | : **IN SUPPORT OF** |
| et al., | : **APPLICATION FOR** |
| | : **ATTORNEYS' FEES** |
| Defendants. | : **AND EXPENSES** |

I, Adam M. Slater, of full age, hereby certify as follows:

1. I am an attorney at law of the State of New Jersey and a partner with the law firm of Mazie Slater Katz & Freeman, LLC ("Mazie Slater"). I am responsible for handling the above matter on behalf of the DelGuercio plaintiffs, and I have been appointed co-class counsel in this case. This Supplemental Certification is based upon my familiarity with the facts and issues set forth herein.

2. This Supplemental Certification is submitted in accordance with the Court's Order filed July 7, 2010, and in further support of the application by plaintiffs' counsel for the award of expert expenses.

### Experts Retained By Mazie Slater

3. Mazie Slater retained eleven experts during the course of this case for whom reimbursement of expenses and fees is sought. These experts have been integral to our analysis and understanding of the numerous technical issues in the case, and development of the liability and class certification theories and discovery strategies that ultimately produced the settlement that is now before the Court, as well as our conduct of confirmatory discovery and the valuation of the settlement.

4. National Forensic Engineers and Donald Phillips, P.E. of that firm were retained at the outset of Mazie Slater's investigation of this case, in order to aid in determining whether this was a viable case. (A copy of the CV of Mr. Phillips is attached as Exhibit A). Mr. Phillips, who is a professional engineer with extensive experience in automotive forensics, investigated the potential case on our behalf, including speaking with current employees of VW dealerships, and obtained and interpreted for us a 2004 VW technical bulletin regarding the Passat water ingress problems. Mr. Phillips met with counsel in our office and conducted multiple telephone conferences, explaining and analyzing the water ingress issues and pros and cons of the litigation. This expert was paid the total amount of $2,500.00 for the work performed.

5. BTI Consultants/Augspurger Komm Engineering, Inc of Phoenix, Arizona was retained to provide expertise on multiple issues within the fields of automotive design and forensics. The primary engineering expert from that firm was William E. Gest, who

holds a B.S.M.E. in Automotive Engineering from the General Motors Institute in Flint, Michigan and an MBA in Marketing/Finance from Wayne State University in Detroit, Michigan. (The CV of BTI/AKE, and Mr. Gest's CV, are attached as Exhibit B). Mr. Gest's extensive automotive experience includes the position of Engineering Manager, General Motors Corporation, CPC Car Group and Chevrolet Division, where he was responsible for body structure design, interior design, and exterior and sheet metal design, among other things. Mr. Gest and his firm performed extensive analysis of thousands of pages of engineering and design documents, including engineering drawings in the German language which personnel at that firm endeavored to translate and interpret. Mr. Gest also evaluated the service manuals, warranties, and maintenance instructions for the class vehicles. Mr. Gest also personally handled, inspected, and photographed the exemplar parts produced in discovery by the defendants. Mr. Gest and his firm also purchased and utilized several whole and partial exemplar class vehicles in order to evaluate the nature of the defects. Mr. Gest also traveled from Arizona to New Jersey to meet with counsel and to inspect the plaintiffs' vehicles. If the case had gone to trial, Mr. Gest would have testified as to his extensive investigation of the issues in this case, the nature of the drainage defects and the means by which water ingress from those systems causes damage to components and parts of the Class Vehicles in general and how the damage was caused to the representative plaintiffs' vehicles in particular, the common attributes of the various components and systems at issue, and multiple other related issues integral to proof of liability. Mr. Gest spent extensive time in the preparation of his report, which was not complete at the time the case settled. Mr. Gest billed his time at $275.00 per hour, and his support staff billed at $60.00 per hour. We also reimbursed Mr. Gest's

firm for expenses including the purchase of vehicle sections for his forensic analysis. Mr. Gest and his firm were paid the amount of $88,352.43, for the work performed.

