## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN M. DEWEY, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>VOLKSWAGEN AG, *et al.*,<br><br>　　　　　Defendants. | Case Nos.:<br><br>07-CV-2249-FSH-PS<br>07-CV-2361-FSH-PS<br>(consolidated)<br><br>Date:  July 26, 2010<br>Time: 10:00 a.m.<br>Courtroom:  10 (Newark) |

---

## RESPONSE OF JOSHUA WEST, LESTER BRICKMAN, DARREN MCKINNEY, AND MICHAEL SULLIVAN TO MOTIONS FOR FINAL APPROVAL AND ATTORNEYS' FEES

---

Theodore H. Frank (*pro hac vice* pending)
CENTER FOR
CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (703) 203-3848
Email: tedfrank@gmail.com

David M. Nieporent
SAMUEL & STEIN
38 West 32nd Street, Suite 1110
New York, NY 10001
Phone: (212) 563-9884

Attorneys for West Objectors

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................... i

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION .............................................................................. 1

I.    The Eads Opinion of Settlement Value Double-Counts Benefits, Ignores Marginal Costs to the Class, and Thus Overstates Class Benefits and Flunks *Daubert*................................................................................. 2

    A.    Dr. Eads Double-Counts, and Thus Exaggerates, Class Benefits......... 3

    B.    Dr. Eads Ignores Offsetting Costs to the Class, Thus Overvaluing the Class Benefits of the Notification Letter. ............................................ 5

    C.    Dr. Eads Has Exaggerated Class Benefits by at Least $89 Million to $115 Million.......................................................................... 7

    D.    Given the Basic Errors in Dr. Eads's Report, the Remaining Estimates of Non-Pecuniary Value Cannot Be Credited..................................... 9

II.   Putative Class Counsel Misrepresent Precedent............................................11

III.  The Fee Arrangement Breaches the Attorneys' Duty to the Class. ...............13

IV.   Plaintiffs Admit That This Settlement Class Cannot Be Certified.................15

V.    Plaintiffs' *Ad Hominem* Attacks on West's Counsel Are Illegitimate...........18

CONCLUSION....................................................................................19

PROOF OF SERVICE .........................................................................21

# TABLE OF AUTHORITIES

## CASES

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*,
    52 F.R.D. 373 (D. Kan. 1971) .................................................................12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).......................................................................16

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..................................................................... 7-8

*Briehl v. General Motors Corp.*,
    172 F.3d 623 (8th Cir. 1999) .......................................................16

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 579 (1993)................................................. 1, 2-3, 9-10

*Elcock v. Kmart Corp.*,
    233 F.3d 734 (3d Cir. 2000) .........................................................6

*Ellis v. Edward D. Jones & Co.*,
    527 F. Supp. 2d 439 (W.D. Pa. 2007).....................................12-13

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)...............................................................6, 10

*Heller v. Shaw Indus., Inc.*,
    167 F.3d 146 (3d Cir. 1999) .......................................................10

*In re Brand Name Prescription Drugs Antitrust Litigation*,
    1999 U.S. Dist. LEXIS 550 (N.D. Ill. Jan. 19, 1999),
    *aff'd on other grounds*, 186 F.3d 781 (7th Cir. 1999)..................................10

*In re Findley*,
    993 F.2d 7 (2d Cir. 1993)..........................................................16

*In re General Motors Corp. Engine Interchange Litig.*,
    594 F.2d 1106 (7th Cir. 1979) ..................................................12

*In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3rd Cir. 1995)....................................................................11-13

*In re Joint Eastern and Southern Dist. Asbestos Litig.*,
   982 F.2d 721 (2d Cir. 1992) ......................................................................16

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994) ........................................................................10

*In re Prudential Ins. Co. of Am. Sales Pract. Litig.*,
   962 F. Supp. 450 (D.N.J. 1997)................................................................ 4-5

*In re TMI Litigation*,
   193 F.3d 613 (3d Cir. 1999) .................................................................10-11

*International Precious Metals Corp. v. Waters*,
   530 U.S. 1223 (2000) ...................................................................................8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)...........................................................................1, 6, 9

