# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN M. DEWEY, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>VOLKSWAGEN AG, *et al.*,<br><br>　　　　　Defendants. | Case Nos.:<br><br>07-CV-2249-FSH-PS<br>07-CV-2361-FSH-PS<br>(consolidated)<br><br>Date:  October 4, 2010<br>Time: n/a<br>Courtroom:  10 (Newark) |

## DECLARATION OF THEODORE H. FRANK
## IN SUPPORT OF CROSS-MOTION FOR INJUNCTION
## AND IN OPPOSITION TO MOTION FOR APPEAL BOND

　　　　　　　　　　　　　　　　　　　Theodore H. Frank (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　CENTER FOR
　　　　　　　　　　　　　　　　　　　CLASS ACTION FAIRNESS
　　　　　　　　　　　　　　　　　　　1718 M Street NW, No. 236
　　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　　Phone: (703) 203-3848
　　　　　　　　　　　　　　　　　　　Email: tedfrank@gmail.com

　　　　　　　　　　　　　　　　　　　David M. Nieporent
　　　　　　　　　　　　　　　　　　　SAMUEL & STEIN
　　　　　　　　　　　　　　　　　　　38 West 32nd Street, Suite 1110
　　　　　　　　　　　　　　　　　　　New York, NY 10001
　　　　　　　　　　　　　　　　　　　Phone: (212) 563-9884

　　　　　　　　　　　　　　　　　　　Attorneys for West Objectors

Theodore H. Frank, under penalty of perjury, declares:

## The Center of Class Action Fairness

1. I am the President of the Center for Class Action Fairness, which I founded in 2009. I attended the University of Chicago Law School on a Public Service Scholarship, graduated there with high honors in 1994, and was elected to the American Law Institute in 2008. I have testified before federal and state legislative subcommittees and spoken at several law schools across the country about the law and economics of class actions and class action settlements, and have given interviews to numerous publications about the subject, including the *New York Times*, the *Wall Street Journal*, and the *Chicago Tribune*.

2. The Center, a project of the 501(c)(3) non-profit Donors Trust, is a non-profit public interest law firm that focuses on representing *pro bono* consumers that wish to object to class action settlements. It consists of myself and two other attorneys. The Center has been profiled in *Forbes*, the *National Law Journal*, the television program *Stossel*, and is featured in the April 2010 issue of the *ABA Journal*.

3. While a number of professional objectors have business models where they threaten to make objections unless they are paid off, the Center does not engage in such tactics. It has never offered to settle a class action objection in

exchange for a cash payment.  To date, the Center's only source of income has been charitable donations and court-awarded attorneys' fees.  I draw a salary as an independent contractor (and pay self-employment taxes) substantially below what I made as an attorney in private practice.

4. Indeed, because the Center has non-profit tax status, it is not allowed to bring class action objections for the sole purpose of seeking an attorney's fee.  If I were to seek an extortionate settlement of attorneys' fees from the plaintiffs in exchange for withdrawing an appeal, I would jeopardize the non-profit status of the Center.  *See* Rev. Proc. 92-59, 1992-2 C.B. 411.  In my experience, it has been plaintiffs' attorneys who have (unsuccessfully) sought to pay me to withdraw appeals.

5. The Center does not indiscriminately bring class action settlement objections.  Nearly all of its cases involve unsolicited inquiries from class members, and the Center has rejected a substantial number of unsolicited requests to object to class action settlements after analysis of the controverted settlements.

### Plaintiffs' Bond Motion

6. Plaintiffs' counsel make several *ad hominem* arguments about me in their September 10 Brief in Support of Motion Requiring the Objector Appellants to

Post a Bond.  (Dkt. No. 267-2.)  These characterizations purport to show that my clients should be required to post bond.

7. For example, the motion characterize me as a "self-professed tort-reform advocate." (*Id.* at 10.)  While this is an accurate description, they do not explain why parties represented by tort reform advocates should be disadvantaged when appealing an order.

8. Similarly, they argue that I am a "frequent contributor to www.Overlawyered.com." (*Id.*)  This is also true, though I haven't frequently contributed to Overlawyered since 2008.  But I cannot imagine why my clients' appellate rights should be compromised due to their attorney's contributions to a pioneering and award-winning law blog.

9. Finally, the plaintiffs propose to prejudice my clients because "In an [sic] recently published article about professional objectors, Mr. Frank stated that many plaintiff attorneys 'use litigation to extract rent for themselves.'" (*Id.*)  In fact, an unabridged passage shows that the quote primarily conveyed my distaste for abusive *professional objectors*:

> In general, Frank finds fault with both sides of the debate.
> "They're doing the same thing a lot of plaintiff's attorneys are doing," Frank said of the professional objectors, "they're using litigation to extract rent for themselves."

Declaration of Theodore H. Frank
07-CV-2249-FSH-PS                                3

Brendan Kearney, "The Deal Breakers: A look at professional class action objectors in Md.," THE DAILY RECORD (Baltimore), attached in Dkt. No. 266-2 at 11-13. The plaintiffs do not explain why expressing distaste for professional objectors implies that I am an abusive professional objector myself.

10. The very same article notes that the Center is a non-profit and does not seek payment from plaintiffs' attorneys to withdraw objections. Dkt. No. 266-2 at 13.

11. Apparently, the plaintiffs' argue that my clients should be prejudiced because they have chosen a lawyer who engages in protected free speech. The plaintiffs do not and cannot explain why my publicly-stated opinions about class action abuse should affect my clients' rights whatsoever.

## Appellate Costs

12. Plaintiffs assert in their briefs that their appellate costs will be over $25,000. But in their opening papers, they were not willing to submit a declaration under oath that their costs under 28 U.S.C. § 1920 would be so high. Anyone who did so would be committing perjury.

13. The Center's appellate costs recoverable under Fed. R. App. Proc. 39 in this action are likely to be substantially under $10,000, reflecting the docket fee for filing an appeal plus the costs of preparing a transcript and a record under Fed.

Declaration of Theodore H. Frank
07-CV-2249-FSH-PS                              4

R. App. Proc. 30, plus the costs of copying opening and reply briefs and an appendix. Those costs will be even lower if the appellants can agree to file a joint appendix.

14. The appellate costs for plaintiffs under Fed. R. App. Proc. 39 will be even lower than the Center's appellate costs: the plaintiffs are appellees, and thus can rely upon the appendix that the appellants file and the transcripts that the appellants purchase; the appellees do not have to pay a docket fee on appeal. It will be exceedingly unlikely that they will need to file a supplemental appendix, because the appellants will be including the parts of the record relevant to the fairness hearing and the appeal in their own appendix; in my experience, any supplemental appendix filed will likely only include a few documents. Plaintiffs' sole expense of costs recoverable under Fed. R. App. Proc. 39 will be the costs of printing and copying their response brief and a considerably smaller supplemental appendix, which should be well under $2,000.

Dated: Washington, DC
September 20, 2010

/s/ *Theodore H. Frank*
Theodore H. Frank