**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN M. DEWEY, et al.,** : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| v. : | **Civil Action No. 07-2249** |
| : | |
| **VOLKSWAGEN OF AMERICA, et al.,** : | |
| : | |
| **Defendants.** : | |
| : | |
| **JACQUELINE DELGUERCIO, et al.,** : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| v. : | **Civil Action No. 07-2361** |
| : | |
| **VOLKSWAGEN OF AMERICA, et al.,** : | |
| : | |
| **Defendants.** : | |

## OPINION

**SHWARTZ, United States Magistrate Judge**

### I. INTRODUCTION

This class action concerns allegedly defective pollen filter gasket areas and sunroof drains on various Volkswagen and Audi vehicles.  It is before the Court on remand from the Court of Appeals for the Third Circuit for proceedings consistent with that Court's finding that the class could not be certified under the parties' prior settlement because the representative plaintiffs were not adequate to represent the interests of the entire class.  See Dewey v. Volkswagen

_Aktiengesellschaft_, 681 F.3d 170 (3d Cir. 2012).  On remand, the parties reached a new

settlement addressing the Third Circuit's adequacy concern, which now allows class members

who owned or leased vehicles in a so-called "residual group"[1] to seek reimbursement in the same

way as those who were in the so-called "reimbursement group."[2]  The Plaintiffs have filed a new

motion for: (1) certification of the settlement class; (2) final approval of the class settlement; (3)

an award of attorneys' fees; (4) reimbursement of costs; and (5) an incentive award.  The

Objectors who pursued an appeal to the Third Circuit have filed a separate motion for: (1)

attorneys' fees; (2) reimbursement of costs; and (3) an incentive award.  For the reasons stated in

this Opinion, the motions are granted as set forth below.

## II. BACKGROUND AND RELEVANT FACTS

For the procedural history of this matter preceding the appeal, the Court incorporates by

reference its summary of the procedural history in _Dewey v. Volkswagen of America_, 728 F.

Supp. 2d 546, 558–63 (D.N.J. 2010).  As previously stated, the Court of Appeals remanded the

case to address a single, curable structural error regarding the adequacy of the plaintiffs to

represent all class members.

Following remand, the Court convened several telephone conferences with the parties and

the objectors concerning a new settlement that would comply with the Third Circuit's ruling.

During a conference on June 26, 2012, the parties reported that they had reached an agreement as

---

[1] The residual group contained class members who "were required to wait until the reimbursement group made its claims" and "could then make 'goodwill' claims [for cash reimbursement for repairs to their vehicles from] the remaining money" in the $8 million settlement fund.  _Dewey_, 681 F.3d at 173.

[2] The reimbursement group contained class members who "received the right to [cash] reimbursement for certain qualifying damages."  _Dewey_, 681 F.3d at 173.

to the terms of a new settlement, and on June 27, 2012, the Court directed the parties to submit a joint motion for preliminary approval of the New Settlement Agreement by July 20, 2012. (Order, June 27, 2012, ECF No. 320.)  On July 19, 2012, the Court granted an extension until July 27, 2012, for the parties to submit a new settlement agreement and proposed notice to the impacted class members.  (Order, July 19, 2012, ECF No. 324.)  On July 27, 2012, the Plaintiffs submitted a motion for preliminary approval of the settlement class and the New Settlement Agreement.  (Mot., July 27, 2012, ECF No. 326.)  On July 31, 2012, the Defendants submitted a certification, (Gsovski Cert., July 31, 2012, ECF No. 329), containing a copy of the New Settlement Agreement.  The New Settlement Agreement modifies the rights of those class members formerly in the "residual group"[3] consisting of owners and lessees of the following vehicles:

> • 1998–2000 and 2007–2009 Volkswagen New Beetle with VINs 3VW—1C–7M514779 or higher, equipped with sunroof;
> • 1997–1999 Volkswagen Jetta A3 with VINs with "1W" in position 7 and 8, 1999–2000 Volkswagen Jetta A4 with VINs with "9M" in position 7 and 8, and 2008–2009 Volkswagen Jetta A5 with VINs with "1K" in position 7 and 8, equipped with sunroof;
> • 1997–1999 Volkswagen Golf/GTI A3 with VINs with "1W" in position 7 and 8, 1999–2000 Volkswagen Golf/GTI A4 with VINs with "1J" in position 7 and 8, and

---

[3]The rights of those class members formerly in the "reimbursement group" remain unchanged.  This group consists of owners and lessees of the 2001-2007 Volkswagen New Beetle with VINs below 3VW-1C-7M514779 equipped with sunroof; 2001-2005 Volkswagen Jetta A4 Sedan with VINs with "9M" in position 7 and 8 and 2001-2005 Volkswagen Jetta A4 Wagon with VINs with "1J" in position 7 and 8 equipped with sunroof; 2001-2006 Volkswagen Golf A4 and Volkswagen GTI A4 with VINs with "1J" in position 7 and 8 equipped with sunroof; 2005-2007 Volkswagen Jetta A5 with VINs with "1K" in position 7 and 8 equipped with sunroof; 2006-2007 Volkswagen Golf/GTI A5 with VINs with "1K" in position 7 and 8 equipped with sunroof; 1999-2005 Volkswagen Passat B5; 1997-2006 Audi A4, B5, and B6 Platforms in MY2005 with VINs with "8E" in position 7 and 8 and "J" or "L" or "V" or "P" or "X" in position 4, and MY2005 and MY2006 with VINs with "8H" in position 7 and 8 (including Cabrio, S, and RS version); and 1998-2005 Audi A6 C5 with VINs with "4B" in position 7 and 8 (including Allroad, S, and RS version).

2008–2009 Volkswagen Golf/GTI A5 with VINs with "1K" in position 7 and 8, equipped with sunroof;
• 1998 Volkswagen Passat B5;
• 1997 Volkswagen Passat B4 and 2006–2009 Volkswagen Passat B6 equipped with sunroof;
• 2004–2009 Volkswagen Touareg;
• 2005–2008 Audi A4 B7 Platform equipped with sunroof, in MY2005, with VINs with "8E" in position 7 and 8 and also "A" or "D" or "K" or "G" in position 4 (including S and RS versions);
• 1997 Audi A6 C4;
• 2005–2009 Audi A6 C6 equipped with sunroof with VINs with "4A" or "4F" in position 7 and 8 (including S and RS versions); and
• 1997–2009 Audi A8 (including S versions).

(Id.)[4]  The motion for preliminary approval was granted and notice of the settlement, which included deadlines to file claims and to object and seek exclusion, was sent to the class.[5]

Presently before the Court are: (1) the Plaintiffs' motions for certification of a settlement class and approval of the New Settlement Agreement, as well as an award of fees and costs to Class Counsel and incentive awards to the class representatives;[6] (2) objections to the New

_____

[4]The settlement agreement submitted in July 2012 inadvertently omitted one vehicle from its class definition, the 2001-2005 Volkswagen Jetta A4 Sedan (VIN with "9M" in position 7 and 8), but that vehicle continues to be entitled to relief under the New Settlement Agreement, (id. ¶¶ 1.31; 4.2; see also Def. Ltr., Oct. 29, 2012, ECF No. 380), and the error was corrected in a Third Supplemental Amended and Superseding Agreement of Settlement filed on November 15, 2012. (Pl. Ltr., Nov. 15, 2012, ECF No. 397.)

[5]On August 1, 2012, the Court heard oral argument by telephone regarding the preliminary approval motion.  (See Text Order, July 30, 2012, ECF No. 327.)  On August 8, 2012, the Court granted the Plaintiffs' motion for preliminary approval of the settlement class and approved the proposed form, content, and manner of notice to all members of the residual group.  (Order, Aug. 8, 2012, ECF No. 335.)  The Defendants subsequently submitted a proposed revised order that: (1) embodied the Court's handwritten modifications to the previous order; (2) corrected paragraph numbering anomalies; and (3) corrected the class definition to conform with the New Settlement Agreement.  (Ltr., Sept. 5, 2012, ECF No. 338.)  The Court signed the Amended Order on September 6, 2012.  (Am. Order, Sept. 6, 2012, ECF No. 339.)

[6]On October 16, 2012, the Plaintiffs submitted a motion for final approval of the New Settlement Agreement and for attorneys' fees and costs.  (Final Approval Mot., Oct. 16, 2012,

Settlement Agreement;[7] and (3) the motions of the West and Sibley Objectors for fees, incentive awards, and costs.[8]

Based upon the record and the governing law, the Court makes the following findings of fact and conclusions of law.

## III. JURISDICTION

### A.   Subject Matter Jurisdiction

The Court incorporates by reference its discussion of subject matter jurisdiction in

Dewey, 728 F. Supp. 2d at 563–64.

### B.   Personal Jurisdiction

The Court incorporates by reference its discussion of personal jurisdiction in Dewey, 728

---

ECF No. 370.)  On November 7, 2012, the Plaintiffs filed a supplemental brief in support of approval of the settlement.  (Br. in Support of Settl., Nov. 7, 2012, ECF No. 386.)  On November 7, 2012, the Defendants submitted a declaration from the settlement administrator.  (Eisert Decl. I, Nov. 7, 2012, ECF No. 384.)  On November 14, 2012, Class Counsel filed a list containing one hundred affected class members requesting exclusion and a list of four objections as of that date. (Pl. Ltr., Nov. 14, 2012, ECF No. 396.)  On December 4, 2012, the Defendants submitted a supplemental declaration from the settlement administrator.  (Eisert Decl. III, Dec. 4, 2012, ECF No. 412.)  On November 14, 2012, Class Counsel filed a complete list of all class members requesting exclusion, including the 105 affected class members requesting exclusion from the New Settlement Agreement.  (Pl. Ltr., Dec. 11, 2012, ECF No. 416.)