6. Joseph Bradley worked at Ford Motor Company for over twenty years, in positions including Warranty Analysis Manager, Global Concern Manager which included responsibility for recall oversight and development of the Ford Recall Procedure, Parts and Service Program Manager, and Customer Service Manager. Since 2005 Mr. Bradley has worked as an independent consultant to the automotive industry. (A copy of Mr. Bradley's CV is attached as Exhibit C). Mr. Bradley reviewed voluminous records and documents produced by the defendants and provided his analysis and evaluation of the customer care, warranty management, and service campaign/recall issues. He also provided insight and analysis into the calculation of damages, including but not limited to establishment of appropriate repair procedures and the associated costs. Mr. Bradley met and spoke numerous times with counsel during the course of the litigation. Mr. Bradley would have testified at trial with regard to these areas and issues, including the deficiencies in the defendants' customer care and warranty management practices, the defendants' improper use of "outside influence" as a basis for denying valid warranty claims, the scope of the service campaign(s) needed to remedy the defects, and the basis for calculating damages. Mr. Bradley billed us at the rate of $200.00 per hour and was paid $6,600.00 for the work performed.

7. Gerald C. Meyers, the former Chairman of American Motors Corporation, holds a B.S. in Engineering and an M.S. in business from Carnegie Mellon University. (Dr. Meyers' CV is attached as Exhibit D). He was awarded an honorary Doctor of Business Practice degree from Carnegie Mellon in 2007. Dr. Meyers has extensive

executive experience in the automotive industry, and is the President of Gerald C. Meyers Associates, Inc., a consulting firm in the business of advising senior management. He is currently a Professor of Management and Organization at the University of Michigan Ross Business School. Dr. Meyers reviewed extensive documents and spoke several times with counsel with regard to the proposed subjects of his trial testimony, including his evaluation of the defendants' business practices and executive oversight and knowledge of the water ingress issues, the level of good faith and fair dealing with regard to their customers, and the potential remedies and measures of damages. Dr. Meyers billed for his time at the rate of $575.00 per hour, and was paid the amount of $17,163.75 for the work performed.

8. Robert C. Keller was retained through a firm named Guideline. Mr. Keller holds a B.S. in Chemistry from Rutgers University and worked for over thirty years in the chemical industry, for Uniroyal Chemical Company, Thiokol Chemical Corporation, and Exxon Chemical Company. (Mr. Keller's CV is attached as Exhibit E). In those positions he was responsible for research and applications research with regard to elastomer products, including but not limited to ethylene-propylene diene monomer (EPDM). The drain valves at issue in this case are made from EPDM. Mr. Keller evaluated numerous documents with regard to the chemical composition and technical delivery conditions of the drain valves and other EPDM materials at issue. Mr. Keller also inspected many of the drain valves utilized in the Class Vehicles. Guideline also performed a literature search regarding EPDM. (A copy of a portion of the literature search results is attached as Exhibit F). Mr. Keller's analysis and testimony would have focused on the properties of these components, the significance/insignificance of subtle variations in EPDM formulas for various valves involved in this case, the susceptibility of EPDM drain valves to clog

with wet organic matter leading to water ingress, and the overall commonality of the components. Mr. Keller had begun but not completed the drafting of his report. Mr. Keller met with counsel and spoke several times with counsel with regard to the issues he was evaluating. Mr. Keller (through Guideline) billed at the rate of $300.00 per hour, and was paid the amount of $21,944.46 for the work performed.

9. Martin Potok was retained through the firm of Robson Forensic. Mr. Potok holds a B.S. in Engineering from Eastern Michigan University and is a vehicle body sealing expert. (Mr. Potok's CV is attached as Exhibit G). Mr. Potok was a Product Engineer at Ford Motor Company and Volkswagen of America, before joining Chrysler, LLC in 1983, where he remained through 2008. At Chrysler, Mr. Potok was a Senior Engineer at first, and rose to the position of Engineering Supervisor, where he supervised a team of engineers in the body core sealing group responsible for corporate sealing initiatives and best practices for all current and future vehicle lines. His responsibilities included the entire design process and included water management and weather-stripping. Mr. Potok reviewed numerous documents including engineering drawings, and met with and spoke several times with counsel, and would have testified to the design flaws and failure points for the plenum and sunroof drain systems and components, suitable alternative designs, and the commonality of the systems and components as between the various vehicle models. Mr. Potok (through Robson Forensic) billed at the rate of $310.00 per hour and was paid the amount of $13,707.33 for the work performed.