*Morgan v. Gay*,
   471 F.3d 469 (3d Cir. 2006) ......................................................................17

*Masters v. Wilhemina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007) ................................................................... 7-8

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)....................................................................................17

*Oddi  v. Ford Motor Co.*,
   234 F.3d 136 (3d Cir. 2000) ........................................................................9

*O'Neil v. Simplicity, Inc.*,
   574 F.3d 501 (8th Cir. 2009) .....................................................................16

*Parker v. Time Warner Entm't Co., L.P.*,
   239 F.R.D. 318 (E.D.N.Y. 2007) ..............................................................18

*Petruzzi's, Inc. v. Darling-Delaware Co.*,
   880 F. Supp. 292, 297 (M.D. Pa. 1995)...............................................12, 18

*Strong v. BellSouth Tel., Inc.,*
    137 F.3d 844 (5th Cir. 1998) ........................................................................8

*True v. Am. Honda Motor Co.,*
    2010 U.S. Dist. LEXIS 23545 (C.D. Cal. Feb. 26, 2010) ........................18-19

## STATUTES AND FEDERAL RULES

15 U.S.C. § 77z-1(a)(6) ..........................................................................................7

15 U.S.C. § 78u-4(a)(6) ..........................................................................................7

29 U.S.C. § 216(b) ................................................................................................13

Fed. R. Civ. Proc. 23 ........................................................................................12-13

Fed. R. Civ. Proc. 23(a)(2) ...................................................................................17

Fed. R. Civ. Proc. 23(a)(3) ..............................................................................15, 17

Fed. R. Civ. Proc. 23(a)(4) ...........................................................................1, 15-17

Fed. R. Civ. Proc. 23(e) .........................................................................................17

Fed. R. Civ. Proc. 23(e)(2) ..............................................................................14, 17

Fed. R. Civ. Proc. 23(e)(5) ....................................................................................18

Fed. R. Civ. Proc. 23(h) ..........................................................................................7

Fed. R. Evid. 702 ....................................................................................................9

## OTHER AUTHORITIES

Abel, Richard, *et al.*, Letter to Steven C. Krane (Sept. 17, 2007)...........................14

Brickman, Lester, *The Rent Seekers: Lawyers, Torts and Contingency Fees*
    (forthcoming Cambridge University Press 2010)...........................................14

Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71 (2004) ...7

Model Rules of Professional Conduct....................................................................14

Nelson, Scott, "Bugged by VW Settlement,"
    Public Citizen Consumer Law & Policy Blog (June 11, 2010), available at
    http://pubcit.typepad.com/clpblog/2010/06/bugged-by-vw-settlement.html ..19

Notes of Advisory Committee on 2003 Amendments to Rule 23(h) .........................7

Silver, Charles, *Due Process and the Lodestar Method*,
    74 Tulane L. Rev. 1809 (2000)....................................................................14

## INTRODUCTION

Objector Joshua West, who suffered over $1000 of damage from the alleged product defect at issue in this lawsuit, but is entitled to zero under the settlement, and three other class members joining his objection provided this Court five independent grounds for rejecting the settlement. *First*, the proposed payment to Putative Class Counsel of $23 million (nearly four times an exaggerated lodestar) dwarfed the class recovery of $8 million; *second*, many class members received no pecuniary relief and only worthless injunctive relief; *third*, the proposed settlement treated similarly situated class members differently without any basis for distinguishing between the subclasses; *fourth*, the class representatives' claims were not typical of a large subclass of the class; and *fifth*, the structure of the settlement was designed to maximize the attorneys' fee award at the expense of the class, a breach of fiduciary duty that violated Rule 23(a)(4).

In defense of the settlement, Putative Class Counsel rely heavily upon the report of Dr. George Eads, which purports to value the non-pecuniary relief at over $100 million. But the Eads report makes basic economic blunders, double-counts class benefits in violation of precedent that Putative Class Counsel themselves cite, fails to make appropriate economic offsets, and does not meet the admissibility standards of *Daubert* and *Kumho Tire*. Putative Class Counsel not only fail to

prove that the injunctive relief to class members who receive only a letter in the mail has any value, they fail to prove that the costs of that letter to the class do not exceed the benefits.