[7]The objections to the New Settlement Agreement are addressed in Section IV.C.2.a infra.

[8]On August 27, 2012, objectors Daniel Sibley and David Stevens [the "Sibley Objectors"] filed a consent motion for attorneys' fees.  (Sibley Mot., Aug. 27, 2012, ECF No. 337.)  On October 16, 2012, objectors Joshua West, Lester Brickman, Darren McKinney, and Michael Sullivan [the "West Objectors"] filed a motion for attorneys' fees and costs and for incentive awards.  (West Mot., Oct. 16, 2012, ECF No. 369.)  On December 3, 2012, the West Objectors submitted an additional declaration concerning costs.  (Frank Costs Decl., Dec. 3, 2012, ECF No. 411.)  On December 3, 2012, the Sibley Objectors filed a bill of costs.  (Sibley Bill of Costs, Dec. 3, 2012, ECF No. 413.)  On December 11, 2012, the West Objectors submitted an additional declaration concerning attorneys' fees and costs.  (Frank Supp. Fees Decl., Dec. 11, 2012, ECF No. 417.)

F. Supp. 2d at 564.  As stated therein, sufficient notice has already been provided to those class members in the "reimbursement group," whose rights have not changed from the prior settlement.  See id. at 571–72.  As to those class members in the "residual group," whose rights have changed, sufficient notice of the new settlement and an opportunity to be heard has been provided, (Dewey, ECF Nos. 326, 329, 335, 339), thereby satisfying due process and the requirements of Fed. R. Civ. P. 23(b)(3).  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812–13 (1985); In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 306 (3d Cir. 1998) ("In re Prudential"); Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 224 (D.N.J. 2005).  Specifically, pursuant to the Amended Preliminary Approval Order, notice to those class members of the settlement has been provided by: (1) mail and publication; (2) the establishment of a toll-free telephone number providing settlement information; and (3) the maintenance of a website containing notice and settlement documents.  (Am. Order, Sept. 6, 2012, ECF No. 339.)  The mailed notice provided an explanation of the settlement as well as instructions for filing a claim, objecting to the settlement, and excluding oneself from the settlement.  (Mot. for Settl. Exs. A1-8, July 27, 2012, ECF No. 326.)

     As to the website, the West Objectors learned that as of October 15, 2012, the website address listed in the mailed notice displayed information related to the 2010 settlement, rather than the 2012 settlement, and only upon clicking on what the West Objectors describe as a "non-obvious link buried in small print" would a class member be directed to a different address containing information on the New Settlement Agreement and claim submission materials.[9]

―――――――――――――――

     [9]On November 8, 2012, the West Objectors filed a Declaration by Theodore Frank concerning the settlement website.  (Frank Notice Decl. I, Nov. 8, 2012, ECF No. 389.)  The Court then issued an Order requiring the parties to submit a joint letter containing their positions

(Frank Fees Decl. ¶ 27, Oct. 15, 2012, ECF No. 369.)  By October 19, 2012, the settlement website was updated to the satisfaction of the West Objectors.  (Frank Notice Decl. I ¶ 20, Nov. 8, 2012, ECF No. 389.)  Relying on website statistics that the West Objectors received from the Defendants, from September 10, 2012 to October 14, 2012, there were 4,970 new visitors to the main website and 1,309, or 26.3%, of those visitors clicked through to the page containing information about the New Settlement Agreement, whereas from October 20 to October 31, 2012, there were 677 new visitors to the main website and 466, or 68.8%, of those visitors clicked through to the information about the New Settlement Agreement.  (Id. ¶ 22.)  Using these statistics, the West Objectors assert that the error on the website deterred or impeded class members who visited the website before approximately October 15, 2012 from getting detailed information about the 2012 settlement and thus the Defendants failed to comply with the Order that required a proper website to be hosted.  In a joint letter dated November 8, 2012, Class Counsel stated that, despite these statistics, there has been sufficient notice and opportunity to

---

on that issue and on whether the Fairness Hearing should proceed as scheduled the next day. (Order, Nov. 8, 2012, ECF No. 390.)  The parties filed that letter, (Jt. Ltr., Nov. 8, 2012, ECF Nos. 391 & 392), and, based upon the representations in the joint letter, the Court issued an Order converting the scheduled in-person Fairness Hearing into a telephonic hearing. (Order, Nov. 8, 2012, ECF No. 393.)  On November 9, 2012, the Court held that telephonic hearing, during which it addressed the settlement website issue raised in the Frank Declaration and inquired about other issues relevant to the pending motions.  On November 20, 2012, the Defendants filed a letter responding to a question the Court raised during the November 9, 2012 telephonic hearing about whether the Defendants could resolve the settlement website issue by identifying the class members who had visited the website on particular dates via internet protocol addresses.  (Def. Ltr., Nov. 20, 2012, ECF No. 401.)  The Defendants thereafter submitted declarations in support of their position that the website sufficiently informed the class members about their rights.  (Gsovski Decl., Arturi Decl., & Eisert Decl. II, Nov. 30, 2012, ECF No. 405; Corrected Decls., Dec. 3, 2012, ECF No. 408.)  On December 3, 2012, the West Objectors submitted an additional declaration regarding the website issue.  (Frank Notice Decl. II, Dec. 3, 2012, ECF No. 410.)

submit a claim, but that the website may have caused confusion before it was modified on or about October 15, 2012, (Jt. Ltr. 3, Nov. 8, 2012, ECF No. 392).  At the Fairness Hearing, however, Class Counsel pointed out that no class member reported confusion.  (Fairness Hearing II 22:00.)  The Defendants contend that the notice to the class and opportunity to submit a claim is and was at all times in full compliance with the Preliminary Approval Order and all legal requirements.  (Id.)  On November 30, 2012, the Defendants submitted declarations in further support of their position regarding the settlement website issue.  (Gsovski Decl., Arturi Decl., & Eisert Decl. II, Nov. 30, 2012, ECF No. 405.)  The declarations assert that: (1) even though information related to the 2010 settlement remained on the website, the 2012 settlement information is and was always available through a link on the page to a different website address "in a manner used throughout the World Wide Web"; (2) there is no evidence that any class members were confused and the absence of any communications from class members about the website suggests that it did not cause confusion or deter claims; (3) the statistics of the number of claims and click-through rates do not suggest any confusion; and (4) the West Objectors do not represent a confused class member and thus lack standing to object on the basis of the website issue.  (Gsovski Decl.)  In response, the West Objectors assert that: (1) the link to the 2012 settlement information was not sufficiently prominent for an objective class member to readily locate it; and (2) the claim rate of affected class members is below expectations, which suggests that the website caused confusion or deterred claims.  (Frank Notice Decl. II, Dec. 3, 2012, ECF No. 410.)

    No one contends that this is an issue of constitutional magnitude, but rather the West Objectors assert that the website issue suggests that the Defendants failed to comply with the

Preliminary Approval Order.  No party disputes the accuracy of the exhibits to the first Frank

Notice Declaration, which demonstrate that the website plainly contained the details of the 2010

settlement, including a chart stating that claims for reimbursement needed to be postmarked by

July 23, 2010.  (Frank Notice Decl. I Ex. 1 & 2, Nov. 8, 2012, ECF No. 389.)  Upon clicking a

hyperlink in an "Update" section on the right side of the page, however, class members would be

directed to information about the New Settlement Agreement.  This possible lack of clarity on

the settlement website, in isolation, could be viewed as presenting a potential risk that class

members could be confused, but the entire record must be reviewed to determine if there is a

violation of the Order as a result of this potential risk, and whether the risk requires re-

notification.  The undisputed record shows that: (1) each of the 1,095,350 class members was

mailed written materials that provided information about the settlement and a telephone number

for the claims administrator to whom the class members could pose questions, (see Eisert Decl. I

¶¶ 4-6; Notice Form, July 31, 2012, ECF No. 329); (2) the mailed notice explained that claims

for reimbursement were to be mailed with supporting documentation to an address stated on the

notice; (3) the mailed notice informed each class member that he or she could either visit the

website to obtain a declaration form if the class member lacked supporting documentation for

reimbursement or call a specific telephone number if the class member could not obtain the form

on the website; and (4) no class member contacted Class Counsel, defense counsel, the

administrator, or the Court to complain about the website or seek guidance as a result of its

contents.  (Gsovski Decl. ¶ 36; Eisert Decl. II ¶ 5; Fairness Hearing II 22:00.)  These facts

demonstrate that those class members who wanted to file a reimbursement claim had sufficient

ability to do so and had clear notice of how to seek assistance.  The Court cannot ignore the fact

that, of the 1,095,350 class members to whom notice of the New Settlement Agreement was sent, and of the 4,490 class members to have contacted the settlement administrator via telephone, e-mail, or mail, (Fairness Hearing II 10:30), not a single one expressed confusion about the website.  The West Objectors acknowledged during the second phase of the Fairness Hearing on December 5, 2012 that the complete absence of any complaint or inquiry from class members regarding the website undermines the conclusion that the website statistics show confusion or deterrence from filing claims.  (Fairness Hearing II 22:30.)

Moreover, the configuration of the website before October 15, 2012 does not require a finding that the website was deficient or failed to comply with the Preliminary Approval Order.  First, a link existed on the webpage that contained the 2012 settlement documents.  Second, as the Court observed in assessing the validity of an objection in 2010 concerning a missing link on the website, the class does not lack access to information simply because it may be slightly difficult to access the information from a particular source if there are alternative sources for that information.  See Dewey, 728 F. Supp. 2d at 580–81.  Finally, while the West Objectors argue that there were fewer additional reimbursement claims than they expected, there is no evidentiary basis to conclude that the number of new claims is lower than it should have been because of the temporary configuration of the website.  The Court therefore concludes that the notice was adequate and the website configuration prior to October 15, 2012 is not a reason to require re-notice.