10. Mark J. Allen is a Certified Master Automobile Technician, and a Factory Certified Master Volkswagen Technician. He is also a Certified Master Collision Damage and Paint Refinish Technician, Certified Vehicle Appraiser, and Certified Collision

Damage Appraiser. (Mr. Allen's CV is attached as Exhibit H). Mr. Allen reviewed extensive documents, evaluated the defects and failure modes, evaluated the existing maintenance instructions for the drains and drain systems, reviewed the contents of relevant internet forums, and traveled to New Jersey from Arizona to inspect plaintiffs' vehicles and meet with counsel. Mr. Allen was in the process of preparing his report when the case settled, and would have testified from the perspective of a technician as to the cause and extent of the water damage to the plaintiffs' vehicles, the root causes for water ingress throughout the class vehicles, and with regard to the VW maintenance instructions. Mr. Allen billed at the rate of $175.00 per hour and was paid the amount of $21,254.00 for the work performed.

11.     Ian Hanson of Advanced Automotive Solutions is an Audi certified Master Guild Technician and Shop Foreman, and ASE Master Technician. (Mr. Hanson's CV is attached as Exhibit I). Mr. Hanson's automotive service firm known as Ingolstadt West specializes in the repair of VW, Audi, and Porsche vehicles. Mr. Hanson has extensive experience with the Class Vehicles, and reviewed documents and consulted with counsel regarding the proper repair and maintenance procedures to be applied to the Class Vehicles, the deficiencies in the maintenance instructions, the failure modes, and the time units and steps to be taken to remedy the defects through a service action, and in performing the work for the new service action. Mr. Hanson would have testified at trial on these subjects if the case had not settled. Mr. Hanson billed for his time at $250.00 per hour and he has been paid the amount of $2,000.00 for the work performed.

12.     Frederick W. Kilbourne and Kathy Blum of The Kilbourne Company provided actuarial/statistical analysis of the value of the settlement. Mr. Kilbourne holds a

Bachelor of Arts from UCLA, and has worked as an actuary for nearly fifty years, and has held important executive posts in most of the more prominent actuarial societies. Ms. Blum is a graduate of Middlebury College and has extensive experience in the financial and actuarial field, including the development and oversight of actuarial computer systems. (A copy of the CV of the Kilbourne Company and Mr. Kilbourne and Ms. Blum is attached as Exhibit J.) In our effort to establish a reasonable and valid valuation of the settlement we consulted with these experts and provided them the voluminous warranty claim and LISTEN file data, covering tens of thousands of claims and complaints, as well as numerous other documents. They evaluated the voluminous data, and re-organized the data, while deleting duplicative and inapplicable claims; this was a large undertaking. They offered their opinions and approach to the valuation of the settlement, and provided a competing methodology for counsel to consider in determining the most valid method for assigning a valuation to the settlement. Their organization of the data was utilized and incorporated by George Eads, Ph.D. and their input on the valuation was integrated into the analysis of the valuation issue. The Kilbourne Company billed for Mr. Kilbourne's time at $500.00 per hour, and for Ms. Blum's time at $400.00, and for Brenda Cox, a member of their support staff at $300.00, and was paid the amount of $70,600.00 for the work performed.

13. Richard Hixenbaugh, an expert in the appraisal of automobiles and calculation of automotive diminished value has been proffered as plaintiffs' expert with regard to the diminished value of water damaged class vehicles. He has established that Class Vehicles will incur diminished value if they suffer water ingress, and a reasonable methodology by which to calculate the diminished value. Mr. Hixenbaugh's curriculum

8

vitae and report are already before the Court. Mr. Hixenbaugh has billed for his time at $125.00 per hour and has been paid $4,650.09 by Mazie Slater to date for the work performed and invoiced to date, and additional amounts will be incurred in connection with his testimony at the final hearing.

14. George C. Eads, Ph.D. is an expert in the field of economics and is plaintiffs' valuation expert. The curriculum vitae and report of Dr. Eads are already before the Court. Dr. Eads has billed for his time at $600.00 per hour, and Charles River Associates has billed at $450.00 for Mark Kiefer (who is a principal of Charles River Associates), and at $205.00 for Associates/Analysts. Dr. Eads and his firm Charles River Associates have been paid the amount of $217,242.34 by Mazie Slater to date for the work performed and invoiced to date, and additional amounts will be incurred in connection with the testimony to be provided at the final hearing.