With respect to West's legal arguments, Putative Class Counsel either refuse to address the arguments head-on or resort to affirmative misrepresentations of the law or *ad hominem* attacks on West's counsel.  In the case of addressing the intra-class conflicts, Putative Class Counsel contradict their own previous filings in the case.

For these five independent reasons outlined in West's original objection, the Court should reject the settlement.  If the settlement is approved, attorneys' fees should be based on the actual class recovery in this case.

## I.   The Eads Opinion of Settlement Value Double-Counts Benefits, Ignores Marginal Costs to the Class, and Thus Overstates Class Benefits and Flunks *Daubert*.

Putative Class Counsel argue that the settlement is worth $133.8 million beyond the $8 million in tangible benefits.  Their only basis for this claim is the expert report of Dr. George Eads.  But Dr. Eads's report makes basic economic errors, double-counts some benefits, and fails to offset those benefits with the additional costs to the class from the settlement.  As a result, Dr. Eads's estimate is wildly overstated; it's entirely possible that the settlement leaves the class worse

off, but he fails to account for that possibility.   The methodology is simply insufficient under *Daubert*, and Dr. Eads's report cannot be admitted into evidence. Dr. Eads's estimate is of insufficient reliability to justify the valuation that the Putative Class Counsel give the settlement.   As such, the only evidence of class benefit is the $8 million settlement fund—which even Dr. Eads admits will leave about half of the class members with actual damages uncompensated.

**A.     Dr. Eads Double-Counts, and Thus Exaggerates, Class Benefits.**

Dr. Eads calculates that the service actions that the settlement provides for certain subclasses of the class (what he calls Settlement Subclasses 1 through 3) provides $55.3 million in preventative service that will avoid $24.4 million in repair costs and $24.1 million in diminution in value.  (Docket No. 197-10 at 9-15.)[1] He adds all three numbers in calculating the value of the settlement to the subclass.

But, even assuming *arguendo* that these numbers are accurate, this is double-counting.   The cost of preventative service and the benefit from projected savings from avoiding repair costs are not ***both*** a benefit to the subclass.

To see why, let us imagine a hypothetical settlement where Volkswagen did not provide any preventative service, but instead simply reimbursed the subclass

---

[1] Note that by Dr. Eads's own estimate, one of the service actions sought by Putative Class Counsel was socially wasteful: in Service Action JU, Volkswagen spent $1.8 million to avoid $0.3 million in damage to the class.  *Id.*

members for repair costs and diminution in value when sunroof leaks occurred.  In such a case, Volkswagen would not pay the $55.3 million in preventative service costs, but would instead reimburse the subclass members for $48.5 million to compensate them for damage caused by the lack of preventative service.

In this hypothetical settlement, class members are in ***exactly the same economic and legal place*** that they would be under the proposed settlement: in one, they have no damages, in the other they are fully compensated for their damages. But according to Dr. Eads's calculations, one settlement is worth $55.3 million more than the other.

This is absurdity that makes no economic sense.  The value of this part of the settlement to the subclass is the lesser of the $48.5 million in benefit and the $55.3 million Volkswagen allegedly expends upon it—not both.[2]  *See also In re*

---

[2] And even the $48.5 million is an exaggeration.  It includes $24.4 million of "benefit" from Service Actions P9, P9/66C8, and JU, which are not a consequence of the settlement, and not consideration for the release provided by the class.  Dr. Eads also falsely assumes that there will be 100% participation in the new service action.  (Docket No. 197-10 at 12.)  In fact, previous participation in the service actions ranged from 71.4% to 77.6%.  *Id.*  The correct figure for likely value to the class of the service actions is 71.4% to 77.6% of $24.1 million, or approximately $17.2 to $18.7 million—a small fraction of what Dr. Eads's $134 million figure for non-pecuniary benefit.  And it seems that about $6 million in benefit from the three extant Service Actions is purely hypothetical, consisting of class members who did not respond to the service notice and suffered or will suffer uncompensated water ingress damage.  *Id.*