Thus, the Court is satisfied that proper notice has been provided and the temporary configuration of the website did not violate the Preliminary Approval Order.  Notice of the settlement to the affected class members complied with the Preliminary Approval Order and the

exercise of personal jurisdiction over them is proper.

## C.    **Magistrate Judge Jurisdiction**

On November 10, 2009, the United States District Judge approved the parties' request to consent to Magistrate Judge jurisdiction "to conduct all settlement proceedings and enter final judgment," pursuant to 28 U.S.C. § 636(c).  (Dewey, ECF Nos. 158, 159; Delguercio, ECF No. 124.)  The named parties' consent to magistrate judge jurisdiction permits the Court to decide all issues related to the motions for final approval of the class settlement and attorneys' fees.[10]  See Dewey, 681 F.3d at 180–81.

## IV. **DISCUSSION**

## A.    **Class Certification**

For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b).  Fed. R. Civ. P. 23(a)–(b).  Class certification cannot be presumed and a class may be certified only after a rigorous analysis demonstrates that all Rule 23 requirements are met.  See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008).  Even where a plaintiff seeks certification of a settlement class,[11] as opposed

---

[10]Objector Braverman filed a motion to intervene for the purpose of objecting to Magistrate Judge jurisdiction and to enable him to have a different judge rule on his objection to Class Counsel's request for attorneys' fees, (Mot. to Intervene, Nov. 6, 2012, ECF No. 381), which was denied for failing to satisfy the elements set forth in Fed. R. Civ. P. 24.  (Order & Opinion, Nov. 21, 2012, ECF Nos. 403 & 406.)

[11] A settlement class is "a device whereby the court postpones the formal certification procedure until the parties have successfully negotiated a settlement, thus allowing a defendant to explore settlement without conceding any of its arguments against certification."  In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 508 (D.N.J. 1997) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 786 (3d Cir. 1995) ("In re Gen. Motors")) (internal citations omitted).

to formal class certification, courts "must consider the propriety of certification as if the case were to go to trial." In re Prudential, 962 F. Supp. at 508. With these rules in mind, the Court now addresses the class certification factors.

**1.      Rule 23(a)**

Under Rule 23, a class action is appropriate when:

> (1)      the class is so numerous that joinder of all members is impracticable;
> (2)      there are questions of law or fact common to the class;
> (3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)      the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are known as numerosity, commonality, typicality, and adequacy. Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). They are "meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees . . . ." Id.

As to numerosity, commonality, and typicality, the Court incorporates by reference its analysis and findings set forth in Dewey, 728 F. Supp. 2d at 565–67.

As to adequacy, the Court reviews the new settlement in light of the Third Circuit's ruling in Dewey, 681 F.3d at 180–90, to determine if the representative parties will "fairly and adequately protect the interests of the class." Id. at 181 (quoting Fed. R. Civ. P. 23(a)(4)); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004) (same). The Court must evaluate "conflicts of interest between named parties and the class they seek to represent." In re Warfarin, 391 F.3d at 532. This requires the Court to determine whether or not there is "'antagonism between [the named plaintiffs'] objectives and the objectives of the [class]', [which constitutes] a 'legally cognizable conflict of interest' between the two groups." In re Ins.

-12-

Brokerage Antitrust Litig., Civ. No. 04-5184, 2007 WL 542227, at *15 (D.N.J. Feb. 16, 2007)

(quoting Jordan v. Commonwealth Fin. Sys., Inc., 237 F.R.D. 132, 139 (E.D. Pa. 2006)).

      The Third Circuit held that the class as previously certified did not satisfy Rule 23(a)(4)

because the representative plaintiffs were each members of the "reimbursement group" and had

an incentive to carve out as many class members as possible into the unrepresented "residual

group." Dewey, 681 F.3d at 187 n.15. By eliminating the distinction between the

"reimbursement group" and the "residual group" and treating each class member similarly by

allowing each to seek reimbursement for repairs, the New Settlement Agreement resolves the

adequacy problem the Third Circuit identified. The named plaintiffs are now

in the same position as all other class members because each of them owned or leased the subject

vehicles that contained the allegedly defective plenum or sunroof drain system, received

allegedly inadequate maintenance recommendations and, as a result, suffered the same injury.

Like the putative class members, the named plaintiffs have an interest in obtaining redress for

damage or avoiding future damage caused by the allegedly defective systems. Under the New

Settlement Agreement, the representative plaintiffs have no incentive to prioritize recovery for

one group over another, since each class member will be treated similarly. By "do[ing] away

with the distinction between the reimbursement group and the residual group, and allow[ing] all

members of the class to submit reimbursements with no difference in priority," the settlement

addresses the Circuit's adequacy concerns in a way it suggested. Dewey, 681 F.3d at 189. Thus,

the proposed class representatives are adequate, and the Court appoints Jacqueline DelGuercio,

Lynda Gallo, Francis Nowicki, Kenneth Bayer, John M. Dewey, Patrick DeMartino, Patricia

Romeo, Ronald B. Marans, and Edward O. Griffin as class representatives.

2.      **Rule 23(b)**

The Court incorporates by reference its finding that the requirements of Rule 23(b) are

satisfied, as set forth in Dewey, 728 F. Supp. 2d at 568–70.

**B.      Appointment of Class Counsel**

Having certified a class for settlement purposes, and consistent with the Third Circuit's

directive to assess adequacy of counsel separately under Rule 23(g), see Dewey, 681 F.3d at 182

n.13, the Court next considers appointment of class counsel.

In appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the
action;
(ii) counsel's experience in handling class actions, other complex litigation, and
the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class; [and]

(B) may consider any other matter pertinent to counsel's ability to fairly and
adequately represent the interests of the class . . . .

Fed. R. Civ. P. 23(g).  The Court's prior discussion and findings reflect consideration of the

factors set forth in Rule 23(g).  See Dewey, 728 F. Supp. 2d at 567 (assessing counsel's

qualifications, experience, conduct, and work performed in the case).   The Court incorporates by

reference its discussion and findings concerning counsel's adequacy, and further notes that

counsel expended additional effort litigating the case on appeal, quickly revised the settlement to

comply with the Third Circuit's mandate, and promptly sought to implement the terms of the

new settlement.  (See Dewey, ECF Nos. 315, 320, 326, 370.)  The Court therefore appoints

Adam M. Slater and his firm Mazie Slater Katz & Freeman LLC and Samuel P. Sporn and his

-14-

firm Schoengold & Sporn, P.C. as co-lead class counsel.

**C.     Fairness of the Class Action Settlement**

Rule 23(e) requires court approval of any class action settlement and sets forth procedures to be followed for deciding whether approval should be granted.[12]  Fed. R. Civ. P. 23(e); Varacallo, 226 F.R.D. at 235.  The procedures "strengthen the process of reviewing proposed class-action settlements" and "assure adequate representation of class members who have not participated in shaping the settlement."  Fed. R. Civ. P. 23(e) advisory committee's note (2003 Amendments).  Rule 23(e) requires the Court to follow these procedures and "make findings that support the conclusion that the settlement is fair, reasonable, and adequate.  The findings must be set out in sufficient detail to explain to class members and the appellate court the factors that bear on applying the standard."  Id.

---

[12] Specifically, Rule 23(e) provides:

> The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval.  The following procedures apply to a proposed settlement . . .
>
> (1)     The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2)     If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3)     The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4)     If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
> (5)     Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

The Court approaches the parties' request for approval of their settlement mindful of its obligation under Rule 23 and the fact that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  In re Gen. Motors, 55 F.3d at 784; see also Ehrheart v. Verizon Wireless, 609 F.3d 590, 594–95 (3d Cir. 2010) (recognizing that settlements conserve judicial resources and enable the parties to avoid the costs and risks of a complex trial).  This policy is further supported by the advantages to the parties of a settlement as "they have far greater control of their destiny than when a matter is submitted to a jury," and reflects the consideration that "the time and expense that precedes the taking of such a risk can be staggering."  Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1300 (D.N.J. 1995).

Here, the settlement requires the defendants to provide certain benefits to owners or lessees of particular VW and Audi vehicles.  Under the settlement's terms, all class members receive educational preventative maintenance materials, including mailings that recommend inspections and cleaning of the sunroof and plenum drain systems.  (New Settlement Agreement ¶ 4.1.)  All class members are eligible to receive full reimbursement from a non-exhaustible $8 million fund for expenses incurred for "[r]eimbursable [r]epairs for cleaning, drying, or replacement of carpeting, including padding, and/or repair or replacement" of affected vehicle components.  (Id. ¶¶ 4.2–4.6.)  Additionally, some class members with particular vehicle models[13] will also receive "[r]emoval of sunroof drain 'duckbill' valves on both front sunroof

---

[13]Models included in this group are: 2001-2007 Volkswagen New Beetle vehicles with Vehicle Identification Number ("VIN") below 3VW---1C-7M514779 equipped with sunroof, 2001-2005 Jetta A4 Sedan (VIN with "9M" in position 7 and 8), 2001-2005 Volkswagen Jetta A4 Wagon vehicles (VIN with "1J" in position 7 and 8) equipped with sunroof, 2001-2006 Volkswagen Golf A4 (VIN with "1J" in position 7 and 8) equipped with sunroof, and

drains and an inspection of front sunroof drains and drain hoses for function."  (Id. ¶ 4.2.)