### The Experts Are Not Duplicative

15. The experts retained by Mazie Slater are not duplicative of one another. In fact, the experts present a diverse breadth of expertise and as described above each provided a valuable contribution to the development of the case and/or the advancement of the Settlement to final approval. The issues in this case were complex, and we recognized the need to spare no expense and to build the necessary cadre of experts to prove liability and damages and overcome the inevitable legal challenges to class certification, commonality, manageability, and damages. This included having experts with different backgrounds and experience address issues so that there could be no claim by the defense that an expert with the proper background was not proffered to address particular issues, and to provide a comprehensive expert viewpoint on key issues. There is no question that

the input of every expert retained by our firm was crucial in one way or another to our ability to properly develop this case on behalf of our clients and the class we were seeking to represent. The experts we retained would have given us the best possible opportunity to satisfy the Court that the case should proceed as a class action, and to prove the case to a jury at trial.

16. The services provided by our experts are not duplicative of the services provided by the experts for whom Schoengold & Sporn seeks reimbursement. The amounts paid by Mr. Sporn to Collision Claims Associates, Inc. for Mr. Hixenbaugh's services ($3,506.25), and to Charles River Associates for Mr. Eads ($23,700.35) are in addition to the amounts paid by our firm for these shared experts. The Rimkus Consulting Group ($2,400.00) is for the deposition of a non-retained expert who performed inspections of vehicles in California for insurance company subrogation claims. The payments by Mr. Sporn to David McLennan ($15,722.56) were for technical support to Mr. Sporn's firm in the early stages of the case. The cases were not consolidated during the pre-suit and early stages of the litigation, and even after the consolidation, the cases were not consolidated for trial. Therefore, it was reasonable for Mr. Sporn to retain his own technical expert at that early stage; however, Mr. Sporn ultimately adopted Mazie Slater's experts on all issues, including the technical issues. The payments by Mr. Sporn to Mr. Compatello and to TASA for Mr. Compatello's services ($61,525.00) were for technical consulting to Mr. Sporn, but Mr. Compatello was never going to testify at trial. Mazie Slater's technical design experts were from the automobile industry design field and brought a completely different perspective and expertise to the case. Moreover, each of Mazie Slater's technical experts were going to testify at trial, with the exception of Mr.

Phillips who had brief but important involvement only in the pre-suit phase of the investigation. Moreover, as set forth above, the cases were not consolidated for trial and thus it was necessary for Mr. Sporn to consult with his own experts; the failure to do so would have been reckless and the same goes for our firm. It is important to recognize that in a case of this magnitude, with such a diverse array of vehicles and issues, the analysis and opinions of varying experts is of great value, and to the extent Mr. Sporn also consulted with technical experts for a period of time, that should be seen as valuable and essential investigation rather than wasted duplicative time.

17. Our firm carefully reviewed each invoice before payment was made, in order to ensure that the billing was fair and reasonable. Since we were incurring these expenses with no certainty of being reimbursed we had a strong interest in only paying reasonable expert expenses. Even in the case of post-settlement expert expenses, we have scrutinized the invoices for reasonableness since reimbursement remains unguaranteed. The rendition of the amounts paid and hourly rates charged by the experts is based on my review and familiarity with the actual billing invoices and checks and records of payment. These amounts exceed the amount submitted to the Court on June 9, 2010 because additional fees have been incurred and paid since that time.

18. Based on the foregoing, Mazie Slater requests the award of the following expert fees and expenses, plus additional expert fees and expenses to be incurred for the services of Mr. Hixenbaugh and Dr. Eads:

| Expert | Amount Paid |
|---|---|
| Donald Phillips | $ 2,500.00 |
| William Gest /BTI | $ 88,352.43 |
| Joseph Bradley | $ 6,600.00 |
| Robert Keller/Guideline | $ 21,944.46 |
| Martin Potok/Robson Forensic | $ 13,707.33 |

| | |
|---|---|
| Gerald C. Meyers | $ 17,163.75 |
| Mark Allen | $ 21,254.00 |
| Ian Hanson | $ 2,000.00 |
| Kilbourne Company | $ 70,600.00 |
| Richard Hixenbaugh | $ 4,650.09 |
| George C. Eads, Ph.D/Charles River | $217,242.34 |
| Total to Date: | $466,014.40 |

I hereby certify that the foregoing statements made by me are true. I am aware if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
ADAM M. SLATER

Dated: July 8, 2010

H:\EDK\DelGuercio Class\Fee Application\AMS Supp Cert 7-8-10.doc