---

*Prudential Ins. Co. of Am. Sales Pract. Litig.*, 962 F. Supp. 450, 557 (D.N.J. 1997) ("The cost of the relief to Prudential is not the measure of the class member benefits. The value of the relief to the class… is what matters.") (cited by Putative Class Counsel at Docket No. 213-3 at 26 n. 10). Dr. Eads has exaggerated the value of the settlement by $55.3 million.[3]

## B.    Dr. Eads Ignores Offsetting Costs to the Class, Thus Overvaluing the Class Benefits of the Notification Letter.

What Dr. Eads calls Subclasses 4 through 7 consist of 1,924,403 vehicle owners or lessees (Docket 197-10 at 3) that will receive or have received an "educational" letter about preventing sunroof water ingress.   Dr. Eads—unrealistically assuming that 100% of the letter recipients were previously unaware of the need for maintenance and that 100% of the letter recipients will now engage in preventative maintenance—claims that this letter will provide the class member recipients of the letter $28.7 million in benefits.  (Docket 197-10 at 16.)

But Dr. Eads commits a basic economic blunder in making this calculation.  It is not the case that the knowledge transmitted by the letter will by itself prevent

---

[3] *See also* Ordover Report, Docket No. 219-6 at 6 *ff.*; *id.* at 10 *ff.* (noting double-counting of avoided repair costs and dimunition of value). Even within the double-counting, there is exaggeration.  Dr. Eads admittedly exaggerates the value of Service Actions P9, P9/66C8, and JU by assuming that car owners who never responded to the recall received the full benefit of the service action, inflating the value of the settlement by nearly $10 million.  (Docket No. 197-10 at 12.)

problems with the sunroof.  Rather, the letter merely notifies class members that

they should engage in preventative maintenance.  But that maintenance is not free to

the class: class members will have to incur costs to achieve the benefits of the

maintenance.  If a subclass member incurs an average of $30 in costs performing

preventative maintenance, then the letter will cost subclass members $57.7 million

out of pocket to achieve $28.7 million in benefits—in other words, the maintenance

letter would not be a net benefit to the subclass, but a net *cost* to the class.  Now,

that $30 figure might be too high on average—but it might also be too low.  After

all, Dr. Eads himself calculates the cost of labor for VW repair personnel at

$91.52/hour, meaning it would only take an average of twenty minutes of labor per

subclass member over the life of the vehicle to reach that $30 figure.

(Docket 197-10 at 12.)  What we do know is that the average cost is greater than

zero, but Dr. Eads falsely assumes it to be zero, thus exaggerating the benefit to the

class.  (The Ordover report, Docket No. 219-6, simply assumes the existence of net

benefits from the letter based on the Eads report, and attempts no independent

support for the valuation.  The *ipse dixit* claim of economic benefit from the letter is

not admissible expert opinion.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997);

*see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999); *Elcock v.

Kmart Corp.*, 233 F.3d 734, 749 (3d Cir. 2000).)  The notification letter might be

asking class members to incur a collective $60 million or more in maintenance costs to achieve a collective $28.7 million in benefits.  The Settling Parties have failed to meet their burden proving benefit to the subclass of the notification letter, and this Court cannot ascribe any benefit to that letter.

## C.    Dr. Eads Has Exaggerated Class Benefits by at Least $89 Million to $115 Million.

Even without challenging some of Dr. Eads's questionable assumptions, simply subtracting the more obvious blunders exaggerating class benefit has dramatic effects:

**Dr. Eads calculation**                                      $141,820,208

*Less* double-counting of preventative costs              - $55,294,592

*Less* benefits from unrealistic assumption of 100%        - $5,411,004
response rate (generous 77.6% response rate assumed
instead)[4]