Notice of the New Settlement Agreement was transmitted to affected class members pursuant to the Amended Preliminary Approval Order, using the best practicable notice methods under the circumstances.  (Eisert Decl. I.)  Specifically, notice of, and information about, the new settlement was: (1) mailed to class members described in 1.31(b) of the New Settlement Agreement[14]; (2) provided through a website established for the purpose of posting the notice, claims forms, settlement agreement, and other relevant documents; (3) provided through a toll-free telephone number established to provide information to class members; and (4) published in the USA Today newspaper on September 20, 2012.  (Id. ¶¶ 3-7.)  Out of the 1,095,350 notices mailed to class members, as of October 31, 2012, the settlement administrator had received an estimated 109,505 returned as undeliverable, 3,143 of which had a forwarding address.  (Id. ¶ 5.)  Also as of October 31, 2012 and since the September 10, 2012 notice mailing: (1) the settlement administrator received 3,399 telephone calls, with 1,212 of them being transferred to a customer service representative, (id. ¶ 6); (2) there were 8,727 visitors to the settlement website, 7,587 of them being from unique internet protocol addresses; and (3) the settlement administrator received 341 emails relevant to this case.  (Id. ¶ 10.)

The Amended Preliminary Approval Order and New Settlement Agreement notified class members that they could object to the settlement or be excluded from the class by submitting a written objection or request for exclusion postmarked no later than November 1, 2012.  (Am.

---

Volkswagen GTI A4 vehicles (VIN with "1J" in position 7 and 8) equipped with sunroof.

[14]Class members described in 1.31(a) of the New Settlement Agreement were already provided proper notice and since this Agreement does not affect or modify the rights of those class members, no further notice was required to be given to those class members.

Prelim. Order 6, Sept. 5, 2012, ECF No. 338; New Settlement Agreement ¶ 13.1.)  By operation

of the Court's Standing Order dated November 1, 2012, all deadlines were extended until

November 7, 2012 due to Hurricane Sandy.  (D.N.J. Standing Order 12-2.)  Thus, objections and

exclusions received by that date are deemed timely.  Here, 105 individuals sought exclusion, five

lodged objections, and as of November 26, 2012, 2218 eligible class members filed

reimbursement claims.  (Eisert Decl. III ¶ 3.)

These events show that the putative class received valid, due, and sufficient notice of the

settlement and these proceedings.  Accordingly, the notice complies with due process

requirements, thereby satisfying Rule 23(e).

Furthermore, experienced counsel for the parties, along with the West and Sibley

Objectors, seek approval of the settlement.  Experienced class counsel's approval is entitled to

considerable weight and favors finding that the settlement is fair.  See In re Cendant Corp. Litig.,

264 F.3d 201, 232 n.18 (3d Cir. 2001) ("In re Cendant") (citing In re Gen. Motors, 55 F.3d at

785); In re Warfarin, 391 F.3d at 535; Varacallo, 226 F.R.D. at 240.  Moreover, that the objectors

who vigorously opposed the prior settlement support the new settlement further supports a

finding that the new settlement is fair and reasonable.  Even with counsel's concurrence,

however, the Court must carefully examine the fairness and reasonableness of the settlement, as

it serves as a fiduciary that "guard[s] the claims and rights of the absent class members."

Ehrheart, 609 F.3d at 593.

In this Circuit, the factors set forth in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975),

are used to determine whether a class settlement is fair and reasonable.  See In re Warfarin, 391

F.3d at 534–35.  The Girsh factors are:

(1)    the complexity, expense and likely duration of the litigation;
(2)    the reaction of the class to the settlement;
(3)    the stage of the proceedings and the amount of discovery completed;
(4)    the risks of establishing liability;
(5)    the risks of establishing damages;
(6)    the risks of maintaining the class action through the trial;
(7)    the ability of the defendants to withstand a greater judgment;
(8)    the range of reasonableness of the settlement fund in light of the best possible recovery; and
(9)    the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 157 (citation, internal quotation marks, and alterations omitted).  In addition,

in In re AT & T Corp., 455 F.3d 160, 165 (3d. Cir. 2006), the appellate court observed that:

> district courts should also consider other potentially relevant and appropriate factors, including, among others: the maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re AT & T Corp., 455 F.3d at 165 (quoting In re Prudential, 148 F.3d at 323) (internal

quotation marks omitted).  The Court has considered all of these factors to the extent they are

applicable to decide whether to approve or reject the proposed class action settlement.

### 1.    The Complexity, Expense, and Likely Duration of the Litigation

As to the complexity, expense, and likely duration of the litigation absent settlement, the

Court incorporates by reference its findings in Dewey, 728 F. Supp. 2d at 573, and concludes that

this factor weighs in favor of approving the settlement.

-19-

## 2.      The Reaction of the Class to the Settlement

The second factor the Court must consider is the reaction of the settlement class to the settlement.  Under this factor, courts "attempt[] to gauge whether members of the class support the settlement."  In re Warfarin, 391 F.3d at 536 (citations and internal quotation marks omitted).  Courts do this by looking at the "number and vociferousness of the objectors."  In re Gen. Motors, 55 F.3d at 812.  While courts "generally assume[] that 'silence constitutes tacit consent to the agreement,'" the "practical realities of class actions [have] led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement."  Id. (quoting Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)) (recognizing that "[e]ven where there are no incentives or informational barriers to class opposition, the inference of approval drawn from silence may be unwarranted").

As to the reaction of class members unaffected by the modifications in the New Settlement Agreement, the Court incorporates by reference its findings in Dewey, 728 F. Supp. 2d at 573–74.

Among the 1,095,350 class members affected by the modifications in the New Settlement Agreement, only 105[15] chose to exclude themselves from the class.  (Eisert Decl. I ¶ 14; Dellinger Exclusion, Oct. 17, 2012, ECF No. 374; Schleimer Exclusion, Sept. 17, 2012, ECF No. 348; Ferraccio Exclusion, Nov. 8, 2012, ECF No. 394.)

Among the 1,095,350 class members affected by the modifications in the New Settlement

---

[15]The settlement administrator received 102 exclusion requests and three additional exclusion requests were submitted only to the Court.  (Pl. Ltr., Dec. 11, 2012, ECF No. 416; Pl. Ltr., Nov. 14, 2012, ECF No. 396.)

Agreement, five[16] objected pursuant to Fed. R. Civ. P. 23(e)(5) (stating that "[a]ny class member may object to the proposal if it requires court approval under this subdivision (e)"), and of the five, only two objected to the terms of the settlement itself, as opposed to the fee application. (Pl. Ltr. Ex. 2, Nov. 14, 2012, ECF No. 396; Neff Objection, Nov. 13, 2012, ECF No. 399.)  This small number of  objections to the settlement itself may be indicative of endorsement.  See In re Prudential, 148 F.3d at 318; Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118–19 (3d Cir. 1990) (10% objection rate indicates class favors settlement); Bolger, 2 F.3d at 1313–14; Weiss, 899 F. Supp. at 1301 (a small percentage of objections allows an inference that a majority silently consents); Varacallo, 226 F.R.D. at 237–38.  Moreover, as set forth herein, none of the objections support a finding that the settlement is not fair or reasonable.  Bailey v. AK Steel Corp., Civ. No. 06-468, 2008 WL 495539, at *4 (S.D. Ohio Feb. 21, 2008) (stating that the "existence of objections does not mean that the settlement is unfair . . . [and] it is clear under the applicable law that even majority opposition to a settlement cannot serve as an automatic bar to a

---

[16]On September 24, 2012, Michael and Elaine Gardner filed an objection to the settlement, arguing that it does not provide adequate relief to class members who did not repair their vehicles.  (Gardner Objection, Sept. 24, 2012, ECF No. 362.)  On October 23, 2012, David and Jennifer Murray filed an objection to class counsel's motion for fees and expenses, arguing that class counsel's fees must be calculated under New Jersey state law.  (Murray Objection, Oct. 23, 2012, ECF No. 375.)  The Murrays will be counted as two separate objectors because they have two vehicles, even though they only filed one objection containing arguments applicable to both.  On November 6, 2012, Peter Braverman filed, among other things, an objection to class counsel's motion for fees and expenses, arguing that the Court should convene a new hearing on valuation and Class Counsel's fees, apply New Jersey law, inquire into individual billing entries, and reduce the hourly rate.  (Braverman Objection, Nov. 6, 2012, ECF No. 383).  On November 13, 2012, Daniel Neff filed an objection to the settlement, arguing that the class members are actually responsible for their own damages and the Defendants should not be held liable.  (Neff Objection, Nov. 13, 2012, ECF No. 399.)  The Court notified the parties and objectors that no additional testimony would be considered in connection with settlement valuation or Class Counsel's fee request but that the parties and objectors would be permitted to orally argue their positions on those subjects.  (Order, Nov. 27, 2012, ECF No. 404.)

settlement" that a court finds to be fair).

          **a.**     **Objections to the Settlement**

               **i.**     **Reimbursement for Future Repairs**

The first objection [the "Gardner Objection"] asserts that the new settlement is not fair because it does not provide compensation for vehicle owners who have not yet had repairs performed. (Gardner Objection, Sept. 24, 2012, ECF No. 362.) Owners of affected vehicles who have not yet had repairs performed are members of the settlement class, (New Settlement Agreement ¶ 1.31), and are eligible to file reimbursement claims for repairs that are made during a five-year period. (Id. ¶ 6.1); see also Dewey, 728 F. Supp. 2d at 579. This likely addresses part of this objector's concern as it provides relief when a repair is made. To the extent the objector objects because he believes compensation should be provided even where the class member expended no money to repair damage, the objection does not require rejecting the settlement. Allowing compensation for those who actually incur an expense is a reasonable remedy, but permitting those who expended no funds to obtain money would be tantamount to an impermissible windfall. The requirement that cash payments be limited to those who expended money on repairs is therefore reasonable and the objection to this limitation does not render the settlement unfair or unreasonable. Moreover, class members who chose not to have their vehicle repaired could have opted out of the settlement and pursued their claims individually to attempt to secure compensation for damages they choose not to repair. Thus, the objection is not a reason to reject the settlement.