---

[4] Putative Class Counsel argue, citing *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), that they are entitled to count as "class benefits" the illusory benefits that no class members actually claim.  (Docket No. 213-3 at 25-26.)  Not so: *Boeing* has been superseded by amendments to Fed. R. Civ. Proc. 23(h).  Notes of Advisory Committee on 2003 Amendments to Rule 23(h) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest *actually paid to the class*" (emphasis added) (*citing* 15 U.S.C. § 77z-1(a)(6) *and* 15 U.S.C. § 78u-4(a)(6) (Private Securities Litigation Reform Act))); *see also* Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71 (2004) ("the fee awards should be based only on the benefits actually delivered").  *But compare Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423, 437 (2d

| | |
|---|---|
| *Less* double-counting of avoided diminution of value after avoided repair costs | - $10,929,419 |
| *Less* valueless "educational preventative maintenance information" (generously assuming that the value is zero, rather than negative) | - $28,773,444 |
| **Maximum value of settlement**, including service actions already taken | **$41,411,749** |
| *Less* value of service actions already taken that are unaffected by the settlement | - $13,516,133 |
| *Less* value of reimbursements unrelated to settlement fund | - $1,492,347 |
| **Maximum marginal value of settlement** | **$26,403,269** |

The *maximum marginal* value of the settlement to the entire class is $26,403,269, of which only $8 million is pecuniary benefits. If one improperly includes actions Volkswagen has previously voluntarily taken as part of the "settlement," then the value of the settlement is, at most, $41,411,749, with more than a million class members getting zero. Dr. Eads, using improper economic

---

Cir. 2007) (following *Boeing* without citing it or Rule 23(h)) *with Strong v. BellSouth Tel., Inc.,* 137 F.3d 844, 852-53 (5th Cir. 1998) (holding *Boeing* does not apply where, like here, common fund was "phantom"). *See also International Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000) (O'Connor, J., respecting denial of *certiorari*) (noting that *Boeing* does not "address whether there must at least be some rational connection between the fee award and the amount of the actual distribution to the class" and arguing that blindly applying *Boeing* would "the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery.").

---

methodology, has exaggerated the value of the settlement by at least almost three-fold to six-fold.  If one reasonably assumes that the costs imposed on the class by the educational letter exceed the benefits—an assumption that is not rebutted by any of the evidence provided by Putative Class Counsel, who have the burden of proof of the value of the settlement, especially given the track record of Putative Class Counsel in demanding relief where the costs admittedly exceed the benefits.  The total value of the non-pecuniary parts of the settlement could be zero or even negative.

**D.     Given the Basic Errors in Dr. Eads's Report, the Remaining Estimates of Non-Pecuniary Value Cannot Be Credited.**

Expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. . . ."  Fed. R. Evid. 702.  The party seeking to introduce the expert testimony bears the burden of establishing its admissibility.  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 n.10 (1993); *Oddi  v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000).  The *Daubert* standard requiring expert reliability applies to economic experts like Dr. Eads.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Witness expertise such as Dr. Eads has is necessary, but not sufficient, to establish admissibility: it is appropriate to exclude the testimony of a Nobel Prize

winner if his or her underlying methodology is unreliable. *In re Brand Name Prescription Drugs Antitrust Litigation*, 1999 U.S. Dist. LEXIS 550 (N.D. Ill. Jan. 19, 1999) (excluding testimony of Nobel Prize-winning economist Robert Lucas when opinions not based on evidence), *aff'd on other grounds*, 186 F.3d 781 (7th Cir. 1999); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Dr. Eads's report, by virtue of its unreliable methodology, its double-counting, its willful blindness to offsetting costs to the class, and its exaggerations for litigation purposes, cannot be credited at all.  Expert opinion evidence must be rejected where, as here, "there is simply too great an analytical gap between the data and the opinion proffered." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999) (court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used.").  The conclusions of the Eads report "must be rejected, not simply because they could not 'reliably flow from the facts known to the expert and the

methodology used,' but rather because they fly in the face of reality." *In re TMI Litigation*, 193 F.3d 613, 682-83 (3d Cir. 1999) (internal citation omitted).

Given the multiple legal and economic errors in the readily understandable methodology—errors that consistently overstate the total class benefit—Dr. Eads's more inscrutable calculations of diminution in value and damages averted should not be given any weight.  The entire report must be rejected as inadmissible.

As such, there is no reliable evidence for non-pecuniary benefit to the class—even admitting Dr. Eads's report into evidence there is not sufficient evidence to conclude that the injunctive relief is a benefit, rather than a net cost, to the class. This Court must value the settlement at $8 million at most.  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) (benefits to class must be ascertainable to be credited as benefits to the class).