              **ii.**     **Neff Objection**

The next objection [the "Neff Objection"] asserts that the plaintiffs "neglected to properly

-22-

maintain their cars," that the objector "find[s] it difficult to find fault in Volkswagen of

America," and that the plaintiffs should "graciously pay [their] bill[s]."[17]   (Neff Objection, Nov.

13, 2012, ECF No. 399.)  In essence, the Neff Objection argues that the class is not entitled to

recovery at all because the Neff Objector asserts the damage sustained is due to the class

members' failure to properly maintain their vehicles.  Although certain class members'

satisfaction with their vehicles may have posed a proof problem for the Plaintiffs if the case

proceeded to trial, it is not a basis to reject the settlement, particularly where Class Counsel

represented that they collected evidence during discovery demonstrating that the cars had a defect

that led to water damage in numerous vehicles.  (Fairness Hearing II 25:30.)  Moreover, class

members like Neff who are pleased with their vehicles and do not seek compensation may

exclude themselves from the settlement.  Thus, Neff's assertion that the class members are

responsible for their own damages is not a reason to reject the settlement.

### iii.    Attorneys' Fees Choice of Law

The next objection [the "Murray Objection"] asserts that the Plaintiffs' attorneys' fees

should be limited by the application of New Jersey state law.  (Murray Objection, Oct. 23, 2012,

ECF No. 375.)  For the reasons set forth elsewhere in this Opinion, the Court has determined that

federal law governs the fee request and that the agreed-upon attorneys' fees are reasonable under

the governing law.

### iv.    Attorneys' Fees Calculation

The final objection [the "Braverman Objection"] asserts that, for a variety of reasons, the

---

[17]Class Counsel asserted during the December 5, 2012 Fairness Hearing that the Neff
Objection was untimely because it was docketed on November 13, 2012.  Because the objection
is postmarked October 29, 2012, however, the Court finds that it was timely submitted.

Plaintiffs' attorneys' fees are improperly calculated and should be reduced. (Braverman Objection, Nov. 6, 2012, ECF No. 383.) For the reasons set forth elsewhere in this Opinion, the Court has determined that the agreed-upon attorneys' fees are reasonable under the governing law.

Given the method by which notice was provided, the fact that only five out of 1,095,350 affected class members filed objections, and because none of the objections warrants a finding that the settlement is unreasonable, the Court can infer that the supermajority of the class supports the settlement.

### 3.      The Stage of the Proceedings and the Amount of Discovery Completed

As to the stage of proceedings and extent of discovery, the Court incorporates by reference its findings in Dewey, 728 F. Supp. 2d at 583–84, and concludes that this factor weighs in favor of approving the settlement.

### 4 & 5.   The Risks of Establishing Liability and Damages

As to the risks of establishing liability and damages at trial, the Court incorporates by reference its findings in Dewey, 728 F. Supp. 2d at 584–85, and concludes that this factor weighs in favor of approving the settlement.

### 6.      The Risks of Maintaining the Class Action Through the Trial

As to the risk of maintaining the class action through trial, the Court incorporates by reference its findings in Dewey, 728 F. Supp. 2d at 585. Moreover, this risk manifested itself in part when certification of the settlement class was vacated on appeal as a result of a single structural error. The Court therefore concludes that this factor weighs in favor of approving the settlement.

-24-

7.        **The Ability of the Defendants to Withstand a Greater Judgment**

As to the ability of the defendants to withstand a greater judgment, the Court incorporates by reference its findings in <u>Dewey</u>, 728 F. Supp. 2d at 585–86, and concludes that this factor does not indicate that a settlement is necessary to ensure that the plaintiffs obtain relief for their alleged injuries, but also does not alone dictate that the settlement is unreasonable.

8 & 9.        **The Range of the Reasonableness of the Settlement Fund in Light of Both the Best Possible Recovery & All the Attendant Risks of Litigation**

As to the reasonableness of the settlement, the Court incorporates by reference its findings in <u>Dewey</u>, 728 F. Supp. 2d at 586–87, and further notes that the New Settlement Agreement provides for reimbursement for repairs to all affected vehicles, without a distinction based on incidence of damage to specific groups of vehicles.  The New Settlement Agreement permits more than one million additional class members to recover money from the settlement fund without simply hoping that the Defendants will show good will to reimburse them.  Indeed, the New Settlement Agreement further provides that if reimbursement claims exceed the settlement fund, the Defendants will contribute additional funds to satisfy all claims.  (New Settlement Agreement ¶ 5.)  As a result, the New Settlement Agreement provides at least as great a benefit as the settlement that the Court previously found to provide a reasonable recovery to the class.

Thus, the <u>Girsh</u> factors support a finding that the settlement is fair and reasonable and is in the best interest of the settlement class, and the settlement is hereby approved.

The Court now turns to the motion for fees and expenses for class counsel.

D.        **Plaintiffs' Attorneys' Fees, Costs, and Incentive Award**

-25-

1.      **Fees**

    a.      **Applicable Law**

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Thus, a reasonable fee award is permitted if it is: (1) authorized by law; or (2) agreed upon by the parties.  Unlike the 2010 Settlement Agreement, in which the parties agreed that there should be an award of "reasonable attorneys' fees" but did not agree to an amount or the law applicable to its calculation, the New Settlement Agreement specifies that Class Counsel will apply for an award of fees and expenses not to exceed $9,884,782.94,[18] and that the Defendants agree not to oppose or appeal an award in that amount.  (New Settlement Agreement ¶ 15.1.)  Therefore, the fee award is sought "by the parties' agreement" pursuant to Rule 23(h).  Because the parties have agreed on a specific fee award, the Court need not interpret the parties' contract to determine what they contend constitutes "reasonable attorneys' fees."

Nonetheless, the Court must thoroughly analyze the application for attorneys' fees in a class action settlement to ensure that it is "reasonable," as Rule 23(h) requires.  Fed. R. Civ. P. 23(h); see also In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 299 (3d Cir. 2005) ("In re Rite Aid"); Yong Soon Oh v. AT & T Corp., 225 F.R.D. 142, 146 (D.N.J. 2004).  This is so even where, as here, the parties have consented to the proposed attorneys' fees, Yong Soon Oh, 225

---

[18]Because this figure includes expenses, the Court deducts the expenses Class Counsel seek to determine the portion that constitutes the agreed-upon fee award.  Class Counsel seek expenses in the amounts the Court approved in the prior settlement, (see Pl. Br. 15, Oct. 16, 2012, ECF No. 370), namely $385,962.57 to Mazie Slater and $291,572.18 to Schoengold & Sporn, Dewey, 728 F. Supp. 2d at 616, resulting in an agreed-upon fee award of $9,207,248.19, the amount the Court awarded in its prior Opinion.

F.R.D. at 146 (citing In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 128 (D.N.J. 2002)), because of the risk that the "lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees." In re Gen. Motors, 55 F.3d at 820 (citation and internal quotation marks omitted).

As to choice of law in assessing the reasonableness of an agreed-upon fee award, the Court incorporates by reference its observations in Dewey regarding the absence of fee shifting as a basis for the fee award. 728 F. Supp. 2d at 589 n.62. No fee shifting statute is triggered because no "party is compelled by statute to bear the opposing party's fees." In re Diet Drugs, 582 F.3d 524, 540 (3d Cir. 2009) (citing Alyeska Pipeline Svc. Co. v. Wilderness Soc'y, 421 U.S. 240, 269–70 (1975)). Rather, the fee award is being made by agreement of the parties. In such a case, where the defendant agrees to pay fees and does not admit liability, federal class action law determines the fee award. See, e.g., McGee v. Continental Tire North America Inc., Civ. No. 06-6234, 2009 WL 539893, at *13 (D.N.J. Mar. 4, 2009) (applying federal law to a fee award in a Class Action Fairness Act settlement of claims under, among other things, the New Jersey Consumer Fraud Act); Briggs v. Hartford Fin. Servs. Group, Inc., Civ. No. 07-5190, 2009 WL 2370061, at *14, 15 n.92 (E.D. Pa. July 31, 2009) (applying federal case law to decide class counsel's fee request in a CAFA case based upon state law and reminding counsel that federal law governs applications filed in federal class action cases); First State Orthopaedics v. Concentra, Inc., 534 F. Supp. 2d 500, 523–24 (E.D. Pa. 2007).

The Murray Objectors[19] object to the Court's application of federal law and rely on Security Mutual Life Ins. Co. of New York v. Contemporary Real Estate Assocs., 979 F.2d 329

---

[19]The Braverman Objectors also advocate for the application of New Jersey law.

(3d Cir. 1992) and In re Volkswagen and Audi Warranty Extension Litig., 692 F.3d 4 (1st Cir. 2012).  Neither case, however, applies here.  Security Mutual concerns an award of attorneys' fees to a prevailing party in a state law, non-class case.  979 F.2d at 329.  The First Circuit Volkswagen case is also not applicable for two reasons.  First, the parties in Volkswagen entered a contract wherein they agreed to "an award of reasonable attorneys' fees" but did not agree to a specific amount or a method for calculating that amount.  692 F.3d at 9.  Thus, the district court below was tasked with interpreting the parties' settlement agreement to determine the meaning of the fee provision as a matter of state substantive contract law.  Id. at 15 (stating "interpreting [settlement] agreements and their scope is a matter of state contract law").  Here, there is no contractual dispute as to what the parties intended the amount of the fee award to be.  The New Settlement Agreement specifies an amount and the Court's sole task is to determine whether this amount is a permissible award as defined by Rule 23(h).  This is a question of federal law. Second, the First Circuit common fund law differs from that of the Third Circuit.  In the First Circuit, the percentage-of-recovery approach appears limited to circumstances where the attorneys' fees are paid from the same fund as that being used to compensate the class.  Id. at 16–17.  In the Third Circuit, the Court can use the percentage-of-recovery method when the source of payment to the class and counsel is the same but the fees are not coming from the fund set up to compensate the class.  In re General Motors, 55 F.3d at 821.  Thus, the federal law of the First Circuit would have mandated use of the lodestar method where payment to the class and to counsel came from separate funds, as in this case.  Third Circuit precedent does not.