## II.    Putative Class Counsel Misrepresent Precedent.

West heavily relied upon the binding precedent of *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995), to argue that this settlement should be rejected.  Rather than address these arguments, and what the Third Circuit says about evaluating class action settlements, Putative Class Counsel argue that this case, and others West cites, are "inapplicable" because the courts in question "approved the settlements in those cases."  (Docket No. 213-3 at 33 n. 12.)

This is a *non sequitur*.  Precedent is precedent: nothing bars an objector from citing the opinion of a court that approved a settlement, just as nothing bars Putative Class Counsel from citing the opinion of a court that rejected a settlement.  Opinions establish precedential reasoning for future courts to follow—binding precedential reasoning for this Court in the case of Third Circuit precedent such as *GMC Pick-Up Truck*.

But even by Putative Class Counsel's twisted reasoning, they are dead wrong. *GMC Pick-Up Truck* reversed a district court's approval of a settlement as an abuse of discretion.  *Compare also* Docket No. 213-3 at 33 n. 12 *with In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1141 (7th Cir. 1979) (reversing approval of settlement); *Petruzzi's v. Darling-Delaware Co.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) (rejecting settlement) ("It simply cannot be said that a settlement which favors only 50% of the class is in the best interest of the entire class."); *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 376 (D. Kan. 1971) (declining to approve settlement and appointing attorney for dissenting class members because "it does appear that there may be presently involved some conflict of interest."); *and Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 460 (W.D. Pa. 2007) (denying Rule 23

certification, albeit approving settlement under different standard of 29 U.S.C.

§ 216(b)).

West takes no position on whether Putative Class Counsel's 180-degree

misrepresentations of case holdings rise to the level of sanctionable misconduct, but

the Court can certainly draw the adverse inference from the fact that Putative Class

Counsel apparently felt it had no other way to get around the binding *GMC Pick-Up*

*Truck* precedent.[5]

## III.   The Fee Arrangement Breaches the Attorneys' Duty to the Class.

West argued that the settlement structure, which segregated the fee award

from the class benefit such that any reduction in the fee request would revert to the

defendants, rather than the class, was a breach of the Putative Class Counsel's

fiduciary duty to the class.

As West noted, such an arrangement has two purposes: (1) to inflate the fee

at the class's expense; and (2) to reduce the court's incentive to carefully scrutinize

the fee for unreasonableness, since any reduction benefits *only* the defendant.  *See*

---

[5] Note further how Putative Class Counsel ignore the Third Circuit *GM Pick-Up Truck* precedent in blithely and falsely asserting that "the low number of objections and opt-outs demonstrates overwhelming support for the settlement."  (Docket No. 213-3 at 30.)   Putative Class Counsel further lie to the court when they say "objectors' argument to the contrary is ***completely unsupported by any case law***."  *Compare id.* (emphasis added) with West Obj. at 12-16 (citing multiple cases, including *GM Pick-Up Truck*).

---

Charles Silver, *Due Process and the Lodestar Method*, 74 TULANE L. REV. 1809, 1839 (2000) (this type of fee arrangement is "a strategic effort to insulate a fee award from attack").

Negotiating a settlement that elevates an attorney's financial interests over that of the class—no matter how much money is involved—cannot be a "fair" or "adequate" settlement under Rule 23(e)(2); at a minimum, it is a breach of the Rule 23(a)(4) requirement that "the representative parties … fairly and adequately protect the interests of the class." *See also* Lester Brickman, *The Rent Seekers: Lawyers, Torts and Contingency Fees* (forthcoming Cambridge University Press 2010) (arguing that such arrangements are *per se* unethical under the Model Rules of Professional Conduct); Richard Abel, *et al.*, Letter to Steven C. Krane (Sept. 17, 2007) (letter of twenty law professors to Chairman of ABA Standing Committee on Ethics and Professional Responsibility arguing same) (attached as Exhibit 1).