Moreover, even if the Court applied New Jersey state law, as the Murray and Braverman Objectors suggest, the result would not be different.  Two separate panels of the New Jersey

Superior Court, Appellate Division, have relied upon the federal precedent of the Third Circuit to determine the fee award in class actions.  See Sutter v. Horizon Blue Cross Blue Shield of New Jersey, No. L-3685-02, 2012 WL 2813813, at *5-6, *3 n.1 (N.J. Super. Ct. App. Div. July 11, 2012) (characterizing federal class action cases as persuasive authority, describing methods of calculation as set forth in federal precedent, and holding in accordance with federal law that the "ultimate choice of methodology rests within the court's discretion"); Sutter v. Horizon Blue Cross Blue Shield of New Jersey, 406 N.J. Super. 86, 103–06 (App. Div. 2009) (applying federal precedent in determining whether trial court properly calculated reasonable fee award).  Thus, even if the Court were to apply New Jersey state court precedent, it would simply be directed back to the federal law of the Third Circuit.

Braverman's other arguments against the agreed-upon fee award are also meritless. First, Braverman contends that class counsel's time entries attributable to negotiating and seeking approval of the 2010 settlement should not be compensable in a lodestar analysis because counsel made an error that led to a remand of the settlement.  (Braverman Opp'n 3-8.)  In performing a lodestar cross-check, the Court may rely on activity summaries and "need not review actual billing records."  Rite Aid, 396 F.3d at 306-07 (citing In re Prudential, 148 F.3d at 342).  Thus, the particularized inquiry that Braverman seeks is not required.  In addition, Braverman's argument that Class Counsel should not be credited for time spent negotiating the 2010 settlement ignores the fact that the New Settlement Agreement is largely the product of counsel's efforts in 2010, as every part, except for the ability of one category of cars to obtain certain cash reimbursement, remains intact.  (Fairness Hearing II 1:04:13.)  Moreover, Class Counsel are not seeking to be compensated for the additional work undertaken to argue the case

-29-

on appeal and negotiate a new settlement that complied with the Third Circuit's mandate.[20]
Thus, Class Counsel, recognizing that their error required a revised settlement, have not sought
compensation for work performed to cure the error.

Second, Braverman contends that class counsel's hourly rate should be lower than that
which the Court applied because the initial settlement was rejected on appeal and because of
certain comments regarding counsel's performance in a judicial opinion in an unrelated case.
(Braverman Opp'n 3-8.)  For the reasons set forth in Dewey, 728 F. Supp. 2d at 608, the
downwardly-adjusted hourly rate used to conduct the cross-check properly valued Class
Counsel's services based upon their work and experience, even where one of the class's attorneys
had not previously handled a class action case.  Moreover, another judge's comments about
counsel's firm on issues specific to an unrelated case has no bearing on determining the hourly
rate that applies to the work performed here.

Third, Braverman suggests that the 2010 hearing on the fee applications was insufficient
and argues that the Court should hold a hearing where objectors can cross-examine the experts
and engage their own expert witnesses.  (Id. 2.)  The Third Circuit has already determined that
the procedures employed at the 2010 Fairness Hearing were sufficient, Dewey, 681 F.3d at 177
n.8, and the objector has not shown that additional examination and discovery was necessary.

**b.      Reasonableness of Fees**

In Dewey, 728 F. Supp. 2d at 589–92, the Court applied federal class action case law to

---

[20]If Class Counsel had sought compensation for the time they spent to cure their error, the
result may have been different.  Here, Class Counsel are not seeking to be paid twice to reach a
settlement and their decision not to seek additional compensation for their work on the appeal
and renegotiating the settlement shows their acknowledgment that to do otherwise could be
viewed as seeking compensation for work their own error caused them to perform.

determine what method it would use to calculate a fee award.  In its prior Opinion, the Court

determined that a percentage-of-recovery analysis with a lodestar cross-check was the appropriate

method for calculating a reasonable fee award because: (1) fees were being paid voluntarily; (2)

the settlement's value was quantifiable; and (3) the settlement fund and fees were being paid

from the same source.  See id. at 592.  Applying that method, the Court ultimately concluded that

$9,207,248.19 was a reasonable and appropriate fee award based on the Court's valuation of the

settlement.  The Court's valuation is the law of the case, and under the New Settlement

Agreement, the value to the class is at least as great.[21]

---

[21]During the December 5, 2012 Fairness Hearing, the Murray Objectors argued that the Court should revisit and reduce the valuation of the settlement because the 2010 valuation was based on Dr. Eads's projections rather than the actual claims data that are now available. (Fairness Hearing II 36:50, 40:40.)  Specifically, the Murray Objectors argue that because there have been approximately $5 million worth of reimbursement claims, not the $8 million set aside in the fund, the value of the entire settlement should be proportionally reduced by a ratio of 5:8 or 62.5%.  (Id.)  The assertion that the value of the settlement is lower now than in 2010 fails. First, the value of cash reimbursements to date is expected to be greater than the $5 million already approved for payment to class members in the former reimbursement group.  (See Eisert Decl. III ¶¶ 3–4 (projecting the value of claims from the former residual group to be between $466,048.80 and $782,296.20).)  In addition, this argument fails to acknowledge that the approximately $2.5 million difference remains in the settlement fund for good will payments for the next five years, and any such payments remain part of the cash value of the settlement. Second, under the New Settlement Agreement, the Defendants have agreed to pay all timely submitted compensable reimbursement claims, even if they exceed the $8 million settlement fund, and thus the cash value may exceed $8 million.  (New Settlement Agreement ¶ 5 (stating that "[i]n the event that the Reimbursement Fund plus accrued interest thereon is not sufficient to pay all eligible Reimbursement Claims, Defendants shall make additional contributions to the Reimbursement Fund such that all eligible Reimbursement Claims will be paid in full.").)  Third, there is no basis to conclude that the value of the non-cash components of the settlement varies in proportion with, or is even correlated to, the value of cash reimbursements.  It is entirely plausible, for example, that cash reimbursements would be made at a rate lower than expected precisely because the non-cash components, like preventative maintenance and education, have been followed and eliminated the need for repairs, thereby resulting in fewer requests for cash reimbursement for repairs.  Thus, there is no basis to reduce the valuation of the settlement in proportion with the ratio of existing cash reimbursement claims that have been made.

Because the Court has already determined that $9,207,248.19 was a reasonable award in 2010 and reflects an appropriate percentage of recovery as discussed in <u>Dewey</u>, 728 F. Supp. 2d 592–609, the value to the class is at least as great under the New Settlement Agreement, and the Plaintiffs do not seek a higher award based on their work on the appeal and in negotiating and implementing the New Settlement Agreement, the Court incorporates by reference its analysis in <u>Dewey</u>, 728 F. Supp. 2d at 592–609 and approves as reasonable the agreed-upon award of $9,207,248.19.[22]

### 2. Costs

Rule 23(h) also provides for an award of costs. The Court has previously approved payment of costs in the amounts of $385,840.01[23] to Mazie Slater and $291,572.18 to Schoengold & Sporn. Class Counsel do not seek costs in excess of those awarded in the prior Opinion, despite incurring additional expenses since that time. Thus, for the reasons stated in

---

[22]Class Counsel's efforts since 2010 could arguably support a somewhat increased fee award. <u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190 (3d Cir. 2000). First, as to the size of the fund and number of persons benefitted, the amount of cash reimbursement paid to class members may increase depending on the number of claims filed. Second, as to the presence or absence of substantial objections, there are fewer objections to the New Settlement Agreement, and the most vocal objectors to the prior settlement are now satisfied with the recovery. Third, as to the skill and efficiency of the attorneys, Class Counsel negotiated a modified settlement to comply with the Third Circuit's mandate even before it issued. (<u>See</u> Order, June 27, 2012, ECF No. 320.) Fourth, as to the complexity and duration of the litigation, Class Counsel have worked for two additional years and have spent significant additional hours since 2010 arguing the case on appeal and negotiating, executing, and seeking approval of the New Settlement Agreement. (Sporn Cert. ¶ 6, Oct. 16, 2012, ECF No. 369.) The Court, of course, notes that had the structural error not occurred and the original settlement provided the benefits now granted, this extra work would not have been required.

[23]In the conclusory paragraph of the Court's prior Opinion and in the prior Judgment, the costs to Mazie Slater are incorrectly stated as $385,962.57. That figure erroneously includes $122.56 for "searches," which the Court determined was not reimbursable for lack of specificity. <u>Dewey</u>, 728 F. Supp. 2d at 615.

Dewey, 728 F.Supp. 2d at 610–16, the Court approves the award of the previously approved

costs, for a total of $677,412.19.

Like his challenge to the fee award, Braverman's challenge to the cost award also fails.

Braverman argues that costs associated with fee applications are not compensable and as such,

Class Counsel are not entitled to reimbursement for expert fees for Dr. Eads.  (Braverman Ltr. 1,

Nov. 7, 2012, ECF No. 385.)  During the November 9, 2012 telephonic hearing, the Plaintiffs

represented that Dr. Eads would have been a trial witness.  (Nov. 9, 2012 Hearing 1:27:07.)

Moreover, Dr. Eads' expert opinion on valuation was necessary to evaluate whether the

settlement itself was fair.  Thus, even assuming, without deciding, that Braverman is correct that

costs associated with a fee petition are not compensable, the costs associated with Dr. Eads's

report were not strictly for the purpose of securing a fee award and are therefore compensable.