In response, Putative Class Counsel mischaracterize this argument as a claim that plaintiffs cannot "negotiate their fee only after completing negotiating of the settlement." This is orthogonal to West's argument. Nothing in West's argument depends upon the timing of negotiations. The question is not over the separation of the *negotiations*, but the separation of the *pot of money*. It is surely possible to hold a separate negotiation for the clear sailing of attorneys' fees without establishing

reversion to the defendant.  Volkswagen committed up to $38 million in cash for the settlement, but class members have access to only $8 million of that money because Putative Class Counsel put their own self-interest ahead of the interest of their clients.  The failure of Putative Class Counsel to defend the ethics of their breach of fiduciary duty to their putative clients is evidence that the practice is indefensible, and that the Court should reject any settlement under Rule 23(a)(4).

## IV.    Plaintiffs Admit That This Settlement Class Cannot Be Certified.

A court cannot certify a settlement class unless "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. Proc. 23(a)(3).  This court gave preliminary approval to the settlement based on the representation of the plaintiffs that this was so.  Docket No. 163-1 at 11-12.

West objected that the settlement treated different class members differently: class members with future claims against Volkswagen receive nothing; class members such as West who have suffered damages are improperly told by the notice and the settlement administrator that they receive nothing (though, according to Putative Class Counsel, they are in fact entitled to a second tier of relief if the

claims fund is not exhausted).[6]   The intra-class conflicts of interest prevent

settlement approval.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *In

re Joint Eastern and Southern Dist. Asbestos Litig.*, 982 F.2d 721, 741-43 (2d Cir.

1992) (decertifying class under Rule 23(a)(4) because of conflicts of interest

between different segments of class), *modified on reh'g on other grounds sub nom.

In re Findley*, 993 F.2d 7 (2d Cir. 1993).

In defense of the settlement, Putative Class Counsel do not even address

*Amchem*.[7]   Instead, they disclaim their earlier arguments to the court, and instead

argue that the settlement is fair because different class members have different

claims. (Docket 213-3 at 27-28.) According to Putative Class Counsel, many

members of the class are in fact entitled to nothing because the alleged defect has

not yet manifested itself.  *Id.* (*citing Briehl v. General Motors Corp.*, 172 F.3d 623

(8th Cir. 1999) *and O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009)).[8]

---

[6] Dr. Eads estimates that there will be over $14 million of claims on the $8 million reimbursement fund, so it is far from clear that any class members will be eligible for the Section 6.1 relief.

[7] Putative Class Counsel cite *Amchem*, but only for uncontroversial propositions irrelevant to West's argument why the settlement fails to meet *Amchem* standards.

[8] It is far from clear why Putative Class Counsel think this argument addresses the *Amchem* problem, since that case also involved class members with future injuries that had not yet manifested.

---

Putative Class Counsel cannot have it both ways.   They have already obtained preliminary approval by representing to this court that the class representatives and the settlement class met Fed. R. Civ. Proc. 23(a)(2) and 23(a)(3).  If so, then all members of the settlement class are entitled to common treatment under the settlement because the claims of the class representatives are typical of the claims of the settlement class, and Putative Class Counsel are judicially estopped from claiming otherwise.  *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (judicial estoppel protects "the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment"); *Morgan v. Gay*, 471 F.3d 469, 477 (3d Cir. 2006). Either the settlement fails Fed. R. Civ. Proc. 23(a)(4) and 23(e) because of the intra-class conflicts of interest, or the settlement class must be decertified because the claims of the class representatives are not common to or typical of the claims of the vast majority of class members who are releasing their claims under this settlement.[9]

---

[9] Putative Class Counsel claim that the ambiguously drafted Section 6.1 of the Settlement permits remaining class members a claim on the residual amounts in the Reimbursement Fund.   But they make no effort to defend the lack of plain-language notice informing class members of their potential rights to make claims on the Reimbursement Fund: in fact, the settlement notice says class members are ***not*** eligible to make residual claims, and this is what the settlement administrator is telling class members such as Mr. West.  The proposed settlement fails to meet the standards of Rules 23(a)(2), 23(a)(3), 23(a)(4), and 23(e)(2) in any event, but even

---

See also *Parker v. Time Warner Entm't Co., L.P.*, 239 F.R.D. 318, 340 (E.D.N.Y. 2007) (settlement distributionally unfair where some subclasses get nothing); *Petruzzi's*, 880 F. Supp. at 299-300 ("an advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of [class] members").