### 3.    Incentive Award to Class Representative Plaintiffs

The Court incorporates by reference its discussion of incentive awards to the class

representative Plaintiffs in Dewey, 728 F. Supp. 2d at 577–78, and, for the reasons stated therein,

will approve payment of $10,000 to each representative plaintiff: Kenneth Bayer, Jacqueline

Delguercio, Patrick DeMartino, John M. Dewey, Lynda Gallo, Edward O. Griffin, Ronald

Marans, Francis Nowicki, and Patricia Romeo.

## E.    Objectors' Attorneys' Fees, Costs, and Incentive Award

### 1.    Fees

The Court now turns to the respective motions of the Sibley Objectors and the West

Objectors for fees and expenses.  As with awards of attorneys' fees in general, whether to grant,

and the method for calculating, an award of fees to objectors' counsel rests within the court's

discretion.  In re Prudential, 273 F. Supp. 2d at 566 (citing In re Gen. Motors, 55 F.3d at 820).

The requirement that the district court thoroughly analyze the fee application, even where the

parties have agreed to the award, also remains in place.  Id.  Objectors, however, play "a different

role in this litigation from that of Class Counsel," id. at 565, and are not entitled to an award of

attorneys' fees unless "the settlement was improved as a result of their efforts."  Id.; see also

Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051–52 (9th Cir. 2002); Reynolds v. Beneficial

Nat'l Bank, 288 F.3d 277, 288 (7th Cir. 2002); White v. Auerbach, 500 F.2d 822, 828 (2d Cir.

1974); Spark v. MBNA Corp., 289 F. Supp. 2d 510, 513 (D. Del. 2003); In re Westinghouse Sec.

Litig., 219 F. Supp. 2d 657, 660 (W.D. Pa. 2002).

       Some courts have determined that an objector may improve a settlement without

producing a quantifiable increase in the size of the settlement fund.  See, e.g., Park v. Thomson

Corp., 633 F. Supp. 2d 8, 11 (S.D.N.Y. 2009) (stating that "[s]ome courts have also rewarded

objectors' counsel for advancing non-frivolous arguments and transforming the settlement

hearing into a truly adversarial proceeding") (citations and internal quotation marks omitted);

Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P., 212

F.R.D. 400, 413 (E.D. Wis. 2002) (concluding "that the objector contributed materially . . . by

assisting the court and enhancing the adversarial process"); In re Ikon Office Solutions, Inc., Sec.

Litig., 194 F.R.D. 166, 197 (E.D. Pa. 2000) (stating that "if the objection confers a benefit on the

class *or assisted the court by sharpening debate*, fees may be appropriate") (emphasis added).

Other courts have refused to award fees where the objector merely enhanced the adversarial

process.  See, e.g., Martin v. Foster Wheeler Energy Corp., Civ. No. 06-878, 2008 WL 906472,

at *10 (M.D. Pa. Mar. 31, 2008).  Thus, objectors must have economically benefitted the class or,

at the very least, shown that a court adopted their objection.  See id.; see also Uselton v.

Commercial Lovelace Motor Freight, Inc., 9 F.3d 849, 855 (10th Cir. 1993) (noting that objectors

"may be entitled to attorneys' fees if the court in its discretion finds that the objections were valid

or otherwise conferred class benefits") (citations and internal quotation marks omitted).

Here, the Sibley and West Objectors[24] improved the settlement in that they identified a

deficiency in the adequacy of the representative plaintiffs and successfully pursued their

argument on appeal, such that a new settlement was negotiated that eliminated the distinction

between class members in the "reimbursement" and "residual" groups.  The Court therefore

determines that fee awards shall be granted as follows.

### a.     West

As to the West Objectors, by agreement, counsel seek an award of $82,134.10,[25] half to

be paid by the Defendants and half to be paid by Schoengold & Sporn.  (Proposed Judgment,

---

[24]The Court's use of the term "professional objector" did not intend to connote that the objections presented in 2010 or now were motivated by a desire to hold up the settlement for personal profit, even though some academic commentary assigns such a meaning to the term. (See Frank Fees Decl. ¶ 62.)  This, however, does not change the fact that certain objectors are represented by attorneys who are in the profession of objecting to class action settlements, whether motivated by views of the law, ideology, or otherwise.  The phrase was not meant to be pejorative and this professional focus does not bar counsel from receiving an appropriate fee award where counsel has advocated for and helped secure an improved settlement to the benefit of the class.

[25]The West Objectors seek "as much as $87,321.07" in attorneys' fees and "as much as $4,167.52" in expenses.  (Frank Supp. Fees Decl.)  By agreement of the parties, however, the West Objectors have agreed not to seek more than $86,000 in combined fees and expenses, exclusive of $4,000 in incentive awards.  The Court has identified $1,186.97 in compensable expenses in addition to the $2,678.93 the Third Circuit has already awarded, for a total of $3,865.90.  See Section IV.E.2.a infra.  Thus, the Court will treat the West Objectors' application as including a request for $82,134.10 attorneys' fees, exclusive of expenses and incentive awards, such that combined fees and expenses total $86,000.

Nov. 7, 2012, ECF No. 386.)  The West Objectors correctly advocate the application of federal

law in calculating their fee award, and the Court concludes that a percentage-of-recovery analysis

applies here to assess the objectors' fee request.  This approach requires the Court to assign a

value that the objectors have added to the settlement to determine whether the amount sought

constitutes an appropriate percentage of recovery.  The West Objectors argue that no value

should be assigned to non-monetary terms of the settlement and that benefit to the class should

be measured by the amount of cash class members receive.  (Frank Fees Decl. ¶ 23.)  The Court

has found the non-monetary terms of the settlement have a value and the advocacy of the

objectors has not changed the value assigned to that portion of the settlement.  Rather, their

advocacy provided certainty concerning the ability for owners or lessees of one category of

vehicles to obtain cash reimbursement for specific damages.  Thus, focusing on the value they

added by giving such certainty, as of December 4, 2012, there were 151 approved claims with a

value of $55,851, or an average of $369.87 per claim.  (Eisert Decl. III.)  There are 1,964

additional claims pending further review.  Assuming the value of each additional claim has the

same average amount of $362.77, the total value of actual claims submitted by the affected class

members would be $782,283.87.  This reflects the value added as a result of the Objectors'

efforts to ensure that the former residual group need not rely only on the Defendants' good will to

obtain reimbursement.  Under this valuation of $782,283.87, the West Objectors seek an award

of $82,134.10, which is equal to 10.5% of the benefit conferred, well within the range of

acceptable percentages-of-recovery.  See Dewey, 728 F. Supp. 2d at 604–05.

Moreover, the lodestar cross-check shows the percentage is reasonable.  Counsel state

that their fees under the lodestar method would be between $185,275.16 and $274,221.00, for

524.5 hours of work.  (Frank Fees Decl. ¶ 74.)  Counsel asserts that Mr. Frank's hourly rates are

between $470.19 and $750.00 per hour, that Mr. Schulman's hourly rates are between $219.76

and $240.00 per hour, and that Ms. Burnell's rates are $150.00 per hour.  (Id.)  Assuming without

deciding the hourly rates and hours worked are reasonable, the agreed-upon fee award is 44% of

the conservative lodestar figure.  A lodestar multiplier of .44 is well within the acceptable range.

See Dewey, 728 F. Supp. 2d at 606.  Moreover, assuming counsel's hours of 524.5 to be

reasonable, the agreed-upon fee award results in an actual average billing rate of only $156.60

per hour.  This too shows the reasonableness of the award sought.

### b.  Sibley

By agreement, counsel for the Sibley Objectors seek an award of $25,000.00, half to be

paid by the Defendants and half to be paid by Schoengold & Sporn.  (Sibley Costs Decl.;

Proposed Judgment, Nov. 7, 2012, ECF No. 386.)  Because the Sibley Objectors have agreed not

to seek more than $25,000, inclusive of the $2,470.02 awarded them by the Third Circuit, (Sibley

Costs Decl. ¶ 2), the Court will treat the difference, $22,529.98, as the Sibley Objectors' fee

application.[26]

The Sibley Objectors do not affirmatively advocate for a particular method of evaluating

their attorneys' fee request, though they provide the factual information necessary to conduct a

full lodestar analysis.  During the November 9, 2012 Fairness Hearing, counsel indicated that he

had provided billing entries to enable the Court to perform a lodestar analysis but, by agreement,

he was not seeking the full lodestar amount.  (Nov. 9, 2012 Hearing 58:45.)  For the reasons

---

[26]Although the Sibley Objectors supplemented their application with a Bill of Costs on December 3, 2012, the Bill of Costs does not identify and itemize taxable costs or non-taxable expenses before the district court and will not be treated as a separate costs application.

discussed earlier, however, the Court will apply a percentage-of-recovery analysis in assessing

the Sibley Objectors' fee award.  Under the valuation of the benefit to the class discussed above,

$782,283.87, the $22,529.98 the Sibley Objectors are seeking is 2.9% of the benefit conferred,

which is well within the range of acceptable percentages-of-recovery.  See Dewey, 728 F. Supp.

2d at 604–05.

Applying the lodestar cross-check, counsel state that their fees under the lodestar method

are $47,750.00, for 95.5 hours of work, multiplied by a $500 per hour rate.  (Sibley Decl. ¶ 8,

Aug. 27, 2012, ECF No. 337.)  Assuming without deciding that the hourly rate and the hours

worked are reasonable, the agreed-upon fee award is 47% of the lodestar figure.  A lodestar

multiplier of .47 is well within the acceptable range.  See Dewey, 728 F. Supp. 2d at 606.

Moreover, assuming counsel's hours of 95.5 to be reasonable, the agreed-upon fee award results

in an actual average billing rate of only $235.92 per hour, further indicating that the requested fee

award is reasonable.