## V.     Plaintiffs' *Ad Hominem* Attacks on West's Counsel Are Illegitimate.

Plaintiffs, rather than addressing West's arguments, instead attack West's counsel, though suffer from epistemic closure in that they seem to view as self-evident that "tort-reform advocate" is a discrediting insult rather than words of high praise.  It is important to recognize that the objectors here are not West's counsel, but include West—a class member who has suffered over $1000 in damages from what the plaintiffs call a product defect, but is eligible for zero recovery under the settlement.   Moreover, nothing in Rule 23(e)(5) states that objections filed by attorneys who are tort-reform advocates are to be discounted.  *Cf. also True v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 23545 at *67, 2010 WL 707338 at *22 (C.D. Cal. Feb. 26, 2010) ("Plaintiffs attack many of the Objectors' counsel because they have represented objectors in other actions in the past. . . . This has no

---

if the Court were to otherwise find the settlement fair, it could not be approved without corrective notice.

---

greater bearing on the merits of the objections raised than a plaintiff's counsel's experience in filing class action suits speaks to the merits of claims he brings.").

Plaintiffs complain that West's counsel has been quoted as saying that some plaintiffs' attorneys "use litigation to extract rent for themselves." Indeed. And a case where plaintiffs' attorneys seek over $23 million—nearly $2000/hour, including over $2900/hour for two of the attorneys—for themselves when recovering only $8 million for their putative clients is a poster child for the problem.

But even if one were to accept the flawed premise of Plaintiffs' argument, it fails. The weblog of Public Citizen, a progressive public-interest law firm ideologically opposed to tort reform, has criticized the settlement in this case because "a subclass shouldn't be included in a settlement that provides it no arguable benefit." Scott Nelson, "Bugged by VW Settlement," Public Citizen Consumer Law & Policy Blog (June 11, 2010), available at http://pubcit.typepad.com/clpblog/2010/06/bugged-by-vw-settlement.html. This settlement is so bad that it unites tort-reform advocates and opponents.

## CONCLUSION

Putative Class Counsel have failed to refute the five independent reasons for rejecting this settlement. The expert report Plaintiffs rely upon systematically exaggerates class benefits while systematically ignoring marginal costs imposed

upon the class by the settlement. Indeed, Plaintiffs have failed to prove that the injunctive relief that is the only benefit received by over a million class members is a net benefit to the class, rather than a net cost that makes the class collectively worse off.

The settlement as it is currently constructed—with the vast majority of the class both receiving nothing of value and unrepresented by the class representatives—cannot be approved.   And under no circumstances should the Court grant a $23 million request for fees and costs when the plaintiffs have failed to adduce admissible evidence quantifying any class benefit beyond an $8 million reimbursement fund.

Dated:  July 12, 2010

Respectfully submitted,

*/s/ David M. Nieporent*
David M. Nieporent
SAMUEL & STEIN
38 West 32nd Street, Suite 1110
New York, NY 10001
Phone: (212) 563-9884

Theodore H. Frank (*pro hac vice* pending)
CENTER FOR
CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tedfrank@gmail.com

Attorneys for West Objectors

## PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois.  I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On July 12, 2010, I served the attached:

**RESPONSE OF JOSHUA WEST, LESTER BRICKMAN,
DARREN MCKINNEY, AND MICHAEL SULLIVAN
TO MOTIONS FOR FINAL APPROVAL AND ATTORNEYS' FEES**

 X   By First-Class Mail in that I caused such envelope(s) to be delivered via certified First-Class Mail, return receipt requested to the addressee(s) designated.

| | |
|---|---|
| Mazie Slater Katz & Freeman, LLC<br>103 Eisenhower Parkway<br>Roseland, NJ 07068 | Schoengold & Sporn, P.C.<br>19 Fulton Street, Suite 407<br>New York, NY 10038 |
| Chase Kurshan Herzfled & Rubin, LLC<br>354 Eisenhower Parkway<br>Livingston, NJ 07039 | Water Ingress Administrator<br>P.O. Box 2298<br>Faribault, MN 55021-2433 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 12, 2010.


*/s/ M. Frank Bednarz*                              
M.Frank Bednarz