In aggregate, the West and Sibley Objectors seek attorneys' fees in the amount of

$104,664.08.  Under the valuation of the benefit to the class discussed above, $782,283.87, the

West and Sibley Objectors are seeking, in aggregate, 13.4% of the benefit conferred, which is

within the range of acceptable percentages-of-recovery.  See id. at 604–05.  Applying the lodestar

cross-check, the agreed-upon fee awards, in aggregate, are 45% of the conservative aggregate

lodestar figure.  A lodestar multiplier of .45 is well within the acceptable range.  See id. at 606.

Moreover, assuming counsel's aggregate hours of 620 to be reasonable, the agreed-upon fee

awards result in an actual average billing rate of only $168.81 per hour.

In conclusion, whether viewed individually or jointly, the West and Sibley Objectors'

-38-

agreed-upon attorneys' fees are reasonable under the percentage-of-recovery analysis and satisfy the lodestar cross-check, assuming the benefit to the class conferred by their actions is the value of the reimbursement claims under the New Settlement Agreement.  Thus, the motions for an award of fees are granted and fees in the amount of $82,134.10 shall be awarded to counsel for the West Objectors and fees in the amount of $22,529.98 shall be awarded to counsel for the Sibley Objectors.

### 2.    Costs

#### a.    West

In accordance with their agreement with the parties, the West Objectors seek $86,000 in fees and costs in both the District Court and on appeal, exclusive of $4,000 in incentive awards. As explained above, the $86,000 includes a request for $3,865.90 in costs, $2,678.93 of which the Third Circuit has already awarded in connection with the successful appeal.  (Frank Supp. Fees Decl.)  The remaining $1,186.97[27] is attributable to "nontaxable expenses borne by litigants" in the District Court that may be awarded pursuant to the parties' agreement under Fed. R. Civ. P. 23(h), Taniguchi v. Kan Pacific Saipan, Ltd., 132 S. Ct. 1997, 2006 (2012), and the West Objectors will be awarded expenses in that amount, in addition to the $2,678.93 already taxed by the Third Circuit.

#### b.    Sibley

The Sibley Objectors filed a Bill of Costs on December 3, 2012 which lists $2,645.02 in costs, consisting of $2,470.02 that the Third Circuit has already awarded as taxable in connection

---

[27]These expenses awarded pursuant to Fed. R. Civ. P. 23(h) consist of $698.65 for court transcripts and $488.32 for travel to and from Newark.  (Frank Costs Decl.)

with the successful appeal, as well as $175 for transcripts.  (Sibley Bill of Costs.)  As explained above as to attorneys' fees, because the Sibley Objectors applied for $25,000 in fees and costs without itemizing specific costs, and because they have agreed not to seek more than that amount in total, (Sibley Costs Decl. ¶ 2), the Court will award $22,529.98 in fees, along with the $2,470.02 in costs taxed by the Third Circuit, for a total of $25,000.

### 3.      Incentive Award to Objectors

The West Objectors seek $4,000 total in incentive awards: $2,000 to be allocated to West, and $1,000 each to McKinney and Sullivan.  (West Mot., Oct. 16, 2012, ECF No. 369.)  A number of courts have considered the propriety of permitting incentive awards to objectors with varying outcomes.  See, e.g., Hartless v. Clorox Co., 273 F.R.D. 630, 647 (S.D. Cal. 2011) (recognizing that an incentive award to an objector might be appropriate in some instances); UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp., Civ. No. 05-1046, 2008 WL 4452332, at *4 (D. Colo. Sept. 30, 2008) (expressing doubt that an incentive award to an objector can ever be appropriate but assuming without deciding that it could be in some cases).  In deciding whether an objector deserves an incentive award, courts have considered whether: (1) the objector's particular efforts conferred a benefit on the class; (2) the objector incurred personal risk; and/or (3) the objector was substantively involved in the litigation.  See Park, 633 F. Supp. at 14 (identifying personal risk and effort expended for the benefit of the lawsuit as factors affecting the decision to award incentive fees to objectors); UFCW Local, 2008 WL 4452332, at *4 (stating that the objector has the burden of showing that "his actions resulted in a substantial benefit to the class such that an incentive award . . . is appropriate").  At least one court has refused to approve an incentive award sought on the basis

-40-

that an objector faced the risk of Rule 11 sanctions, explaining that "Rule 11 sanctions are a risk borne by all litigants."  Park, 633 F. Supp. 2d at 14.  Among those cases to have entertained requests for objector's incentive awards, the Court is aware of only two finding that the circumstances warranted such an award.  In In re Apple Inc. Sec. Litig., the court found that an incentive payment of $1,000 would fairly compensate the objector for his contribution where that objector conferred a significant benefit to the class by causing $2.5 million to be paid to class members rather than donated to universities, Civ. No. 06-5208, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011), and in Lonardo v. Travelers Indem. Co., the court awarded an objector the "nominal sum" of $500 for his "nominal contribution" to the case in objecting to procedural hurdles to class recovery and the amount of the attorneys' fee award.  706 F. Supp. 2d 766, 813 (N.D. Ohio 2010).

The West Objectors base their request for an incentive award on the "selflessness" they allegedly demonstrated by pursuing appeal of the settlement.  Specifically, the West Objectors submit that they "refuse[d] to accept personal payment to withdraw their objections" in the interest of benefitting the class as a whole.  (See Frank Fees Decl. ¶ 29.)  The West Objectors further argue that in challenging the approval of the settlement, they incurred a substantial personal risk by: (1) exposing themselves "to the risk of harassing discovery and private investigation from the plaintiffs' attorneys," (West Br. 14); and (2) posting an appeal bond of $25,000.  (Id.)  As to substantive involvement with the litigation, the West Objectors submit that they initiated the objection and were "kept in the loop" throughout the process.  (Frank Fees Decl. ¶ 32.)

The West Objectors' contribution to the case warrants only a nominal incentive payment.

Unlike their counsel or the representative plaintiffs, there is no indication that the objectors themselves devoted the sort of "substantial time or effort" that might support an award in excess of those granted in other cases.  Lonardo, 706 F. Supp. 2d at 813; see also Lobur v. Parker, 378 F. App'x 63, 65 (2d Cir. 2010) (affirming denial of incentive award to objectors who expended "minimal effort," despite their having contributed to "an improvement to the distributional fairness" of the settlement).  Furthermore, the record is not sufficient to support the position that Mr. West is entitled to a greater award than Messrs. McKinney or Sullivan.  West argues that he was "personally given information" that he could have made a claim on the residual of the settlement fund, but he nevertheless decided to postpone recovery and proceed with the appeal "for the larger benefit of the class."  (West Br. 14.)  There is no description of the information he received and so that Court cannot evaluate what he supposedly gave up.  Moreover, the 2010 Settlement Agreement provided that moneys remaining after reimbursement of claims would be held for five years and "utilized to fund or reimburse, as applicable, VWGoA payments for repairs beyond warranty made on a case-by-case basis to Settlement Class Members . . . ."  (2010 Settlement Agreement ¶ 6.1, Feb. 11, 2010, ECF No. 174.)  Thus, the 2010 Settlement Agreement provided West and others like him an opportunity to secure a benefit.  There is nothing in the record indicating that West was personally offered, but declined, any special or exclusive opportunity to obtain reimbursement outside of that provision.  Finally, there is nothing to show that the objectors faced a risk not "borne by other litigations."  Park, 633 F. Supp. 2d at 14.  Nonetheless, the willingness to serve as objectors so that their counsel could pursue a legal challenge that ultimately provided a certain benefit to like car owners and lessees warrants some incentive award, and the Court will therefore approve an incentive payment of $500 to each of

-42-

the West Objectors.

## V. <u>CONCLUSION</u>

For the reasons stated herein, the motion for final approval of the settlement class and class settlement is granted, the amount of $9,207,248.19 shall be awarded as fees to Class Counsel, and reimbursement for expenses is granted in the amount of $385,840.01 to Mazie Slater Katz and Freeman, LLC and in the amount of $291,572.18 to Schoengold & Sporn, P.C. The amount of $10,000 shall be awarded to each of the following class representatives: Kenneth Bayer, Jacqueline Delguercio, Patrick DeMartino, John M. Dewey, Lynda Gallo, Edward O. Griffin, Ronald Marans, Francis Nowicki, and Patricia Romeo.  The amount of $82,134.10 shall be awarded as fees to the Center for Class Action Fairness and $22,529.98 to Gary W. Sibley; reimbursement for expenses is granted in the amount of $3,865.90 inclusive of the Third Circuit's taxation of costs to the Center for Class Action Fairness and in the amount of $2,470.02 inclusive of the Third Circuit's taxation of costs to Gary W. Sibley; and $500 shall be awarded to each of the following objectors: Joshua West, Darren McKinney, and Michael Sullivan.

Judgments[28] consistent with this Opinion will be issued.

s/Patty Shwartz

**United States Magistrate Judge**

Dated: December 14, 2012

---

[28]The Court will issue two separate judgments, one addressing relief to the class and incentive awards to the named plaintiffs and the West Objectors, and the other addressing attorneys' fees and costs to Class Counsel and the West and Sibley Objectors.  Courts have embraced the practice of issuing separate judgments in an effort to promote timely distribution of relief to the class.  See, e.g., Reid v. Supershuttle Int'l, Inc., Civ. No. 08-4854, 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012); Meyenburg v. Exxon Mobil Corp., Civ. No. 05-15 ECF No. 58 (S.D.I.L. July 31, 2006); Meyenburg v. Exxon Mobil Corp., Civ. No. 05-15 ECF No. 48 (S.D.I.L. June 6, 2006); see also In re Bluetooth Headset Prods. Liability Litig., 654 F.3d 935 (9th Cir. 2011) (observing that "vacatur of the fee award does not necessitate invalidation of the approval order"); Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989) (considering an appeal of an attorneys' fee award without disrupting relief to the class).